**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No.: 1:25-CV-315

MAYO THOMPSON, individually, and on behalf of S.R., a minor; CANDY GRANGER, individually, and on behalf of S.U., a minor; HEATHRE NAUSED, individually, and on behalf of A.N., a minor; ERIC BENDER AND AMY BENDER, individually, and as husband and wife, on behalf of C.B., a minor.

       Plaintiff,

v.

STEAMBOAT SPRINGS SCHOOL DISTRICT RE-2, a municipal entity; CELINE WICKS, in her individual and official capacities; ANNE-MARIE TENNYSON, in her individual and official capacities; RON PETERSON, in his individual and official capacities; SYLVIA RAWLINGS, in her individual and official capacities; CHUCK ROSEMOND, in his individual and official capacities; and DAN JUBA, in his individual and official capacities.

       Defendants.

---

## COMPLAINT AND JURY DEMAND

---

       Plaintiffs, Mayo Thompson, individually and on behalf of S.R., a minor, Candy Granger, individually and on behalf of S.U., a minor, Heathre Naused, individually and on behalf of A.N., a minor, Eric Bender and Amy Bender, as individuals and as husband and wife on behalf of C.B., a minor, by and through counsel, Burg Simpson Eldredge Hersh & Jardine, P.C., hereby submits this Complaint and Jury Demand against Defendants Steamboat Springs School District RE-2, Celine Wicks, Anne-Marie Tennyson, Ron Peterson, Sylvia Rawlings, Chuck Rosemond, and Dan Juba as follows:

## INTRODUCTION

1.      Defendant Steamboat Springs School District RE-2 ("Defendant SSSD") perpetuated a shocking and unacceptable pattern of conduct within Steamboat Springs High School.

2.      Defendant SSSD fostered an environment within Steamboat Springs High School that allows its staff to discriminate against, verbally abuse, and inflict physical harm upon the most defenseless members of our society – disabled and non-verbal children.

3.      Rather than ensuring their safety and dignity, Defendant SSSD's systemic failure enabled this conduct to persist, creating a cycle of cruelty for the affected students.

4.      These children, Plaintiffs S.R., S.U., A.N., and C.B., were all students at Steamboat Springs High School.

5.      These students have all been subjected to a ceaseless pattern of unacceptable, cruel, and discriminatory behavior at the hands of Defendants.

6.      These students were subjected to physical violence, neglect, and verbal abuse.

7.      One student was the frequent recipient of racial slurs, being referred to by one Defendant as "a monkey."

8.      This Defendant also openly expressed the belief that these children, solely because of their disabilities, should never have been born—that they should have been aborted.

9.      Despite having explicit knowledge of the widespread and abusive environment these disabled students were forced to endure, Defendant SSSD exhibited a chilling and callous disregard for the suffering inflicted upon these students.

10.     Defendant SSSD made virtually no effort to address the pervasive abuse. Rather than taking decisive action to protect the students, Defendant SSSD failed to implement any

meaningful measures to stop or prevent the abuse, neglect, and discrimination, allowing it to continue.

11.    Defendant SSSD only acknowledged the horrific environment these students were subjected to when Plaintiffs filed a consolidated state complaint with the Colorado Department of Education under the Individuals with Disabilities Education Act ("IDEA").

12.    The callous indifference from Defendant SSSD allowed a culture of abuse, neglect, and discrimination to thrive unchallenged.

13.    The persistent and uninterrupted disregard to this discrimination underscores Defendant SSSD's deliberate and systemic refusal to provide equal protection and care to students with disabilities.

14.    This was not a momentary lapse or oversight—this was an institutional choice. As a direct result of Defendant SSSD's action and inaction, these children suffered severe and irreparable harm.

15.    Defendant SSSD's failure to take action against this abuse, its refusal to provide adequate safeguards for disabled students, and its complicity in fostering an atmosphere of discrimination constitutes a gross violation of the fundamental rights guaranteed under the U.S. Constitution.

16.    Defendants were all entrusted with the safety and education of the Plaintiffs, and each abdicated their responsibilities. These Defendants acted with deliberate indifference and reckless disregard for these students' constitutional rights.

17.    Defendants' customs, policies, and practices not only allowed, but facilitated, this discriminatory behavior. Their actions shock the conscience and calls for immediate redress.

18.    Plaintiffs turn to the courts, after internal recourse by Defendant SSSD has utterly failed them, to vindicate their rights.

19.    Defendants must be held accountable so that no other child in the School District should have to suffer the same way.

## JURISDICTION AND VENUE

20.    This action arises out of violations of the United States Constitution, the laws of the United States, and seeks monetary relief.

21.    Jurisdiction is conferred on this Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

22.    Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b).  All of the events alleged herein occurred within the State of Colorado.

23.    Jurisdiction supporting Plaintiffs' claim for attorneys' fees and costs is conferred by 42 U.S.C. § 1988.

## PARTIES

24.    Plaintiff Mayo Thompson, at all times relevant to the subject matter of this lawsuit, was a resident of Routt County within the State of Colorado.

25.    S.R., at all times relevant to this complaint, was a resident of Routt County within the State of Colorado.

26.    S.R. is Plaintiff Mayo Thompson's daughter.

27.    S.R. is a minor.

28.    Plaintiff Candy Granger, at all times relevant to the subject matter of this lawsuit, was a resident of Routt County within the State of Colorado.

29.     S.U., at all times relevant to this complaint, was a resident of Routt County within the State of Colorado.

30.     S.U. is Plaintiff Candy Granger's son.

31.     S.U. is a minor.

32.     Plaintiff Heathre Naused, all times relevant to the subject matter of this lawsuit, was a resident of Routt County within the State of Colorado.

33.     A.N., at all times relevant to this complaint, was a resident of Routt County within the State of Colorado.

34.     A.N. is Plaintiff Heathre Naused's son.

35.     A.N. is a minor.

36.     Plaintiffs Eric Bender and Amy Bender, husband and wife, at all times relevant to the subject matter of this lawsuit, were residents of Routt County within the State of Colorado.

37.     C.B., at all times relevant to this complaint, was a resident of Routt County within the State of Colorado.

38.     C.B. is the daughter of Plaintiffs Eric Bender and Amy Bender.

39.     C.B. is a minor.

40.     At all times relevant, Plaintiffs Mayo Thompson, Candy Granger, Heathre Naused, and Eric and Amy Bender had a protected liberty interest in the care, custody, and control of their respective children, including the right to control their education.

41.     Defendant SSSD is a school district, a quasi-municipal corporation, with powers conferred by the State of Colorado, located at 325 7th Street, Steamboat Springs, Colorado 80487.

42.     Defendant SSSD is a person within the meaning of 42 U.S.C. § 1983.

43.     At all times material to this complaint, Defendant Celine Wicks was a resident of the State of Colorado.

44.     At all times material to this complaint, Defendant Anne-Marie Tennyson was a resident of the State of Colorado.

45.     At all times material to this complaint, Defendant Ron Peterson was a resident of the State of Colorado.

46.     At all times material to this complaint, Defendant Sylvia Rawlings was a resident of the State of Colorado

47.     At all times material to this complaint, Defendant Dan Juba was a resident of the State of Colorado.

48.     At all times material to this complaint, Defendant Chuck Rosemond was a resident of the State of Colorado.

49.     At all times material to this complaint, Defendants Wicks, Tennyson, Peterson, Juba, Rosemond, and Rawlings were all agents and employees of Defendant SSSD and were acting under color of state law within the course and scope of their employment with Defendant SSSD.

## <u>GENERAL ALLEGATIONS</u>

50.     Defendant SSSD serves approximately 2,640 students.

51.     Steamboat Springs High School ("SSHS") is part of the Steamboat Springs School District.

52.     SSHS is a property owned, operated, and maintained by Defendant SSSD.

53.     SSHS is located at 45 East Maple Street, Steamboat Springs, Colorado 80487.

54.     SSHS serves ninth, tenth, eleventh, and twelfth grade students.

55.     During the 2022-2023 academic year, Steamboat Springs High School (SSHS) had an enrollment of 843 students.

56.     In the following 2023-2024 academic year, student enrollment at SSHS increased slightly to 845.

57.     Of the total student population, 110 students were enrolled in the Special Education (SPED) program during the 2022-2023 school year.

58.     Upon information and belief, enrollment in the SPED program slightly declined to 106 students in the 2023-2024 academic year.

59.     Within SSHS, there is a significant support needs (SSN) classroom.

60.     The students in the SSN classroom require specially designed instruction.

61.     This instruction must meet the unique needs of each individual student.

62.     The instruction includes classroom instruction, physical education, and in other settings, related services including transportation and such developmental, corrective, and other supportive services,[1] as may be required to assist the student with disabilities to benefit from special education.

63.     Students placed in the SSN classroom are highly diverse learners with extensive needs in the areas of cognition and/or learning, communication, movement, and social/emotional abilities. These individuals may also have concurrent health, sensory, physical, and/or behavioral disabilities.

---

[1] Supportive Services, as defined in the Individuals with Disabilities Education Act, includes "speech-language pathology and audiology services, interpreting services, psychological services, physical and occupational therapy, recreation, including therapeutic recreation, social work services, school nurse services designed to enable a child with a disability to receive a free appropriate public education as described in the individualized education program of the child, counseling services, including rehabilitation counseling, orientation and mobility services, and medical services, except that such medical services shall be for diagnostic and evaluation purposes only." 20 U.S.C. § 1401(26)(A).

64.     Defendant Wicks, at all relevant times, was employed by Defendant SSSD as Superintendent and was responsible for the activities at SSHS.

65.     Defendant Wicks, as Superintendent, was a final policymaker for Defendant SSSD, who delegated certain duties of final policymaking to Defendants Tennyson and Peterson, including those concerning students with disabilities, such as paraprofessional hiring and assignment.

66.     As a result of Defendant Wicks' delegation of duties, Defendants Tennyson and Peterson were final policymakers for Defendant SSSD with regard to matters alleged herein.

67.     At all relevant times, Defendants Tennyson and Peterson managed and oversaw the Special Education program, including the SSN classroom, at SSHS.

68.     At all relevant times, Defendant Tennyson was employed by Defendant SSSD as the Director of Exceptional Student Services.

69.     Defendant Tennyson was the Special Education Director for the 2022-2023 school year.

70.     At all relevant times, Defendant Peterson was employed by Defendant SSSD as the Principal of SSHS.

71.     At all relevant times, Defendant Rawlings was employed by Defendant SSSD as a paraprofessional.

72.     At all relevant times, Defendant Juba was employed by Defendant SSSD as a SPED teacher.

73.     Defendant Juba's responsibilities included oversight and training of new SPED teachers and paraprofessionals as well as management of the paraprofessional schedules to determine which paraprofessional would be assigned to a particular student.

74.    Upon information and belief, Defendant Juba is currently employed as Defendant SSSD's 504 Coordinator and Interventionist at SSHS.

75.    At all relevant times, Defendant Rosemond was employed by Defendant SSSD as a SPED teacher.

76.    Upon information and belief, Defendant Rosemond's responsibilities included oversight and training of new SPED teachers and paraprofessionals as well as management of the paraprofessional schedules to determine which paraprofessional would be assigned to a particular student.

77.    At all times relevant to this complaint, Defendant SSSD was acting under the color of state law, as the functional equivalent to a municipality providing education.

78.    During the 2022-2023 school year, five students were placed in the SSN classroom at SSHS.

79.    Upon information and belief, six students were placed in the SSN classroom the following year.

80.    At all times relevant to the allegations made herein, S.R., A.N., S.U. and C.B. were students of SSHS and were assigned to the SSN classroom by Defendant SSSD.

81.    Collectively, S.R., A.N., C.B. and S.U. will be referred to as the "Students."

82.    The Students all have multiple disabilities.

83.    The Students are individuals with disabilities within the meaning of Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794(a); the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1415(i)(2); the Developmentally Disabled Assistance and Bill of Rights Act (DDABRA), 42 U.S.C. § 15002(8); and C.R.S. § 25.5-10-202(26).

84.    The Students' diagnoses do not inherently impair their cognitive functioning and ability to perceive their surroundings.

Facts Relating to S.R.

85.    S.R. is diagnosed with Spastic Quadriplegic Cerebral Palsy as a result of birth complications.

86.    Spastic Quadriplegic Cerebral Palsy is a physical disability and developmental disorder caused by a brain injury which prevents the normal development of motor function.

87.    Upon information and belief, S.R.'s diagnosis of Spastic Quadriplegic Cerebral Palsy does not inherently impair her cognitive functioning.

88.    S.R. is wheelchair-bound.

89.    S.R. is non-verbal.

90.    At all relevant times, S.R. attended SSHS as a student of the SSN classroom.

91.    S.R. required accommodations for "1:1 supervision for health and safety" and "[a]dult assistance for wheelchair mobility."

92.    Defendant SSSD determined S.R. was a student with "multiple disabilities."

93.    Defendant SSSD, through Defendants Tennyson and Peterson, assigned paraprofessionals to S.R. for health, safety, and wheelchair assistance purposes.

94.    S.R., as a non-verbal and wheelchair-bound student, could not communicate her needs or report the abuse described herein to any caretakers.

Facts Relating to S.U.

95.    S.U. is diagnosed with intellectual and physical disabilities, including Angelman's syndrome.

10

96.     Angelman's syndrome is a genetic disorder that impacts the nervous system, causing delayed development, speech impairment, intellectual disabilities, difficulties with movements and balance, recurrent seizures, and the inability to form spoken language.

97.     S.U. is wheelchair-bound.

98.     S.U. is non-verbal.

99.     S.U. requires toileting assistance throughout the day.

100.     S.U. attended SSHS as a student of the SSN classroom for school years 2022-2023 and 2023-2024.

101.     Because of the ongoing discrimination towards S.U., Plaintiff Granger moved S.U. to another school district for the 2024-2025 school year.

102.     S.U. needed accommodation for S.U.'s intellectual and physical disabilities.

103.     Defendant SSSD determined S.U. was a student with "multiple disabilities."

104.     Defendant SSSD assigned paraprofessionals to S.U. for health, safety, and other assistive purposes.

105.     S.U. receives nephrology care as a result of suffering from kidney failure in 2017.

106.     Because of S.U.'s history of kidney failure, he cannot hold urine for long periods of time and must be provided with frequent toileting assistance.

107.     Defendants, and each of them, were explicitly made aware of S.U.'s toileting needs and inability to hold his urine for extended periods of time.

108.     S.U., as a non-verbal and wheelchair-bound student, could not communicate his needs or report the abuse described herein to any caretakers.

Facts Relating to A.N.

109.     A.N. has intellectual and physical disabilities, including Cerebral Palsy.

110. A.N. is non-verbal.

111. A.N. is wheelchair bound.

112. A.N. requires feeding and toileting assistance.

113. A.N. must be carried to and from his wheelchair for feeding, changing, and transportation.

114. A.N. requires accommodation for his intellectual and physical disabilities.

115. At all relevant times, A.N. attended SSHS as a student of the SSN classroom.

116. Defendant SSSD assigned paraprofessionals to A.N. for health, safety, and other assistive purposes.

117. A.N., as a non-verbal and wheelchair-bound student, could not communicate his needs or report the abuse described herein to any caretakers.

Facts Relating to C.B.

118. C.B. has intellectual and physical disabilities, including chromosomal duplication and autism spectrum disorder.

119. C.B. is non-verbal.

120. C.B. requires toileting assistance and assistance with taking her clothes on and off when toileting.

121. While C.B. wears adult diapers in the event that she has an accident, C.B. can use the restroom consistently when given the opportunity.

122. At all relevant times, C.B. attended SSHS as a student of the SSN classroom.

123. Because of C.B.'s disabilities, Defendants were to regularly monitor C.B.'s clothes for spoilage and change C.B.'s clothes when spoilage was present.

124.    C.B., as a non-verbal student, could not communicate her needs or report the abuse as described herein to any caretakers.

### The Northwest Colorado Board of Cooperative Educational Services

125.    The Northwest Colorado Board of Cooperative Educational Services (hereinafter, "BOCES") provides resources for and oversees the special education services provided by Defendant SSSD, as set forth within Title 22, Article 5, C.R.S., Boards of Cooperative Services Act of 1965.

126.    BOCES exists to supply educational services to six school districts that alone cannot afford the service or find it advantageous and cost-effective to cooperate with other districts. These services represent a financial commitment that is best met by several districts sharing costs and programs.

127.    In some instances, BOCES may operate as a Special Education Administrative Unit, in which Colorado Revised Statutes require a minimum number of students or participants in order to establish eligibility.

128.    In addition to any other duty required to be performed by law, BOCES has the same duties as those for boards of education as set forth in C.R.S. § 22-32-109 (1)(a) to (1)(m), (1)(q), (1)(r), and (1)(pp) and section 22-9-106.

129.    Any teacher transferred from employment in a school district which is a member of a board of cooperative services to employment in said board of cooperative services shall retain the employment status he had attained prior to his transfer to the board of cooperative services.

130. The power to employ teachers has been conferred by the general assembly exclusively on the school board, and therefore it cannot be delegated. *Big Sandy Sch. Dist. No. 100-J v. Carroll*, 164 Colo. 173, 433 P.2d 325 (1967).

131. Therefore, Defendant SSSD is the sole organization responsible for hiring and maintaining the employment of the individual defendants in this action.

132. Defendant SSSD is the sole organization responsible for supervision of the individual defendants in this action.

133. Defendant SSSD is the sole organization responsible for training the individual defendants in this action.

134. Defendant SSSD is the sole organization responsible for ensuring the individual defendants honor the rights of students attending its schools.

135. Defendant SSSD is the sole organization responsible for disciplining the individual defendants in this action.

136. Defendant SSSD is the sole organization responsible for the conduct of its employees, including the individual defendants named herein.

137. Defendant SSSD is the sole organization responsible for the acts and omissions of its employees, including the systematic discrimination that the Students suffered.

138. Defendant SSSD is the sole organization responsible for the constitutional deprivations alleged herein.

139. Defendant SSSD has exclusive control over its day-to-day operations within the special education programs at SSHS.

140. The daily operations are managed by the final policymakers employed by Defendant SSSD and those who they delegate such duties to thereafter.

141.    On September 26, 2023, Plaintiffs filed a consolidated state-level complaint with the Colorado Department of Education regarding their concerns surrounding the Students education and injuries.

142.    On October 13, 2023, BOCES, by which Defendant SSSD is overseen, determined that the Students' injuries addressed in this Complaint were "outside the scope of the allegations accepted for investigation in this IDEA matter."

143.    On October 13, 2023, BOCES stated that it "admits many of the allegations in the complaint…"

144.    Following the conclusion of these proceedings, Defendant SSSD has made and implemented policy changes that prohibit and restrict the Plaintiffs access to discuss their child's needs with the paraprofessionals employed by Defendant SSSD.

145.    The Students are not alleging a deprivation of a free appropriate public education in this Complaint, nor is the relief the Students are seeking available under the IDEA.

146.    Any adult could complain and allege the harm that the Students do herein, and therefore procedural exhaustion under the IDEA is not required.

**Abusive and Discriminatory Practices**

147.    During the 2022-2023 school year, Defendants Rawling was employed by SSSD as a paraprofessional to provide support for SPED teachers, including Defendants Juba and Rosemond, and significant needs students, including the Students, at SSHS.

148.    During the 2022-2023 school year, Defendants SSSD, Wicks, Tennyson, Peterson, Rosemond, and/or Juba were to provide some level of support to the significant needs students, including the Students, at SSHS.

149.    Upon information and belief, the following 2023-2024 school year, Defendants SSSD, Wicks, Peterson, Rosemond, and/or Juba continued to hold similar responsibilities in supporting students with significant needs, including the Students, at SSHS.

150.    The Defendants, and each of them, engaged in various abusive and discriminatory practices against the Students, including, but not limited to, discrimination and abuse based upon the Students' disability status and/or race.

151.    In or around December 2022, Defendant Rawlings was assigned to the SSN classroom.

152.    Prior to this assignment, there was widely known evidence that Defendant Rawlings has engaged in severely abusive behavior toward significant needs students.

153.    Defendants Tennyson and Peterson were informed by other paraprofessionals and staff employed by Defendant SSSD that Defendant Rawlings had stated to her colleagues that she would have chosen to have an abortion if she had known her unborn child would have disabilities.

154.    Defendants Tennyson and Peterson were informed by other paraprofessionals and staff employed by Defendant SSSD that Defendant Rawlings threatened to hit another student with significant support needs.

155.    Defendants Tennyson and Peterson were informed by other paraprofessionals and staff employed by Defendant SSSD that Defendant Rawlings previously kicked another student's wheelchair.

156.    Defendants Tennyson and Peterson were aware that Defendant Rawlings was unfit to provide support to students with significant needs.

157.    Upon information and belief, Defendant Wicks was also aware of Defendant Rawlings' history of hateful and abusive comments, as well as her mistreatment of students with significant support needs at SSHS.

158.    Despite having explicit knowledge of Defendant Rawlings's dangerous and abusive practices, Defendants Wicks, Tennyson, and Peterson never publicly reprimanded Defendant Rawlings or reported her conduct to the authorities despite their obligations as mandatory reporters.[2]

159.    Defendant SSSD, through its final policymakers Defendant Peterson and Defendant Tennyson, fostered an environment where SSHS staff were allowed to treat significant support needs students with a chilling lack of care and concern for their wellbeing.

160.    Defendant SSSD had knowledge of the abuse, neglect, and discrimination taking place within SSHS. Their awareness stemmed from multiple sources, including direct observations, complaints from staff, video surveillance, and formal reports.

161.     Throughout SSHS, security cameras were installed in various locations, capturing direct visual evidence of the treatment of students. These recordings would have documented instances of abuse, neglect, and inappropriate behavior toward students with significant needs.

162.    The mistreatment of students with significant needs was not isolated or hidden—it was well-known among SSHS staff and students. Teachers, paraprofessionals, and other school employees regularly witnessed abusive and discriminatory behavior.

163.    Other students at SSHS were also aware of the mistreatment, having either witnessed it firsthand or heard discussions about it.

---

[2] In Colorado, mandatory reporters are required by law to report suspected child abuse and neglect. Mandatory reporters include public school officials and employees. Colo. Rev. Stat. § 19-3-304.

164.     Numerous formal and informal complaints were submitted regarding the mistreatment of students with significant needs, highlighting ongoing abuse, neglect, and discriminatory treatment.

165.     Defendant SSSD's deliberately indifferent policies, customs, and practices as described herein were the moving forces and proximate causes of the violation of the Students' constitutional rights.

166.     The policies, customs, and practices of Defendant SSSD as described herein deprived the Students of their rights, privileges, liberties, and immunities secured by the United States Constitution, and caused the Students other damages in an amount to be determined by the trier of fact.

167.     Defendant SSSD knew or should have known that their policy not to provide sufficient care to non-verbal, wheelchair-bound students attending SSHS would place the Students at risk of substantial physical injury and emotional distress.

168.     Defendant SSSD knew or should have known that its policy to place non-verbal, wheelchair-bound students attending SSHS with dangerous, criminal, and untrained paraprofessionals would place the Students at risk of substantial physical injury and emotional distress.

**A.  Disability Discrimination**

169.     The Students would not have been subjected to the abusive and discriminatory practices detailed herein if not for their disability status.

170.     The Students would not have been subjected to the abusive and discriminatory practices detailed herein specifically if not for their non-verbal nature and inability to object to or report such abusive and discriminatory practices.

18

171.    Defendants treated the Students with a lack of and complete disregard for their humanity simply because of the Students' disabilities.

172.    Defendants unnecessarily and repeatedly used restraint and seclusion practices that substantially impaired the Students to achieve their educational objectives.

173.    Defendants repeatedly subjected the Students to unjustified segregation.

174.    Defendants denied the Students access to off-campus activities, extracurricular programs, and related opportunities.

175.    Rather than providing necessary support to facilitate participation, Defendants imposed blanket exclusions that deprived the Students of access to educational and social experiences, further isolating them from their peers and hindering their overall development.

176.    The Students were placed in a "sensory room," or isolated closet, alone, and with no natural light.

177.    Upon information and belief, consistent rights violations exist at SSHS with regard to students with disabilities on a systemic level.

178.    As a result of Defendant SSSD's deliberately indifferent policies, customs, and/or practices, the Students were deprived of their constitutionally protected right to be treated fairly and equally.

179.    Defendants, and each of them, engaged in a systematic failure to provide a safe and inclusive environment for the Students, who are some of the most vulnerable and defenseless members of society.

**B.  <u>Physical Abuse</u>**

180.    Upon information and belief, Defendants, including Defendants Rawlings, Juba, and Rosemond, subjected the Students to physical abuse.

19

181.    Defendants Tennyson, Peterson, and Wicks all knew about the specific instances of physical abuse suffered by the Students, as described herein.

182.    Defendant SSSD, through its final policymakers, had knowledge that SSHS staff were regularly subjecting significant needs students to severe physical abuse.

183.    Defendant SSSD was deliberately indifferent to the abuse suffered by the Students.

184.    Defendant SSSD's deliberately indifferent customs, policies, and practices regarding the failure to adequately supervise, train, and oversee the SSSD employees charged with caring for the Students were the moving forces and the proximate cause of the physical abuse inflicted upon the Students.

*Failure to Provide Toileting Assistance*

185.    The Students all require toileting assistance.

186.    As part of providing toileting assistance to the Students, Defendants Rawlings, Rosemond, and Juba were required to regularly take the Students for bathroom breaks, monitor the Students for spoilage, and change the Students' clothes when spoilage occurred.

187.    During the 2022-2023 school year, Defendant SSSD employees, including Defendants Rawlings, Rosemond, and Juba, failed to regularly provide the Students with opportunities to use the restroom and with toileting assistance.

188.    Upon information and belief, the Students were forced to hold their urine for hours because of Defendant SSSD employees, including Defendants Rawlings, Rosemond, and Juba's, failure to provide them with regular opportunities to use the restroom.

189.    During the 2022-2023 and 2023-2024 school years, Defendant SSSD employees, including Defendants Rawlings, Rosemond, and Juba, frequently neglected to change the

Students when spoilage occurred, leaving the Students to sit in soiled garments for extended periods of time.

190.    Defendants Tennyson and Peterson knew about Defendant SSSD employees, including Defendants Rawlings, Rosemond, and Juba's, failure to sufficiently supervise and toilet the Students.

191.    Defendants Rosemond and Juba explicitly refused to provide the Students with toileting assistance, despite this being a condition of their employment with Defendant SSSD.

192.    Defendants Rosemond and Juba communicated their refusal to toilet the Students to SSHS administrators and staff, including Defendants Tennyson and Peterson, in direct violation of their employment responsibilities with Defendant SSSD.

193.    Upon information and belief, Defendant Tennyson explicitly approved Defendants Rosemond and Juba's request to not toilet the Students or other students in the SSN classroom, in direct violation of their employment responsibilities with Defendant SSSD.

194.    In his refusal to perform his duties of employment, Defendant Rosemond would escort students who had soiled themselves to the nurse's office or send them to other teachers for changing.

195.    Defendants Peterson and Tennyson, as final policymakers for Defendant SSSD, did nothing to ensure Defendants Rosemond and Juba complied with their employment responsibilities.

196.    Defendant SSSD, through its final policymakers, had knowledge that the Students were not receiving adequate toileting assistance.

197.    Defendants, and each of them, failed to provide the Students with a safe and sanitary learning environment.

21

198.    As a result of Defendant SSSD's policies, customs, and/or practices, the Students suffered physical abuse and emotional distress by being forced to hold their urine and sit in soiled clothing for extended periods of time.

199.    Defendant SSSD had actual notice and knowledge that its acts and omissions by failing to oversee, train, supervise, and discipline its employees, including Defendants Rawlings, Juba, or Rosemond, on how to properly honor the rights of students with significant support needs, was substantially certain to lead to violations of the Students' constitutional rights.

### *Physical Abuse of C.B.*

200.    During the school years, C.B. had regular toileting accidents, which could not have occurred but for Defendants' failure to provide her with regular toileting assistance.

201.    Defendants Rawlings, Rosemond, and Juba neglected to regularly take C.B. to the restroom to toilet throughout the school day.

202.    Defendants Rosemond and Juba explicitly refused to provide any toileting assistance to C.B.

203.    Because of Defendants Rawlings, Rosemond, and Juba's failure to provide adequate toileting assistance to C.B., she was forced to void in her adult diaper and sit in her soiled clothing for extended periods of time while attending SSHS.

204.    Defendant SSSD had actual notice and knowledge that its acts and omissions in failing to train, supervise, oversee, and discipline Defendants Rawlings, Rosemond, and Juba with regards to providing sufficient toileting assistance to C.B. was substantially certain to interfere with C.B.'s constitutionally protected rights.

205.    The need for training, supervision, and discipline was so obvious that Defendant SSSD was deliberately indifferent to the need.

22

206.     The violation of C.B.'s rights as a result of the acts and omissions of Defendant
SSSD was highly predictable, plainly obvious, and inevitable as a result of the policies, practices,
and customs maintained by Defendants SSSD, Wicks, Tennyson, and Peterson.

207.     As a result of Defendant SSSD's policies, customs, and/or practices, C.B. suffered
physical abuse and emotional distress.

208.     Defendant SSSD had actual knowledge of and was deliberately indifferent to the
abuse and discrimination that C.B. was subject to, which was so severe that it deprived her of
equal benefits to her educational experience based upon her disability status.

*Physical Abuse of S.R.*

209.     Upon information and belief, during Defendant Rawlings' employment with
Defendant SSSD, Defendant Rawlings would take S.R. to the SSHS gymnasium routinely, if not
daily.

210.     Upon information and belief, Defendant Rawlings would routinely, if not daily,
violently spin S.R.'s wheelchair in the gymnasium while S.R. was strapped into the wheelchair,
causing S.R. severe distress and terror.

211.     Because of her disabilities, S.R. was vulnerable and effectively unable to request
Defendant Rawlings to stop this unlawful and abusive practice.

212.     Nor could S.R. communicate with Plaintiff Thompson or any other caregiver
about Defendant Rawlings's unlawful and abusive practice.

213.     Defendant Rawlings' conduct was reported to Defendants Tennyson and Peterson
as dangerous by other paraprofessionals at SSHS who witnessed Defendant Rawlings violently
spin S.R.'s wheelchair approximately two months prior to January 31, 2023.

214.    Because Defendant Rawlings' conduct was reported to the final policymakers for Defendant SSSD, Defendant SSSD had knowledge of Defendant Rawlings' unlawful conduct.

215.    Upon information and belief, Defendant Rawlings was never disciplined by Defendant SSSD, Wicks, Tennyson, or Peterson prior to the events on January 31, 2023.

216.    On January 31, 2023, Defendant Rawlings flipped S.R.'s wheelchair.

217.    Specifically, Defendant Rawlings spun S.R. so violently that S.R.'s wheelchair turned over, causing S.R. to land face-first on the hardwood gymnasium floor.

218.    S.R. was forced to lie helpless and immobilized on the gymnasium floor with extreme weight on her head and body until another paraprofessional noticed her lying there.

219.    Defendant Rawlings never requested or yelled for additional assistance to place S.R. upright in her wheelchair.

220.    Defendant Rawlings did not request medical assistance or any medical evaluation for S.R. after she was flipped onto her face.

221.    Defendant SSSD, through Defendants Tennyson and Peterson, failed to have any policy, written or otherwise, requiring paraprofessionals to seek medical care or evaluation of disabled students after they are potentially injured while under its care.

222.    During all relevant times, it was Defendant SSSD's custom and practice not to supervise paraprofessionals in the gymnasium, where injuries are likely to occur.

223.    During all relevant times, it was Defendant SSSD's custom and practice not to train paraprofessionals as to when medical attention is required for students with disabilities, who cannot communicate their own medical needs.

224.    S.R. never engaged in behavior that warranted or justified Defendant Rawlings's conduct.

225.    No employees of Defendant SSSD were ever faced with even a remote risk of injury or pain to any degree as a result of S.R.'s behavior.

226.    The treatment S.R. received from the employees of Defendant SSSD, specifically Defendant Rawlings, served no legitimate educational purpose or interest.

227.    Despite the fact that S.R. had been flipped on her face and was injured and terrified, Defendant Rawlings continued to spin S.R. in her wheelchair approximately five more times that afternoon and did not leave the gymnasium for approximately another four and a half minutes.

228.    After Defendant Rawlings decided to stop spinning her, S.R. was doubled over in her wheelchair.

229.    Immediately after the incident, no one from SSSD or SSHS contacted Plaintiff Thompson to let her know S.R. suffered a fall or to inquire whether S.R. could safely ride the bus home from school.

230.    Later that same day, another employee of Defendant SSSD reported the incident to the school nurse at SSHS.

231.    Later that same day, the nurse at SSHS called and informed Plaintiff Thompson that S.R. had suffered a fall from her wheelchair.

232.    At that time, the school nurse falsely represented that S.R. sustained no injuries.

233.    The school nurse indicated she did not personally examine S.R. and that this assessment was based on a report from another employee.

234.    The school nurse indicated to Plaintiff Thompson that S.R. was already on the bus headed home at the time of the phone call.

235.    Upon meeting S.R. after the incident when the school day had ended, Plaintiff Thompson immediately noticed that S.R. had an enormous bulge on the right side of her forehead and that S.R. was visibly disturbed and in distress.

236.    Plaintiff Thompson attempted to contact school administrators and the nurse again for further information. Her calls were not answered, and the school doors were locked.

237.    Because Plaintiff Thompson could not get more information about S.R.'s injuries from the school, Plaintiff Thompson immediately took S.R. to the hospital.

238.    The hospital conducted an examination which concluded that S.R. had a concussion and a right forehead contusion.

239.    S.R. demonstrated significant behavioral changes with regard to her eating and sleeping patterns that evening.

240.    The next morning, Plaintiff Thompson met with Defendants Peterson and Rawlings to discuss and request video footage of the incident.

241.    Defendant Rawlings insisted that S.R. suffered no injuries and fell on her left side.

242.    Defendant Rawlings specifically denied that S.R. hit her head.

243.    Defendant Rawlings adamantly denied the right forehead contusion was a result of the fall.

244.    Defendant Peterson and Plaintiff Thompson watched the surveillance video to discover that S.R. was screaming while Defendant Rawlings was spinning her.

245.    Plaintiff Thompson watched as Defendant Rawlings spun S.R. so violently that her wheelchair flipped.

246.    Defendant Peterson brought in School Resource Officer Lisa Eifling ("SRO Eifling"), who requested Defendant Peterson leave the meeting.

247.    SRO Eifling is a certified peace officer within the State of Colorado, and at all relevant times, was employed by the Steamboat Springs Police Department.

248.    SRO Eifling was regularly present at Steamboat Springs High School since her designation as the School Resource Office earlier in January 2023.

249.    SRO Eifling took Plaintiff Thompson's report, which concluded Plaintiff Thompson's meeting with officials at Steamboat Springs High School.

250.    SRO Eifling conducted an investigation into S.R.'s injury.

251.    On February 7, 2023, SRO Eifling and the County Court of the Fourteenth Judicial District for the County of Routt and the State of Colorado found probable cause to charge Defendant Rawlings with the following crimes:

   a.  Crimes Against At-Risk Persons, a violation of C.R.S. § 18-6.5-103(6)(a) as amended, a Misdemeanor 1.

   b.  Child Abuse, a violation of C.R.S. § 18-6-401(7)(a)(V) as amended, a Misdemeanor 1.

   c.  Reckless Endangerment, a violation of C.R.S. § 18-3-208 as amended, a Misdemeanor 2.

252.    Defendant Rawlings resigned from employment with Defendant SSSD on February 3, 2023.

253.    Defendant Rawlings made a plea deal concerning these allegations.

254.    Defendant Rawlings pled guilty to Crimes Against At-Risk Persons, a violation of C.R.S. § 18-6.5-103(6)(a) as amended, a Misdemeanor 1, on May 22, 2023.

255.    Upon information and belief, Defendant SSSD would not have conducted any investigation into S.R.'s injuries without Plaintiff Thompson coming to SSHS and demanding they do so the day after the incident.

256.    Upon information and belief, Defendant SSSD, through its final policymakers, discouraged Plaintiff Thompson from pursuing an investigation into Defendant Rawlings' conduct.

257.    Upon information and belief, had Defendants SSSD, Wicks, Tennyson, or Peterson sufficiently disciplined Defendant Rawlings prior to January 31, 2023, S.R. would not have suffered injuries on January 31, 2023.

258.    As a result of Defendant SSSD's policies, customs, and/or practices, S.R. suffered abuse, emotional distress, and serious bodily injury.

259.    Defendant SSSD had actual notice and knowledge that its acts and omissions by failing to train, supervise, and discipline Defendant Rawlings with regard to safe wheelchair handling and when to seek medical care was substantially certain to lead to violations of S.R.'s constitutional rights.

260.    The need for training, supervision, and discipline was so obvious that Defendant SSSD was deliberately indifferent to the need.

261.    The violation of S.R.'s rights in Defendant SSSD's custody was highly predictable, plainly obvious, and inevitable.

262.    Upon information and belief, consistent rights violations exist at Defendant SSSD's Steamboat Springs High School with regard to students with disabilities on a systemic level.

263.     Defendant SSSD had actual knowledge of and was deliberately indifferent to the abuse and discrimination to which S.R. was subjected was so severe that it deprived her of equal benefits to her educational experience based upon her disability status.

*Physical Abuse of S.U.*

264.     On or around May 10, 2023, S.U. suffered an open head wound due to Defendant Juba's reckless disregard of and deliberate indifference to S.U.'s rights.

265.     On or around May 10, 2023, when S.U. returned from school at SSHS, Plaintiff Granger noticed a bloody gash on the back of S.U.'s head while bathing him that evening.

266.     Because S.U.'s communication log – a log typically sent home every day with significant support needs students detailing their daily activities at SSHS – was not sent home with S.U. that day, Plaintiff Granger had no idea of what happened to her son to result in such an injury.

267.     On May 10, 2023 Plaintiff Granger emailed the school nurse at SSHS inquiring into the circumstances that resulted in S.U. suffering an open head wound.

268.     Later that day, the SSHS school nurse called Plaintiff Granger and explained that S.U. received an open head wound after being in the school gymnasium with Defendant Juba.

269.     Defendant Juba failed to provide adequate supervision and care to S.U., resulting in S.U. suffering a severe open head wound.

270.     During all relevant times, it was Defendant SSSD's custom and practice not to supervise paraprofessionals in the gymnasium, where injuries are likely to occur.

271.     No one provided notice to Plaintiff Granger that S.U. had suffered an open head wound while at SSHS.

272.    Only after Plaintiff Granger reached out to the SSHS school nurse did she receive any information regarding S.U.'s open head wound.

273.    Upon information and belief, Plaintiff Granger would never have received information regarding the circumstances surrounding S.U.'s open head wound had she not personally reached out to the SSHS school nurse asking about the injury.

274.    On May 25, 2023, S.U. returned home from school at SSHS with carpet burns down his back.

275.    On May 25, 2023, Plaintiff Granger again reached out to the school nurse at SSHS inquiring into the circumstances that resulted in S.U. receiving carpet burns to his back.

276.    Later that day, the SSHS school nurse called Plaintiff Granger and asked her to come to SSHS immediately to meet with Defendant Peterson.

277.    Defendant Peterson informed Plaintiff Granger that Defendant Peterson reviewed video footage to determine how S.U. sustained the injuries to his back.

278.    Defendant Peterson explained to Plaintiff Granger that the video showed an employee of Defendant SSSD handling S.U. inappropriately.

279.    The next day, on May 26, 2023, Defendant Peterson showed Plaintiff Granger an approximately forty-five-minute-long video of an employee of Defendant SSSD handling S.U. in the SSHS hallway.

280.    As shown in the video, on May 25, 2023, the employee of Defendant SSSD seized and restrained S.U. by putting his foot on S.U.'s head, pinning S.U. down on the high school floor.

281.    As shown in the video, on May 25, 2023, the employee of Defendant SSSD seized S.U. by using excessive force, dragging S.U. across carpeted floors in the high school causing S.U. to suffer serious skin abrasions.

282.    S.U., at all relevant times on May 25, 2023, was forced to lay helpless and immobilized while the employee of Defendant SSSD unlawfully seized and restrained S.U. with his foot, and at other times proceeded to drag S.U. across the carpeted floor.

283.    S.U. never engaged in behavior that warranted or justified the employee of Defendant SSSD's conduct.

284.    No employees of Defendant SSSD were ever faced with even a remote risk of injury or pain to any degree as a result of S.U.'s behavior.

285.    Only after Plaintiff Granger reached out to the SSHS school nurse did she receive any information regarding S.U.'s carpet burns.

286.    Upon information and belief, Plaintiff Granger would never have received information regarding the circumstances surrounding S.U.'s carpet burns had she not personally reached out to the SSHS school nurse asking about the injury and its cause.

287.    The treatment S.U. received from the employees of Defendant SSSD served no legitimate educational purpose or interest.

288.    Upon information and belief, conduct of multiple Defendant SSSD employees had been reported as dangerous to Defendant Tennyson and Peterson by staff at SSHS.

289.    Upon information and belief, Defendant SSSD employees were never disciplined by Defendant SSSD, Wicks, Tennyson, or Peterson prior to the events occurring in May 2023 and thereafter.

290.    Upon information and belief, Defendant SSSD, Tennyson, and Peterson had knowledge of the unlawful restraint tactics employed by Defendant SSSD employees.

291.    On or about May 30, 2023, Plaintiff Granger, by reading through S.U.'s communication log, discovered that S.U. did not void at school the entire day.

292.    Upon information and belief, S.U. was forced to hold his urine for the entire duration of the school day on May 30, 2023 – meaning S.U was forced to hold his urine for more than 9 hours.

293.    Given S.U.'s history of kidney failure, Defendants' failure to regularly toilet S.U. while attending school at SSHS poses a serious risk to S.U.'s health and wellbeing.

294.    Upon information and belief, employees of Defendant SSSD failed to provide the required toileting assistance to S.U. despite having explicit knowledge of S.U.'s medical needs, resulting in severe bodily injury to S.U.

295.    Given that S.U.'s medical needs were explicitly communicated to the final policymakers for SSSD Defendants Tennyson and Peterson, Defendant SSSD had notice of S.U.'s medical needs.

296.    Upon information and belief, employees of Defendant SSSD never received appropriate training from Defendant SSSD's final policymakers or otherwise on how to appropriately handle, care for, and honor S.U.'s rights as a student with multiple disabilities – or how to appropriately handle, care for, and honor the rights of any student with significant support needs.

297.    As a result of Defendant SSSD's policies, customs, and/or practices, S.U. suffered abuse, emotional distress, and serious bodily injury.

298.    S.U. continues to exhibit behavioral and emotional disturbances and decline related to his attendance at SSHS to this day.

299.    Defendant SSSD had actual notice and knowledge that its acts and omissions by failing to oversee, train, supervise, and discipline employees of Defendant SSSD with regard to how to properly honor the rights of students with significant support needs, including S.U.'s rights, was substantially certain to lead to violations of S.U.'s constitutional rights.

300.    The need for oversight, training, supervision, and discipline was so obvious that Defendant SSSD was deliberately indifferent to the need.

301.    The violation of S.U.'s rights was highly predictable, plainly obvious, and inevitable.

302.    Defendant SSSD had actual knowledge of and was deliberately indifferent to the abuse and discrimination that S.U. was subject to, which was so severe that it deprived him of equal benefits to his educational experience based upon his disability status.

*Physical Abuse of A.N.*

303.    In May 2023, A.N. was severely neglected while being supervised and provided support by Defendants Juba and Rosemond, resulting in serious bodily injury.

304.    Defendants Juba, Rosemond, Tennyson, and Peterson were responsible for the care and safety of A.N. while he attended SSHS.

305.    Defendants Juba, Rosemond, Tennyson, and Peterson all knew that A.N.'s extremities would frequently come out of his wheelchair.

306.    Defendants Juba, Rosemond, Tennyson, and Peterson knew that because of A.N.'s extremities dangling outside of his wheelchair, they had a propensity to get stuck in his wheelchair and its wheels.

307.    Defendants Juba, Rosemond, Tennyson, and Peterson were on notice to consistently monitor A.N. to ensure this did not occur and to adjust A.N.'s extremities when they did fall outside of his wheelchair to avoid injury.

308.    Defendants Juba, Rosemond, Tennyson, and Peterson had a duty to train and supervise other staff, paraprofessionals, and peer aids at SSHS on how to properly monitor and care for A.N., including monitoring his extremities to ensure they did not get stuck in A.N.'s wheelchair components and cause injury.

309.    Nevertheless, while under the care and supervision of Defendants Juba and Rosemond, A.N.'s arm got stuck between his wheelchair and its wheel.

310.    Because of A.N.'s intellectual and physical disabilities, A.N. was unable to remove his arm from between the wheelchair and its wheel or communicate to anyone that his arm was stuck.

311.    Upon information and belief, A.N. continued to be pushed in his wheelchair for a significant period of time despite his arm being stuck, leading to large chunks of A.N.'s skin to be stripped off.

312.    A.N. suffered a large and severe wound on his wrist and the surrounding area.

313.    Because of the severity of the wound suffered by A.N., A.N.'s arm had to be cleaned and bandaged regularly for multiple weeks.

314.    The school nurse at SSHS suspected A.N.'s wound became infected after the accident due to it seeping fluid through the bandaging.

315.    Defendants Juba and Rosemond recklessly disregarded and acted with deliberate indifference to A.N.'s rights and failed to provide adequate supervision and care to A.N.

316.    Defendant SSSD had actual notice and knowledge that its acts and omissions by failing to oversee, train, supervise, and discipline Defendants Juba or Rosemond with regard to safe wheelchair handling and how to properly honor the rights of students with significant support needs, including A.N., was substantially certain to lead to violations of A.N.'s constitutional rights.

317.    The violation of A.N.'s rights was highly predictable, plainly obvious, and inevitable.

318.    Defendant SSSD had actual knowledge of and was deliberately indifferent to the abuse and discrimination that A.N. was subject to, which was so severe that it deprived him of equal benefits to his educational experience based upon his disability status.

## C.  Verbal Abuse

319.    Employees of Defendant SSSD, including Defendants Rawlings, Rosemond, and Juba, persistently subjected the Students to verbal abuse solely because of their disability status and non-verbal nature.

320.    These employees regularly spoke to and about the Students with condescension, anger, and blatant disregard, often pretending as if the Students were not present or incapable of understanding their words.

321.    Upon information and belief, these employees would never have spoken in such a demeaning and abusive manner to students without significant support needs.

322.    Upon information and belief, the only reason these employees felt emboldened to speak in this manner was because the Students were non-verbal and unable to object, defend themselves, or report the mistreatment.

323.     Defendant SSSD had actual notice and knowledge that its acts and omissions by failing to oversee, train, supervise, and discipline its employees on how to properly honor the rights of students with significant support needs, specifically on how properly to communicate with and address these students, was substantially certain to lead to violations of the Students' constitutional rights.

324.     The need for training, supervision, and discipline was so obvious that Defendant SSSD was deliberately indifferent to the need.

325.     The violation of the Students' rights as a result of the acts and omissions of Defendant SSSD was highly predictable, plainly obvious, and inevitable as a result of the policies, practices, and customs maintained by Defendants SSSD, Wicks, Tennyson, and Peterson.

326.     As a result of Defendant SSSD's policies, customs, and/or practices, the Students suffered verbal abuse and emotional distress.

327.     Defendant SSSD had actual knowledge of and was deliberately indifferent to the abuse and discrimination that the Students were subject to, which was so severe that it deprived them of equal benefits of their educational experience based upon their disability status.

### D.  Additional Abuse

328.     Defendant SSSD employees subjected the Students to abuse by routinely and openly exposing their genitalia to other students and staff at SSHS.

329.     Plaintiffs Bender, Granger, Naused, and Thompson received notice that the Students would be publicly changed in the SSN classroom with the door open instead of being changed in the privacy of a bathroom, the nurse's office, or behind a closed door.

330.   The Students' genitals were routinely exposed to students and staff of Defendant SSSD without their consent, violating their right to privacy and bodily integrity.

331.   Because of Defendants Rosemond's and Defendant Juba's explicit refusal to provide toileting assistance to the Students in direct violation of their employment responsibilities, the Students' peers were frequently tasked with toileting and changing the Students throughout the school day.

332.   Defendants Rosemond and Juba's refusal to toilet the Students resulted in the Students' genitalia being regularly exposed to their peers without the Students' consent.

333.   As high-school aged students undergoing puberty, the Students were subjected to pervasive sexual embarrassment and harassment by being exposed to and changed by their peers.

334.   Defendants recklessly disregarded and acted with deliberate indifference to the Students' right to privacy and bodily integrity and failed to provide adequate supervision and care to the Students.

335.   Defendant SSSD had actual notice and knowledge that its acts and omissions by failing to oversee, train, supervise, and discipline Defendants on how to properly honor the rights of students with significant support needs, specifically on how adequately toilet and change the Students, was substantially certain to lead to violations of the Students' constitutional rights.

336.   The need for training, supervision, and discipline was so obvious that Defendant SSSD was deliberately indifferent to the need.

337.   The violation of the Students' rights as a result of the acts and omissions of Defendant SSSD was highly predictable, plainly obvious, and inevitable as a result of the policies, practices, and customs maintained by Defendants SSSD, Wicks, Tennyson, and Peterson.

338.    As a result of Defendant SSSD's policies, customs, and/or practices, the Students suffered abuse and emotional distress.

339.    Defendant SSSD had actual knowledge of and was deliberately indifferent to the abuse and discrimination that the Students were subject to, which was so severe that it deprived them of equal benefits of their educational experience based upon their disability status.

*Abuse of C.B.*

340.    Upon information and belief, with reckless disregard and deliberate indifference to C.B.'s rights, C.B. was stripped of her clothes in public, including in front of other students and staff of Defendant SSSD, instead of using a private changing area.

341.    C.B. has a right to privacy regarding the exposure of her genitals.

342.    C.B., as a non-verbal student, was helpless and could not stop or complain to others about the misconduct she was regularly subjected to.

343.    C.B. continues to exhibit behavioral and emotional disturbances and decline related to her attendance at SSHS to this day.

344.    As a result of Defendant SSSD's policies, customs, and/or practices, C.B. suffered abuse and emotional distress.

345.    Defendant SSSD had actual notice and knowledge that its acts and omissions by failing to train, supervise, and discipline Defendants with regard to their failure to change C.B.'s clothes privately, was substantially certain to lead to violations of C.B.'s constitutional rights.

346.    The need for training, supervision, and discipline was so obvious that Defendant SSSD was deliberately indifferent to the need.

347.    The violation of C.B.'s rights as a result of the acts and omissions of Defendant

SSSD was highly predictable, plainly obvious, and inevitable as a result of the policies, practices,

and customs maintained by Defendants SSSD, Wicks, Tennyson, and Peterson.

348.    Upon information and belief, consistent rights violations exist at Defendant

SSSD's Steamboat Springs High School with regard to students with disabilities on a systemic

level.

349.    Upon information and belief, Defendant SSSD had actual knowledge of and was

deliberately indifferent to the abuse and discrimination that C.B. was subject to, which was so

severe that it deprived her of equal benefits to her educational experience based upon her

disability status.

### E.  Racial Discrimination Against S.R.

350.    S.R. is a Black student.

351.    S.R. is of Jamaican national origin.

352.    S.R. immigrated with Plaintiff Mayo Thompson to the United States in 2018.

353.    During the 2022-2023 school year, S.R. was one of nine total Black students

attending SSHS.

354.    During the 2022-2023 school year, Black students made up only 1.1% of the

student body at SSHS.

355.    Defendant Rawlings, in performing her official employment duties and within the

scope of her employment with Defendant SSSD, knowingly called S.R. a "monkey" on multiple

occasions in a discriminatory context.

356.    S.R. has the perceptive ability to understand she was called a "monkey," and to understand the negative connotations, historical implications, and the derogatory, discriminatory, and racist purpose of Defendant Rawlings' remark.

357.    Defendant Rawlings' conduct was severe, pervasive, objectively offensive, and deprived S.R. of educational benefits instead of serving a legitimate educational purpose or interest.

358.    Defendant Rawlings' conduct was reported to Defendant SSSD, Wicks, Tennyson, and/or Peterson, all of whom were deliberately indifferent to the conduct.

359.    Therefore, Defendants SSSD, Wicks, Tennyson, and Peterson had knowledge of Defendant Rawlings' racial discrimination.

360.    Defendants SSSD, Wicks, Tennyson, and Peterson had the power to prevent or aid in the prevention of such racial discrimination but failed to discipline Defendant Rawlings or otherwise take any action to protect S.R. from racial discrimination.

361.    The policies, customs, and practices of Defendant SSSD as described herein deprived S.R. of her rights, privileges, and liberties, and have caused her other damages in an amount to be determined by the trier of fact.

**FIRST CLAIM FOR RELIEF**
**Violation of Title II of the ADA of 1990**
**42 U.S.C. § 12131 et seq**
**(All Plaintiffs v. All Defendants)**

362.    Plaintiffs incorporate and reallege, by reference, all other paragraphs in this Complaint as if fully set forth herein.

363.    Section 504 of the Rehabilitation Act of 1973, as amended, 29 U.S.C. § 794 ("Section 504"), provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the

benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." The Rehabilitation Act defines "program or activity" to include "all of the operations of . . . a department, agency, special purpose district, or other instrumentality of a State or of a local government . . . any part of which is extended Federal financial assistance."

364.     The Students are disabled within the meaning of Section 504.

365.     The Students, at all relevant times, were able to attend, participate, and pursue an education at Steamboat Springs High School.

366.     Defendant SSSD is a recipient of federal financial assistance.

367.     The Students were discriminated against as a result of their disabilities.

368.     The abuse the Students were subject to, described in detail above, was intentional.

369.     Defendants intentionally acted against the Students knowing the risks associated with such conduct.

370.     Such abuse and discrimination effectively denied the Students the benefits of full and equal access to Defendant SSSD's services, programs, and other activities associated therewith, and amounted to a violation of their rights under Section 504.

371.     As a direct and proximate result of Defendants' acts and omissions, the Students suffered and will continue to suffer from serious physical injuries, non-economic damages, emotional distress, and physical and cognitive impairment which will substantially reduce their quality of life.

372.     The policies, customs, and practices of Defendant SSSD as described herein deprived the Students of their rights, privileges, and liberties secured by Section 504, and caused the Students other damages in an amount to be determined by the trier of fact.

**SECOND CLAIM FOR RELIEF**
**Violation of Title II of the ADA of 1990**

41

**42 U.S.C. § 12131 et seq**
**(All Plaintiffs v. All Defendants)**

373.    Plaintiffs incorporate and reallege, by reference, all other paragraphs in this Complaint as if fully set forth herein.

374.    Title II of the ADA, 42 U.S.C. § 12131 et seq. ("ADA") commands that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity.

375.    The Students are disabled within the meaning of the ADA.

376.    By reason of their disabilities, the Students were subject to discrimination by way of disparate treatment, disparate impact, and failure to make a reasonable accommodation at the hands of Defendants SSSD and its employees, including Defendants Rawlings, Rosemond, and Juba.

377.    As a result of the Students' disabilities and inability to protect themselves, Defendants subjected the Students to child abuse, which amounts to discrimination by means of disparate treatment.

378.    As a result of the Students disabilities and Defendant SSSD's policies, customs, and/or practices, the Students have suffered constitutional deprivations on a systemic level, which amounts to discrimination by means of disparate impact.

379.    Defendants SSSD, Wicks, Tennyson, and Peterson failed to make reasonable accommodations for the Students by failing to train and supervise Defendant SSSD employees, including Defendant Rawlings, Rosemond, and Juba with regard to legitimate educational activities and proper wheelchair handling, resulting in child abuse rather than a helpful accommodation.

380.    By reason of the Students' disabilities, the Students were denied the benefits of Defendant SSSD's services because they were denied a physical education period with activities that served a legitimate educational purpose and interest, and instead were subject to child abuse.

381.    Defendants' discrimination and denial of services violated the Students' rights provided by the ADA.

382.    As a direct and proximate result of Defendants' acts and omissions, the Students have suffered and will continue to suffer from serious physical injuries, non-economic damages, emotional distress, and physical and cognitive impairment which will substantially reduce their quality of life.

383.    The policies, customs, and practices of Defendants as described herein deprived the Students of their rights, privileges, and liberties secured by the ADA, and caused the Students other damages in an amount to be determined by the trier of fact.

**THIRD CLAIM FOR RELIEF**
**Violations of the Fourth Amendment of the United States Constitution**
**42 U.S.C. § 1983**
**(All Plaintiffs v. All Defendants)**

384.    Plaintiffs incorporate and reallege, by reference, all other paragraphs in this complaint as if fully set forth herein.

385.    The Students all have a constitutional right under the Fourth Amendment to the United States' Constitution to be free from unreasonable searches and seizures, which includes a constitutional right to bodily security, integrity, and freedom from unreasonable assaults.

386.    A seizure occurs under the Fourth Amendment when a reasonable person would have believed he was not free to leave.

387.    In the school context, a seizure is unreasonable under the Fourth Amendment when the limitation on a student's freedom of movement significantly exceeds that inherent in

everyday, compulsory attendance and when the seizure was unjustified at its inception and not reasonably related in scope to the circumstances which justified the interference in the first place.

388.    Defendant SSSD employees, including Defendant Rosemond, Juba, and Rawlings, routinely subjected the Students to unreasonable seizures in violation of their Fourth Amendment rights.

389.    These seizures were never justified in their inception, nor were they reasonably related in scope to the circumstances that warranted the interference in the first place.

390.    Defendants' conduct was objectively unreasonable under the circumstances and constituted a substantial departure from accepted professional judgment, practice, and standards.

391.    Defendants had actual knowledge of the unreasonable seizures of the Students.

392.    Defendant SSSD, through its final policymakers, maintained policies, practices, and customs that so obviously and inevitably resulted in the violation of the Students' Fourth Amendment rights.

393.    Defendants' acts and omissions were committed within the scope of their authority and employment with Defendant SSSD, and thus were committed under color of state law.

394.    Defendant SSSD's policies, practices, and customs of failing to train, oversee, supervise, and discipline its employees, were the actual and proximate cause of the violation of the Students' Fourth Amendment rights and were the moving force behind the Students' injuries.

395.    Defendants' acts and omissions as described above constitute a blatant violation of the Students' Fourth Amendment rights of which reasonable people in Defendants' position knew or should have known.

396.    As a direct and proximate result of Defendants' acts and omissions, the Students have suffered and will continue to suffer from serious physical injuries, non-economic damages, emotional distress, and physical and cognitive impairment, which will substantially reduce each of the Students' quality of life going forward.

397.    The policies, customs, and practices of Defendants as described herein deprived the Students of their rights, privileges, liberties, and immunities secured by the United States Constitution and other laws and caused the Students other damages in an amount to be determined by the trier of fact.

## FOURTH CLAIM FOR RELIEF
**Violations of Substantive Due Process under the Fourteenth Amendment of the United States Constitution**
**42 U.S.C. § 1983**
**(All Plaintiffs v. All Defendants)**

398.    Plaintiffs incorporate and reallege, by reference, all other paragraphs in this Complaint as if fully set forth herein.

399.    Under the Fourteenth Amendment of the United States Constitution, the Students, as public-school students, have a constitutionally protection liberty interest in personal security, bodily integrity, and freedom from unjustified intrusion on personal security by state actors.

400.    Under the Fourteenth Amendment of United States' Constitution Plaintiffs Mayo Thompson, Candy Granger, Heathre Naused, and Eric and Amy Bender have a protected liberty interest in the care, custody, and control of their children, the Students.

401.    The Plaintiffs' liberty interests are fundamental interests protected under the Fourteenth Amendment and deeply rooted in American culture, history, and tradition.

402.    None of the actions or inactions of the Defendants as described above served any legitimate educational purpose.

403.     Nor were the conscious-shocking assaults and discriminatory treatment described above ever necessary to comply with Defendant SSSD's rules and/or regulations.

404.     Defendants participated in conduct that is properly characterized as arbitrary and conscious shocking in a constitutional sense.

405.     Defendants denied the Plaintiffs and the Students their liberty without due process of law.

406.     The above-described conduct of the Defendants in their treatment of the Students is offensive to human dignity and is shocking to the conscious.

407.     Defendants had actual knowledge of the dangerous conduct, and were aware of the inevitability of violating the Students' constitutional right to bodily security and integrity, but recklessly disregarded such risk even with knowledge it was substantially certain to occur.

408.     Defendant SSSD, through its final policymakers, maintained policies, practices, and customs that so obviously and inevitably would result in the violation of the Students' Fourteenth Amendment substantive due process rights.

409.     As a result of Defendant SSSD's policies, practices, and customs, constitutional deprivations against disabled students occur on a systemic level at SSHS.

410.     Defendants SSSD, Wicks, Tennyson, Peterson, Rosemond, and Juba were charged with providing a safe educational environment to the Students, but they instead violated the Students' substantive due process rights as a result of unconstitutional policies, practices, and/or customs by failing to train, supervise, and discipline the employees under their supervision.

411.     Defendants SSSD, Wicks, Tennyson, Peterson, Rosemond, and Juba were charged with providing a safe educational environment to the Students, but they instead violated the

Plaintiffs' substantive due process rights by acting with deliberate indifference and reckless

disregard to their liberty interest in the care, custody, and control of the Students.

412.    Defendant SSSD's policies, practices, and customs of failing to train, supervise,

and discipline its employees, were the actual and proximate cause that led to the violation of the

Students' Fourteenth Amendment substantive due process rights and were the moving force

behind their injuries.

413.    Defendants' acts and omissions as described above violated the Students' rights,

which were clearly established at the time and that reasonable people employed in Defendants'

capacities knew or should have known.

414.    Defendants' acts and omissions were committed within the scope of their duties

and employment, and thus under color of state law.

415.    As a direct and proximate result of Defendants' acts and omissions, the Students

have suffered and will continue to suffer from serious physical injuries, non-economic damages,

emotional distress, and physical and cognitive impairment which will substantially reduce their

quality of life.

416.    The policies, customs, and practices of Defendants as described herein deprived

the Students of their rights, privileges, liberties, and immunities secured by the United States

Constitution, and caused the Students other damages in an amount to be determined by the trier

of fact.

## FIFTH CLAIM FOR RELIEF
**Violation of Procedural Due Process under the Fourteenth Amendment of the
United States Constitution
42 U.S.C. § 1983
(All Plaintiffs v. All Defendants)**

417.    Plaintiffs incorporate and reallege, by reference, all other paragraphs in this

Complaint as if fully set forth herein.

418.    The Students have a protected property interest in their public education and a liberty interest in their reputation, and therefore are entitled to certain procedural due process protections.

419.    Plaintiffs have a protected liberty interest in the care, custody, and control of their children, the Students, which includes the right to control the education of their children and are therefore entitled to certain procedural due process protections.

420.    The Plaintiffs' liberty interests are fundamental interests protected under the Fourteenth Amendment and deeply rooted in American culture, history, and tradition.

421.    The above-described conduct of Defendants in abusing the Students amounts to a deprivation of the Students' constitutional right to procedural due process in that the Students were not afforded an appropriate level of process.

422.    Defendants did not provide any process to the Students before violating their clearly established rights to be free from abuse.

423.    Plaintiffs never consented to the actions and inactions that the Defendants, and each of them, have taken against their liberty interests.

424.    Plaintiffs never received prior notice of the pattern and practice of abuse that occurs under the supervision and direction of Defendant SSSD.

425.    Defendants had actual knowledge of the dangerous conduct, and were aware of the inevitability of the violation of the Students' constitutional rights, but recklessly disregarded such risk while knowing it was substantially certain to occur.

426.    Defendant SSSD, through its final policymakers, maintained policies, practices, and customs that so obviously and inevitably would result in the violation of the Students'

Fourteenth Amendment procedural due process rights and yet were deliberately indifferent to such impending violations.

427.    As a result of Defendant SSSD's policies, practices, and customs, constitutional deprivations against disabled students occur on a systemic level at SSHS.

428.    Defendants' acts and omissions as described above violated the Students' rights, which were clearly established at the time and that reasonable people employed in Defendants' capacities knew or should have known.

429.    Defendants' acts and omissions were committed within the scope of their duties and employment, and thus under color of state law.

430.    As a direct and proximate result of Defendants' acts and omissions, the Students have suffered and will continue to suffer from serious physical injuries, non-economic damages, emotional distress, and physical and cognitive impairment, which will substantially reduce their quality of life.

431.    The policies, customs, and practices of Defendants as described herein deprived the Students of their rights, privileges, liberties, and immunities secured by the United States Constitution, and caused the Students other damages in an amount to be determined by the trier of fact.

### SIXTH CLAIM FOR RELIEF
**Violation of the Equal Protection Clause of the Fourteenth Amendment of the
United States Constitution
42 U.S.C. § 1983
(All Plaintiffs v. All Defendants)**

432.    Plaintiffs incorporate and reallege, by reference, all other paragraphs in this Complaint as if fully set forth herein.

433.    The Fourteenth Amendment of the United States' Constitutions provides that "no state shall… deny to any person within its jurisdiction the equal protection of the laws."

434.    The Students, as public-school students, were to receive equal protection of the laws, and an equivalent educational experience similar to that of other students attending SSHS, from Defendant SSSD's employees.

435.    The Students were subjected to abuse and a hostile learning environment, to which no other students were subjected while attending SSHS.

436.    The Students were treated differently than other students similarly situated.

437.    Defendants' conduct as described herein amounts to intentional discrimination against the Students as students with disabilities.

438.    Defendant SSSD's intentional choice, through its final policymakers, to implement policies, customs, and practices that result in substantially different treatment of disabled students and students of color without a rational basis for doing so amounted to a violation of the Students' right to equal protection of the laws.

439.    Defendant SSSD's policies, practices, and customs of failing to train, supervise, and discipline its employees, were the actual and proximate cause that led to the violation of the Students' Fourteenth Amendment equal protection rights and were the moving force behind their injuries.

440.    Defendants' acts and omissions as described above violated the Students' rights, which were clearly established at the time and that reasonable people employed in Defendants' capacities knew or should have known.

441.    Defendants' acts and omissions were committed within the scope of their duties and employment, and thus under color of state law.

442.    Defendants SSSD, Rawlings, Rosemond, and Juba acted with invidious intent to discriminate against the Students during each respective assault described herein.

443.    Defendants Rawlings' conduct, independently and cumulatively, as described in detail above, amounted to intentional discrimination against a disabled student of color, S.R. without a rational basis for doing so.

444.    As a direct and proximate result of Defendants' acts and omissions, the Students have suffered and will continue to suffer from serious physical injuries, non-economic damages, emotional distress, and physical and cognitive impairment which will substantially reduce her quality of life.

445.    The policies, customs, and practices of Defendant SSSD as described herein deprived the Students of their rights, privileges, liberties, and immunities secured by the United States Constitution, and caused the Students other damages in an amount to be determined by the trier of fact.

**SEVENTH CLAIM FOR RELIEF**
**Hostile Environment in Violation of Title VI**
**42 U.S.C. § 2000d et seq.**
**(Plaintiff Mayo Thompson/S.R. v. Defendants SSSD, Wicks, Tennyson, Peterson, and Rawlings)**

446.    Plaintiffs incorporate and reallege, by reference, all other paragraphs in this Complaint as if fully set forth herein.

447.    Title VI provides in part that "no person . . . shall, on the ground of race, color or national origin, be excluded from participation in, be denied the benefits of, or subjected to discrimination under any program or activity receiving Federal financial assistance."

448.    S.R., as a Black student of Jamaican national origin, is a member of the class Title VI intends to protect.

449.    Defendant SSSD is a recipient of federal financial assistance.

450.     Defendant Rawlings, in performing her official employment duties and within her
employment capacity with Defendant SSSD, knowingly called S.R. a "monkey" on multiple
occasions in a discriminatory context.

451.     Defendant Rawlings' conduct was severe, pervasive, objectively offensive, and
deprived S.R. of educational benefits by instead of serving a legitimate educational purpose or
interest, subjected her to racism.

452.     Defendant Rawlings' conduct was reported to Defendant SSSD, Wicks, Tennyson,
and/or Peterson, all of whom were deliberately indifferent to the conduct.

453.     As a direct and proximate result of Defendants' acts and omissions, S.R. has
suffered and will continue to suffer from serious physical injuries, non-economic damages,
emotional distress, and physical and cognitive impairment which will substantially reduce her
quality of life.

454.     The policies, customs, and practices of Defendant SSSD as described herein
deprived S.R. of her rights, privileges, and liberties secured by Title VI, and caused her other
damages in an amount to be determined by the trier of fact.

### EIGHTH CLAIM FOR RELIEF
**Racial and Ethnic Discrimination**
**42 U.S.C. § 1981**
**(Plaintiff Mayo Thompson/S.R. v. Defendants SSSD, Wicks, Tennyson, Peterson and
Rawlings)**

455.     Plaintiffs incorporate and reallege, by reference, all other paragraphs in this
Complaint as if fully set forth herein.

456.     42 U.S.C. § 1981 states: "All persons within the jurisdiction of the United States
shall have the same right in every State and Territory to make and enforce contracts, to sue, be
parties, give evidence, and to full and equal benefit of all laws and proceedings for the security

of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

457.    S.R., as a Black student, is a member of the class in which 42 U.S.C. § 1981 seeks to protect.

458.    Defendant Rawlings, in performing her official employment duties and within her employment capacity with Defendant SSSD, knowingly called S.R. a "monkey" on multiple occasions in a discriminatory context.

459.    The discrimination S.R. was subjected to interfered with a protected activity.

460.    As a direct and proximate result of Defendants' acts and omissions, S.R. has suffered and will continue to suffer from serious physical injuries, non-economic damages, emotional distress, and physical and cognitive impairment which will substantially reduce her quality of life.

461.    The policies, customs, and practices of Defendant SSSD as described herein deprived S.R. of her rights, privileges, and liberties secured by 42 U.S.C. § 1981, and caused her other damages in an amount to be determined by the trier of fact.

### NINTH CLAIM FOR RELIEF
**Action for Neglect to Prevent**
**42 U.S.C. § 1986**
**(Plaintiff Mayo Thompson/S.R. v. Defendants SSSD, Wicks, Tennyson, and Peterson)**

462.    Plaintiffs incorporate and reallege, by reference, all other paragraphs in this Complaint as if fully set forth herein.

463.    42 U.S.C. § 1986 states that "[e]very person, who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party

injured…for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented…"

464.    42 U.S.C. § 1985(3) makes it unlawful for two or more persons to conspire for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws or deprive them of having and exercising any right or privilege of a citizen of the United States.

465.    42 U.S.C. § 1985 is a further vehicle by which victims of racial harassment and discrimination enforce their rights to enjoy the same rights as white citizens.

466.    Defendant SSSD is a "person" within the meaning of 42 U.S.C. § 1986.

467.    Defendants SSSD, Wicks, Tennyson, and Peterson had knowledge of Defendant Rawlings' racial discrimination.

468.    Defendants SSSD, Wicks, Tennyson, and Peterson had power to prevent or aid in the prevention of such racial discrimination but failed to discipline Defendant Rawlings or otherwise take action to protect S.R. from racial discrimination.

469.    The actions and inactions of Defendants SSSD, Wicks, Tennyson, and Peterson amount to a deprivation of S.R.'s rights under 42 U.S.C. § 1985.

470.    Because S.R.'s deprivation of rights occurred as a result of the conduct of Defendants SSSD, Wicks, Tennyson, and Peterson, S.R. has alleged a conspiracy to deprive her of her rights within the meaning of 42 U.S.C. § 1986.

471.    Indeed, Defendants SSSD, Wicks, Tennyson, and Peterson encouraged such deprivation through their neglect and inaction.

472.    Defendants SSSD, Wicks, Tennyson, and Peterson all had, and continue to have, the power to prevent or aid in preventing the commission of race-based discrimination but have neglected to make use of their power.

473.    As such, Defendants SSSD, Wicks, Tennyson and Peterson are liable for damages caused by their neglect to S.R.

474.    As a direct and proximate result of Defendants' acts and omissions, S.R. has suffered and will continue to suffer from serious physical injuries, non-economic damages, emotional distress, and physical and cognitive impairment which will substantially reduce her quality of life.

## JURY DEMAND

475.    PLAINTIFFS DEMAND A TRIAL ON ALL ISSUES TRIABLE.

Plaintiffs respectfully request that this Court enter judgment in her favor and against Defendants, and award all relief allowed by law, including but not limited to the following:

a.    All appropriate relief at law and equity;

b.    Declaratory relief and other appropriate equitable relief;

c.    Economic losses on all claims as allowed by law;

d.    Non-economic compensatory and consequential damages, including damages for emotional distress, humiliation, loss of enjoyment of life, and other pain and suffering on all claims allowed by law in an amount to be determined at trial;

e.    Attorneys' fees and costs associated with this action;

f.    Pre- and post-judgment interest at the appropriate lawful rate; and

g.    Any further relief that this court deems just and proper, and any other relief as allowed by law.

Respectfully submitted this 29th day of January 2025.

*(Original signature on file at Burg Simpson Eldredge Hersh & Jardine, P.C.)*

*/s/ Jessica L. Breuer*
Jessica L. Breuer, Reg. No. 46288
**BURG SIMPSON**
**ELDREDGE HERSH & JARDINE, P.C.**
40 Inverness Drive East
Englewood, CO 80112
Fax: 303-708-0527
Telephone: 303-792-5595
jbreuer@burgsimpson.com
*Attorneys for the Plaintiff*