## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.  1:25-cv-00315-CNS-SBP

MAYO THOMPSON, individually, and on behalf of S.R., a minor;
CANDY GRANGER, individually, and on behalf of S.U., a minor;
HEATHER NAUSED, individually, and on behalf of A.N., a minor;
ERIC BENDER and AMY BENDER, individually, and as husband and wife, on behalf of C.B., a minor,

Plaintiffs,

 v.

STEAMBOAT SPRINGS SCHOOL DISTRICT RE-2, a municipal entity;
CELINE WICKS, in her individual and official capacities;
ANNE-MARIE TENNYSON, in her individual and official capacities;
RON PETERSON, in his individual and official capacities;
SYLVIA RAWLINGS, in her individual and official capacities;
CHUCK ROSEMOND, in his individual and official capacities; and
DAN JUBA, in his individual and official capacities,

Defendants.

---

### SCHOOL DISTRICT DEFENDANTS' PARTIAL MOTION TO DISMISS

---

Defendants Steamboat Springs School District RE-2, Dr. Celine Wicks, Ron Peterson, Chuck Rosemond, and Dan Juba (collectively, the "School District Defendants") move to dismiss Claims 3-9 based on Fed. R. Civ. P. 12(b)(1) and (b)(6). The Individual District Defendants, Dr. Wicks and Messrs. Peterson, Rosemond, and Juba, also move to dismiss Claims 1 and 2 as asserted against them under Rule 12(b).

### CERTIFICATE OF CONFERRAL

Pursuant to D.C.Colo.LCivR 7.1(a), undersigned counsel conferred with Plaintiffs' counsel by email on August 22nd, providing Plaintiffs' counsel with a list of defects in the

complaint, by claim, and relevant case law, and by phone on August 25th. Plaintiffs have

opted not to amend their complaint and oppose this motion.

## LEGAL STANDARDS FOR MOTION TO DISMISS

The School District Defendants bring this motion under Fed. R. Civ. P. 12(b)(1) and

(6). A party may challenge a court's subject-matter jurisdiction under Rule 12(b)(1), which

may be done "through a facial or factual attack." *Laufer v. Looper*, 22 F.4th 871, 875 (10th

Cir. 2022). "A facial attack assumes the allegations in the complaint are true and argues

they fail to establish jurisdiction. A factual attack goes beyond the allegations in the

complaint and adduces evidence to contest jurisdiction." *Id.*

A party may challenge the sufficiency of the pleadings under Rule 12(b)(6). To

survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009). A claim is "plausible" only when the plaintiff pleads facts which

allow "the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* "Sheer possibility" is not plausibility. *Id.*

## RELEVANT ALLEGATIONS[1]

Students S.R., S.U., C.B., and A.N. ("Students"), who each have disabilities, were

in the significant support needs (SSN) classroom at Steamboat Springs High School

during the 2022-2023 school year. (ECF 1 ¶¶ 83.) The SSN classroom is a specialized

instructional setting for students who require intensive, individualized support due to their

disabilities. (*Id.* ¶¶ 60-63.) During that school year, Defendant Celine Wicks was

---

[1] Defendants accept as true the allegations in ECF 1 for purposes of this motion only. Defendants
deny many of the allegations, which are categorically false. (*See* SSSD's Answer to Claims 1 and
2, the only claims not subject to this motion, filed simultaneously herewith, ECF 40.)

Superintendent of the District (*id.* ¶ 64); Defendant Ron Peterson was Principal of the High School (*id.* ¶ 70); and Defendants Dan Juba and Chuck Rosemond were special education teachers (*id.* ¶¶ 72 & 75). Defendant Sylvia Rawlings was a paraprofessional assigned to the SSN classroom. (*Id.* ¶ 147.) The allegations specific to each Student are as follows:

Student **S.R.** has cerebral palsy. (*Id.* ¶ 85.) She is nonverbal and wheelchair bound. (*Id.* ¶ 88-89.) Defendant Rawlings was a paraprofessional who worked with S.R. (*See id.* ¶¶ 151, 209.) On several occasions, Ms. Rawlings called S.R., who is Black, a "monkey." (*Id.* ¶¶ 350, 355.) On several occasions, Ms. Rawlings spun S.R.'s wheelchair in the gymnasium while S.R. was strapped in. (*Id.* ¶ 210.) Other paraprofessionals had witnessed Ms. Rawlings spinning S.R. in her wheelchair and had informed Defendants Tennyson and Peterson. (*Id.* ¶ 213.) On January 31, 2023, Ms. Rawlings spun S.R.'s wheelchair in the gymnasium, and the wheelchair tipped over, resulting in a concussion and forehead contusion to S.R. (*Id.* ¶ 216; S.R. Video, **Ex. A**.[2]) The incident was promptly reported to District officials, who met with Ms. Thompson the following day and started an investigation. (*Id.* ¶¶ 240, 250.) Ms. Rawlings resigned from the District on February 3, 2023. (*Id.* ¶ 252.) Plaintiffs do not allege that S.R. missed school due to her injury.

Student **S.U.** has physical and intellectual disabilities, including Angelman's Syndrome, which causes delayed development, speech impairment, and difficulties with

---

[2]  The Court may consider this video without converting this motion into one for summary judgment. The video is cited in the Complaint (ECF 1 ¶¶ 240, 244); there is no dispute as to its authenticity; and it is central to the Complaint. *Est. of Harmon v. Salt Lake City*, No. 20-4085, 2021 WL 5232248, at *2 (10th Cir. Nov. 10, 2021) (citing *Waller v. City & Cty. of Denver*, 932 F.3d 1277, 1282 (10th Cir. 2019)). In addition, courts may reject well-pleaded allegations that are "blatantly contradicted" by video evidence. *See id.*

movement and balance. (*Id.* ¶ 95-96.) He is wheelchair-bound and nonverbal. (*Id.* ¶¶ 97-98.) On May 25, 2023, an unnamed District employee ("Employee A") handled S.U. inappropriately in the school hallway. (*Id.* ¶¶ 279-281.) Per the Complaint, there is a video of this incident. (S.U. Video, **Ex. B**.)[3] Two weeks earlier, Student S.U. had hurt his head in the gymnasium while being supervised by Defendant Juba. (*Id.* ¶ 268.)

**Student C.B.** is non-verbal and requires toileting assistance. (*Id.* ¶¶ 119-120.) On several occasions, C.B.'s clothes were changed in view of other students and staff, instead of in a private changing area. Defendants Rawlings, Juba, and Rosemond failed to provide adequate toileting assistance. (*Id.* ¶ 201.)

**Student A.N.** has intellectual and physical disabilities, including cerebral palsy. (*Id.* ¶ 109.) He is nonverbal and is wheelchair-bound. (*Id.* ¶¶ 110-111.) In May 2023, while under the supervision of Messrs. Juba and Rosemond, A.N.'s arm became stuck between his wheelchair and its wheel, causing injury. (*Id.* ¶¶ 309 & 311.)

**General allegations relating to all Students.**

All Students were subjected to unspecified instances of verbal abuse by staff members. (*Id.* ¶ 319.) Further, on unspecified occasions and for unspecified reasons, Students were placed in a "sensory room," a closet without natural light. (*Id.* ¶ 176.)

---

[3] *See* fn. 2, *supra*. The Court may consider the video footage of the May 25, 2023 hallway incident because its authenticity is not in dispute, it is central to the Plaintiffs' claims, and it is explicitly referenced in the Complaint. (ECF 1 ¶¶ 279-281.)

## ARGUMENT

**I.    Parents lack standing to assert any of their claims (All Claims).**

Parents do not have standing to assert any of their nine claims because such claims are predicated on alleged violations of their children's rights, not their own.[4]

First, Parents assert individual claims under Section 504 and the ADA, but their claims are premised entirely on discrimination against their children. (ECF 1 ¶¶ 362-83, Claims 1 & 2.) Courts in this Circuit have recognized that parents lack standing to assert such claims. E.g., *Robert R. v. Jefferson Cnty. Sch. Dist. R-1*, No. 1-20-cv-01558-CNS-NRN, 2022 WL 4104273, at *6 (D. Colo. Sept. 8, 2022); *Forrester v. Indep. Sch. Dist. No. 19 of Carter Cty., Okla.,* No. civ-16-131-KEW, 2017 WL 1208456, at *2 (E.D. Okla. Mar. 31, 2017). Thus, the Court should dismiss Parents' First and Second Claims.

Similarly, Parents lack standing to bring claims under Section 1983, Title VI, Section 1981, and Section 1986 (Claims 3-9) based on alleged violations of their children's rights. *See I.G. ex rel. Grunspan v. Jefferson Cnty. Sch. Dist.*, 452 F. Supp. 3d 989, 998 (D. Colo. 2020) ("A plaintiff may not bring a § 1983 claim that is derivative of another person's § 1983 claim"); *id.* ("Courts have consistently held that parents are not the intended beneficiaries of school programs and, therefore, may not assert Title VI claims on their own behalf."); *Tracy v. Simplifi*, No. 2:21-cv-044-RJS-CMR, 2022 WL 1230410, at *3 (D. Utah Jan. 19, 2022) (because § 1985 cause of action is personal to the party asserting conspiracy to violate his civil rights, third party asserting that claim lacks standing); *Santistevan v. Loveridge*, 732 F.2d 116, 118 (10th Cir. 1984) ("[T]here

---

[4] Claims 1-3 and 6 are brought by all Parents; Claims 7-9 are brought by Ms. Thompson.

can be no valid claim under § 1986 of neglect to prevent a known conspiracy, in the absence of a conspiracy under § 1985.").

Parents assert that "All Defendants" deprived them of their constitutional right to direct the "care, custody, and control of their children." (ECF 1 ¶¶ 398-431, Claims 4 & 5.) These claims, however, are premised entirely on alleged harm suffered by their children, not them, and Parents lack standing to assert such claims. *I.G. ex rel. Grunspan*, 452 F. Supp. 3d at 998. While Parents allege that the "Defendants" violated their liberty interests (e.g., ECF ¶¶ 406, 423-24), these vague and conclusory allegations do not meet the heightened pleading standard under *Iqbal* or *Twombly*. *See Burnett v. Mortgage Elec. Reg. Sys., Inc.*, 706 F.3d 1231, 1240 (10th Cir. 2013) (vague and conclusory allegations will not suffice under *Twombly*); *see also Kan. Penn Gaming, L.L.C. v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011) (Complaints asserting Section 1983 claims against individual defendants must specify "exactly who is alleged to have done what to whom. . . .").

Accordingly, the Parents lack standing to bring any of their nine asserted claims, and Parents must therefore be dismissed as parties.

**II.    The Court should dismiss the Section 504, ADA, and Title VI claims against Defendants Wicks, Peterson, Rosemond, and Juba (Claims 1, 2, & 7) because individuals are not subject to liability under those statutes.**

Plaintiffs assert claims under Section 504, ADA, and Title VI against "all Defendants," which would necessarily include Individual Defendants Wicks, Peterson, Rosemond, and Juba. Individuals, however, are not subject to liability under these statutes, which impose obligations on recipients of federal funds, e.g., public entities. *See Barnes v. Gorman*, 536 U.S. 181, 185 (2002) (remedies under Section 504 and Title II are tied to the obligations of funding recipients); *Montez v. Romer*, 32 F. Supp. 2d 1235, 1241

(D. Colo. 1999) (no individual liability under Section 504 and the ADA); *Silva v. St. Anne Cath. Sch.*, 595 F. Supp. 2d 1171, 1179 (D. Kan. 2009) ("The law is clear that individuals are not subject to liability under Title VI in their individual capacities."); *see also Shotz v. City of Plantation*, 344 F.3d 1161, 1171 (11th Cir. 2003) ("It is beyond question . . . that individuals are not liable under Title VI."). The Court should therefore dismiss Plaintiffs' First, Second, and Seventh Claims for Relief against Defendants Wicks, Peterson, Rosemond, and Juba.

**III.  Plaintiffs fail to plausibly allege a constitutional injury necessary to prove their Section 1983 claims (Claims 3-6).**

To prevail on a claim under Section 1983, "a plaintiff must establish that the defendants acted under color of state law and that the defendants' actions deprived the plaintiff of some federal right." *Sutton v. Utah State Sch. for Deaf & Blind,* 173 F.3d 1226, 1237 (10th Cir. 1999). Plaintiffs assert four constitutional rights they allege were violated: Fourth Amendment (Claim 3), Procedural and Substantive Due Process (Claims 4 & 5), and Equal Protection (Claim 6). (ECF 1 ¶¶ 384-445.) These claims should be dismissed because they fail to plausibly allege a requisite constitutional injury.

**A.  Plaintiffs' Fourth Amendment Claim is not plausible (Claim 3).**

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const., amend. IV. A person is "seized" under the Fourth Amendment when a government official, "by means of physical force or show of authority, terminates or restrains his freedom of movement." *Brendlin v. Cal.*, 551 U.S. 249, 254 (2007).

Plaintiffs do not identify what alleged conduct supports their Fourth Amendment claim, other than to vaguely assert that "Defendant SSSD employees, including

Defendant Rosemond, Juba, and Rawlings, routinely subjected the Students to unreasonable seizures in violation of their Fourth Amendment rights." (ECF 1 ¶ 388.)

The only allegations that theoretically implicate the Fourth Amendment are: (1) brief references to a "sensory room" and (2) the May 2023 interaction between Employee A and S.U. (*Id.* ¶¶ 176; 279-282.) Even assuming the truthfulness of the allegations concerning these incidents, they do not state a Fourth Amendment claim.

***Sensory Room***. The Complaint alleges that Plaintiffs were "unnecessarily and repeatedly" placed in a "sensory room." (*Id.* ¶ 176.) In the school context, the Tenth Circuit applies a two-part test to determine whether such conduct constitutes a Fourth Amendment seizure: first, whether the restraint on the student's freedom "significantly exceeds that inherent in everyday, compulsory school attendance," and second, whether the restraint was "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference." *Couture v. Bd. of Educ. of Albuquerque Pub. Sch.*, 535 F.3d 1243, 1250-1251 (10th Cir. 2008). While repeated or excessive use of a timeout room could, in some circumstances, satisfy this test, Plaintiffs allege no facts showing when, how often, or under what circumstances the room was used—whether as a disciplinary measure, a behavioral intervention, or otherwise. Without such context, there is no plausible basis to conclude that any use of the sensory room violated the Fourth Amendment. Conclusory allegations that the use of the sensory room was "unnecessary" are insufficient. *Ashcroft v. Iqbal*, 556 U.S. at 678.

***Hallway Incident***. Plaintiffs allege that on May 25, 2023, Employee A acted inappropriately toward S.U. (ECF 1 ¶¶ 279-281.) While Plaintiffs attempt to frame this conduct as a Fourth Amendment seizure, the Tenth Circuit evaluates the use of excessive

force against students by school officials under the Fourteenth Amendment's substantive

due process clause. *Muskrat v. Deer Creek Pub. Sch.*, 715 F.3d 775, 791 (10th Cir. 2013)

*Gonzales v. Passino*, 222 F. Supp. 2d 1277, 1280–81 (D.N.M. 2002).[5]

Other circuit courts of appeal have similarly applied substantive due process

standards to similar allegations, including prolonged physical restraint of students. See,

e.g., *Johnson v. Newburgh Enlarged Sch. Dist.,* 239 F.3d 246, 249 (2d Cir. 2001); *T.W. ex*

*rel. Wilson v. Sch. Bd. of Seminole Cnty.*, 610 F.3d 588, 595, 598 (11th Cir. 2010); *S.G. v.*

*Shawnee Mission Sch. Dist.,* USD No. 512, No. 20-cv-2078-JAR-ADM, 2023 WL 121961,

at *3 (D. Kan. Jan. 6, 2023).

Thus, the alleged hallway incident is governed by substantive due process

principles and cannot support a Fourth Amendment claim. Plaintiffs' Fourth Amendment

claim accordingly fails as a matter of law.

**B.    Plaintiffs' substantive due process claim is not plausible (Claim 4).**

Courts recognize two types of substantive due process claims: (1) government

"legislative action" that deprives a person of a recognized fundamental right, and (2)

government "executive action" that "deprive[s] a person of life, liberty, or property in a

manner so arbitrary it shocks the conscience." *Doe v. Woodard*, 912 F.3d 1278, 1300

(10th Cir. 2019). Plaintiffs' substantive due process claim is based on a "shocks the

conscience" theory. (ECF 1 ¶¶ 398-416.)

---

[5] Plaintiffs may argue that substantive due process is inapplicable because they have not alleged the employee's actions occurred in a disciplinary context. The Tenth Circuit has rejected this argument. *See Muskrat*, 715 F.3d 775, 785 (10th Cir. 2013).

Executive action that shocks the conscience "requires much more than negligence." *Woodard*, 912 F.3d at 1300. "Even the actions of a reckless official or one bent on injuring a person do not necessarily shock the conscience." *Id.* "To show that a defendant's conduct is conscience-shocking, a plaintiff must prove a government actor arbitrarily abused his authority or employed it as an instrument of oppression." *Id.* The behavior complaint of must be egregious and outrageous." *Id.*

In the school-discipline context, the Tenth Circuit asks whether the force used caused injury "so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." *Muskrat*, 715 F.3d at 787 (quotations omitted). Meeting this standard requires an extremely high degree of outrageousness. *See, e.g., Harris v. Robinson*, 273 F.3d 927, 931 (10th Cir. 2001) (ordering disabled child to clean toilet with bare hands was not conscience shocking; *Gonzales*, 222 F. Supp. 2d 1277 at 1282 (teacher hitting student with plastic bat purely out of anger was not conscience shocking).

Here, Plaintiffs focus primarily on two actions: (1) the wheelchair incident with Ms. Rawlings and (2) the hallway incident with Employee A. (ECF 1 ¶¶ 209-302.) As reflected in the videos of these incidents, neither Ms. Rawlings nor Employee A engaged in conscience-shocking behavior.

The January 31, 2023 recording shows Ms. Rawlings pushing S.R. in her wheelchair in the gymnasium, akin to pushing a swing. (Ex. A.) The interaction appears to be playful, and there are other individuals in the gymnasium who do not appear bothered by it. (*Id.*) At the 44-second mark, Ms. Rawlings pushes the wheelchair at an

angle with too much force, causing it to spin and fall over. (*Id.*) Contrary to the allegations that S.R. "was forced to lie helpless and immobilized on the gymnasium floor . . . until another professional noticed her lying there" (ECF 1 ¶ 218), the video shows Ms. Rawlings immediately attempting to assist S.R. and right the wheelchair. (Ex. A.) Within seconds, another employee arrives to help, and the wheelchair is upright within 20 seconds of tipping. Ms. Rawlings then appears to check in with S.R. before continuing to push her across the gymnasium floor in a gentler manner. (*Id.*)

This conduct does not reflect malice, sadism, or any attempt to harm S.R. At most, it reflects poor judgment and carelessness while attempting a playful interaction. Such conduct, even if negligent, falls far short of the "brutal and inhumane abuse of official power literally shocking to the conscience" standard required to state a substantive due process violation. *Muskrat*, 715 F.3d at 787.

The May 25, 2023 hallway video similarly contradicts the Complaint's allegations of conscience-shocking abuse. In that video, Employee A and S.U. appear to be having a playful interaction, during which S.U. goes limp and refuses to move. (Ex. B.) In an apparent attempt to move S.U., Employee A drags S.U. by his feet down the carpeted hallway. (*Id.*) Employee A's conduct was not appropriate, but there is no indicia of malice, sadism, or intent to cause harm. Instead, the video reflects a misguided attempt to address S.U.'s refusal to move. These actions do not amount to conscience-shocking conduct. In *Muskrat*, the Tenth Circuit held that even slapping a disabled child twice and restraining him at his desk out of frustration, and without any legitimate disciplinary purpose, did not shock the conscience absent lasting harm or evidence of malice. 715

F.3d at 789. Employee A's conduct comes nowhere near the conduct from *Muskrat*; and if that conduct was not conscience-shocking, neither was Employee A's.

Plaintiffs allege several other actions, including that: (1) District staff failed to provide toileting assistance to several students, including C.B., resulting in the students soiling their clothes (ECF 1 ¶¶ 328-349); staff failed to observe that A.N.'s arm came loose and got caught in his wheelchair, resulting in injury to A.N.'s skin (id. ¶¶ 306-11); and unspecified "verbal abuse" by staff (id. ¶¶ 319-327). Even presuming the truthfulness of these allegations, they would at most amount to negligence, not conscience-shocking abuse. *See Abeyta By & Through Martinez v. Chama Valley Indep. Sch. Dist., No. 19*, 77 F.3d 1253, 1257 (10th Cir. 1996) (requiring conduct "more serious than an ordinary tort" to be actionable under § 1983).

As noted, Parents' substantive due process claim is predicated entirely on alleged abuse of their children. (ECF 1 ¶¶ 398-416.) Because Plaintiffs have not plausibly alleged conscience shocking abuse against the students, Parents' due process claim also fails.

**C.    Plaintiffs fail to allege a cognizable injury under the Procedural Due Process Clause (Claim 5).**

To succeed on their procedural due process claim, Plaintiffs must establish that they were "deprived of a constitutionally cognizable liberty or property interest without adequate due process protections." *Abdi v. Wray*, 942 F.3d 1019, 1031 (10th Cir. 2019).

The students assert that District staff, through alleged "abuse," deprived them of their protected property interests in a public education and in their reputation. (ECF 1 ¶ 418.) Parents, for their part, seemingly argue that staff denied them due process to their fundamental parenting rights by failing to notify Parents of the "actions or inactions" amounting to that abuse. (Id. ¶¶ 423-24.) None of these claims are plausible.

The Supreme Court has recognized that students have a fundamental right to "notice and . . . some kind of hearing" when "complete deprivation of education occurs, such as when a student is removed from school for a lengthy time period." *Goss v. Lopez,* 419 U.S. 565, 574, 578-79 (1975). However, due process is not invoked where the interference with a student's property interest is *de minimis. Id.* at 576. For example, in *Couture v. Board of Education of Albuquerque Public Schools*, the Tenth Circuit concluded that a school did not infringe on the property interest of a special education student who missed 12 hours of classroom time over two and one-half months due to timeouts. *Couture*, 535 F.3d at 1257. In contrast, in *Goss*, the Supreme Court held that a ten-day suspension constituted total exclusion from the educational process. 419 U.S. at 574.

Here, Plaintiffs do not allege that any Student missed significant time at school or otherwise faced a "total exclusion from the educational process." *Id.* Plaintiffs allege generally that "Defendants imposed blanket exclusions that deprived the Students of access to educational and social experiences, further isolating them from their peers and hindering their overall development." (ECF 1 ¶ 175.) These broad assertions do not plausibly allege "total exclusion from the educational process" and thus do not meet the pleading standard of *Iqbal* or *Twombly*.

Plaintiffs also inexplicably allege that the Students suffered reputational harm. (ECF 1 ¶ 418.) While the Tenth Circuit has recognized that reputation may implicate a protected liberty interest, it is well-settled that reputational damage, standing alone, is insufficient to state a due process claim. *Paul v. Davis*, 424 U.S. 693, 701 (1976); *see Martin Marietta Materials, Inc. v. Kan. Dep't of Transp.*, 810 F.3d 1161, 1184 (10th Cir. 2016) ("Damage to reputation alone ... is not sufficient."). To invoke due process

protections, Plaintiffs must allege reputational harm coupled with the deprivation of a tangible interest, such as employment or legal status. They have not done so. The Complaint fails to explain how the District Defendants' alleged conduct damaged the Students' reputations, let alone how any tangible interest was affected by such damage.

For their part, Parents have not plausibly alleged that they have a fundamental due process right to notice of "actions or inactions" that staff may have engaged in related to the alleged abuse. The Supreme Court has "been reluctant to expand the concept of substantive due process" and has emphasized that the right to direct the care, custody, and control of one's children is "limited in scope" and exercises "the utmost care" in applying that right. *Wash. v. Glucksberg*, 521 U.S. 702, 720 (1997). They have also instructed that plaintiffs attempting to invoke this right must clearly articulate its scope. *Seegmiller v. LaVerkin City*, 528 F.3d 762, 769 (10th Cir. 2008). Plaintiffs do not plausibly allege facts supporting these essential elements.

### D.  Plaintiffs fail to allege a cognizable injury under the Equal Protection Clause (Claim 6).

Plaintiffs assert an equal protection claim based on disparate treatment. (ECF 1 ¶¶ 432-435.) The premise of this claim is that they were treated differently, based on disability (all Students) and race (as to S.R. only), than similarly situated "other students" at SSHS. (*Id.* ¶¶ 435-436.) This claim is not plausible either.

***Disability Discrimination***. To prove this claim, Plaintiffs "must first make a threshold showing that they were treated differently from others who were similarly situated to them." *Brown v. Montoya*, 662 F.3d 1152, 1172 (10th Cir. 2011).  In their complaint, Plaintiffs allege that Students are similarly situated to non-disabled peers at SSHS. (ECF 1 ¶¶ 435-436.) But as courts in this Circuit have clarified, non-disabled

students are not the correct comparator for disabled students, especially those with significant needs such as the students here. *See, e.g.*, *Ebonie S. ex rel. Mary S. v. Pueblo Sch. Dist. 60*, 819 F. Supp. 2d 1179, 1189 (D. Colo. 2011), *aff'd sub nom. Ebonie S. v. Pueblo Sch. Dist. 60*, 695 F.3d 1051 (10th Cir. 2012) (disabled students not similarly situated to non-disabled students, but rather to disabled students with similar needs). Thus, Plaintiffs' equal protection claim based on disability discrimination is not plausible.[6]

**Race Discrimination**. S.R. alleges that Ms. Rawlings' alleged "monkey" comments violated her equal protection rights. (ECF 1 ¶ 443.) To state a race-based equal protection claim, S.R. must plausibly allege that: (1) Ms. Rawlings treated her differently than similarly situated individuals, (2) Ms. Rawlings was motivated by racial animus, and (3) the alleged discriminatory treatment deprived S.R. of an educational benefit or opportunity. *Sturdivant v. Fine*, 22 F.4th 930, 936 (10th Cir. 2022).

S.R. fails to identify a similarly situated comparator. To be "similarly situated," the individuals "must be prima facie identical in all relevant respects or directly comparable in all material respects; although this is not a precise formula, it is nonetheless clear that similarly situated individuals must be very similar indeed." *Ebonie S.*, 819 F. Supp. at 1189. Thus, S.R. must allege that a White significant-needs student was treated more favorably, which she does not. To the contrary, the Complaint alleges that Ms. Rawlings treated all disabled students—including the three White co-Plaintiffs—unfavorably, including subjecting them to verbal abuse. (*See, e.g.,* ECF 1 ¶ 319.)

---

[6] Indeed, given Students' significant individual needs, and the fact that they receive educational services in the SSN classroom, it would not be possible for them to be similarly situated to non-disabled peers.

S.R. also fails to plausibly allege that Ms. Rawlings' alleged comments were motivated by racial animus. But even assuming the alleged "monkey" comments were racially motivated, the Complaint still fails to provide a single example of how the alleged comments deprived S.R. of any educational benefit or opportunity. *Sturdivant*, 22 F.4th at 936. Such deprivation typically is shown by decreases in class attendance, transfers out of class, or changes in schools. *See, e.g., id.* at 937 (a reasonable jury could determine the student was deprived of an educational benefit where she missed four classes); *Doe v. Hutchinson,* 728 F. App'x 829, 832 (10th Cir. 2018) (plaintiff sufficiently pleaded equal protection violation where she withdrew from school because of teacher's comments and bullying). In the absence of well-pleaded facts demonstrating a comparable (or for that matter, any) disruption to S.R.'s education—she fails to allege a plausible equal protection clause violation.

## IV. The Individual District Defendants—Wicks, Peterson, Rosemond, and Juba—are entitled to qualified immunity.

Because Plaintiffs have not plausibly alleged a constitutional violation, all School District Defendants are entitled to dismissal of the constitutional claims (Claims 3-6). (ECF 1 ¶¶ 384-445.) However, the Individual District Defendants are further entitled to dismissal of Plaintiffs' constitutional claims based on qualified immunity.

### A. Legal Standards for Qualified Immunity

Qualified immunity protects officials from liability unless a reasonable person, possessing the same facts, would have known that he or she was violating clearly established law. *Leverington v. City of Colo. Springs*, 643 F.3d 719, 732 (10th Cir. 2011). Once a defendant raises this defense, it creates a "presumption of immunity of the individual defendants." *Reavis v. Frost*, 967 F.3d 978, 992 (10th Cir. 2020). Plaintiffs

shoulder the "heavy" burden to prove the defendants violated a clearly established constitutional right. *Neal v. Lewis*, 414 F.3d 1244, 1247 (10th Cir. 2005).

Thus, to overcome this defense, Plaintiffs must plausibly allege that: (1) a defendant violated Plaintiffs' constitutional rights and (2) that right was clearly established at the time of misconduct. *Zuchel v. Spinarney*, 890 F.2d 273, 274 (10th Cir. 1989).

As to the first prong, Plaintiffs must plausibly allege that the defendant was personally involved in the alleged constitutional deprivation and had actual knowledge of and acquiesced to the challenged conduct. *Jojola v. Chavez*, 55 F.3d 488, 490 (10th Cir. 1995); *Foote v. Spiegel*, 118 F.3d 1416, 1423-24 (10th Cir. 1997).

Along these lines, a defendant cannot be held liable for the actions of others under a theory of respondeat superior. *Perry v. Durborow*, 892 F.3d 1116, 1121 (10th Cir. 2018). Instead, supervisors can be held liable only where they were deliberately indifferent to conduct that directly caused alleged constitutional injury. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1154 (10th Cir. 2006). The deliberate indifference standard may be satisfied when the supervisor "has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney*, 143 F.3d at 1307. In addition, the "risk of harm" cannot be general, but rather must be "an obvious risk of constitutional harm [that will] almost inevitably result in constitutional injury of the type experienced by the plaintiff." *Hollingsworth v. Hill*, 110 F.3d 733, 745 (10th Cir. 1997) (citing *Canton*, 489 U.S. at 389-90).

The second prong, assessing whether a right was "clearly established," is a "purely legal determination" analyzing whether there is a Supreme Court or Tenth Circuit decision

on point, or the clearly established weight of authority from other courts has found the law

to be as Plaintiffs maintain. *Reavis*, 967 F.3d at 984. "For a constitutional right to be clearly

established, the contours of the right must be sufficiently clear that a reasonable official

would understand that what he is doing violates that right." *Panagoulakos v. Yazzie*, 741

F.3d 1126, 1129 (10th Cir. 2013). The "clearly established law must be particularized to

the facts of the case." *Perry v. Durborow*, 892 F.3d 1116, 1123 (10th Cir. 2018).

**B.     Plaintiffs have not plausibly alleged facts overcoming qualified immunity as to any Individual District Defendant.**

Where, as here, plaintiffs assert complex constitutional claims against multiple

individual government actors, "[t]he *Twombly* standard may have greater bite." *Robbins*

*v. Okla.*, 519 F.3d 1242, 1249 (10th Cir. 2008). In such cases, "it is particularly important

. . . that the complaint make clear exactly who is alleged to have done what to whom, to

provide each individual with fair notice as to the basis of the claims against him or her, as

distinguished from collective allegations against the state." *Id.* at 1250. Most of Plaintiffs'

allegations consist of bare recitations of elements, without differentiating among the

Individual District Defendants' specific conduct or explaining how that conduct directly

caused Plaintiffs' alleged injuries. Such pleadings are insufficient to overcome the

Individual District Defendants' entitlement to qualified immunity.

To the extent the Complaint contains individualized allegations of constitutional

violations, they are considered below as to each Individual District Defendant.

**Superintendent Wicks**. Because Plaintiffs' allegations against Ms. Wicks pertain

only to her supervisory role, Plaintiffs must allege facts showing that she was deliberately

indifferent to "an obvious risk of constitutional harm which will almost inevitably result in

constitutional injury of the type experienced by the plaintiff." *Hollingsworth*, 110 F.3d at

745 (citing *Canton,* 489 U.S. at 389-90). Plaintiffs, however, offer only vague and conclusory assertions that fail to establish actual notice or any causal link between Superintendent Wicks' alleged knowledge and any of the alleged injuries at issue.

Plaintiffs attempt to show that Ms. Wicks had knowledge of "an obvious risk of constitutional harm" by asserting that she was aware of unspecified "instances of physical abuse" and "dangerous and abusive practices" by Ms. Rawlings (ECF 1 ¶ 157), and that she was aware that Ms. Rawlings called S.R. a monkey (*id.* ¶ 358). Such generalized statements—unsupported by dates, reports, complaints, or other concrete facts—are insufficient to plausibly allege actual notice. Even if Superintendent Wicks had some awareness of prior inappropriate conduct by Ms. Rawlings, Plaintiffs fail to articulate a plausible theory directly connecting that alleged notice to any constitutional injury to S.R. Further, as explained above, and as supported by the video footage of the wheelchair incident (Ex. A), the conduct at issue does not rise to the level of a constitutional violation. Superintendent Wicks is thus entitled to qualified immunity.

**Defendant Peterson.** The Complaint alleges that Mr. Peterson was aware that Ms. Rawlings was "unfit" for her role and had a history of "mistreatment" of students (ECF 1 ¶¶ 153-157); that she called S.R. a "monkey" (*id.* ¶ 358); and that Defendants Rosemond and Juba "refused to provide Students with toileting assistance" (*id.* ¶ 190). Plaintiffs fail to plausibly allege that Mr. Peterson's alleged action or inaction, based on his purported knowledge, directly caused any cognizable constitutional injury. Moreover, as explained above, neither the wheelchair incident, Ms. Rawlings's alleged comments, nor the toileting allegation—even if true—constitute a constitutional violation. Accordingly, Defendant Peterson is entitled to qualified immunity.

**Defendants Rosemond and Juba.** Plaintiffs allege that Messrs. Rosemond and Juba violated their substantive due process rights by failing to adequately toilet them during the school day (*id.* ¶¶ 191, 201) and by failing to adequately supervise A.N., leading to his arm becoming caught in his wheelchair (*id.* ¶¶ 303-315). Even accepted as true, these allegations do not approach the level of "brutal or inhumane abuse of power" necessary to satisfy the "shocks the conscience" standard for a substantive due process claim." *Muskrat.*, 715 F.3d at 787. Moreover, there is no clearly established law holding that failure to provide toileting assistance during the school day amounts to a constitutional violation. Because Plaintiffs fail to satisfy either prong of the qualified immunity analysis, Defendants Rosemond and Juba are entitled to qualified immunity.

## V.    Plaintiffs fail to plausibly allege municipal liability against the District.

To prevail on her constitutional claims against the District, Plaintiff must prove municipal liability under the framework set forth in *Monell v. Department of Social Services*, 436 U.S. 658, 694 (1978). Under *Monell*, municipal entities are not liable under Section 1983 merely because an employee violates a plaintiff's federal rights. *Jenkins v. Woods*, 81 F.3d 988, 993 (10th Cir. 1996). *Monell* liability is "limited to acts that are, properly speaking, acts of the municipality—that is, acts which the municipality has officially sanctioned or ordered." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 479-480 (1986). Thus, a plaintiff suing a municipal entity must prove: (1) an employee committed a constitutional violation and (2) that violation was caused by an official policy or practice or by an official policymaker. *Murphy v. City of Tulsa*, 950 F.3d 641, 649 (10th Cir. 2019).

Municipal liability "may be based on injuries caused by a failure to adequately train or supervise employees, so long as that failure results from deliberate indifference to the

injuries that may be caused." *Brammer-Hoelter v. Twin Peaks Charter Acad.*, 602 F.3d 1175, 1189 (10th Cir. 2010) (quotations omitted). "Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019) (quotations omitted). "The deliberate indifference standard may be satisfied when the municipality has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney*, 143 F.3d at 1307. When styled as a failure to train or supervise claim, "[a] pattern of similar constitutional violations by untrained employees is 'ordinarily necessary'" to satisfy the deliberate indifference standard. *Connick v. Thompson*, 563 U.S. 51, 62 (2011) (quoting *Board of Comm'rs of Bryan Cty. v. Brown,* 520 U.S. 397, 403 (1997)). Allegations of unrelated and varied conduct cannot satisfy the "stringent" deliberate indifference standard. *Waller,* 932 F.3d at 1284.

Moreover, deliberate indifference must be shown on the part of a "final policymaker," which in the school district context is generally the Board of Education or the Superintendent. *Milligan-Hitt v. Bd. of Trs. of Sheridan Cnty. Sch. Dist. No. 2*, 523 F.3d 1219, 1228 (10th Cir. 2008).

Plaintiffs' Complaint strings together a variety of alleged harms—ranging from use of a sensory room, to verbal comments, to physical handling of students—occurring over the course of the 2022-2023 school year. However, these allegations involve different employees, different students, different circumstances, and different types of alleged misconduct. Such disparate incidents, even if true, do not plausibly establish that any of the injuries alleged the result of a policy or well-settled pattern or custom.

Nor do they plausibly allege deliberate indifference by a final policymaker. The Complaint fails to allege facts showing that any final policymaker—the Board of Education or Superintendent Wicks—had notice that their actions was "substantially certain" to result in the constitutional injuries alleged in the Complaint. *Barney*, 143 F.3d at 1307. Indeed, the Complaint contains no allegations about the Board of Education. And, as noted in Section IV.B., supra, Plaintiffs fail to plausibly allege that Ms. Wicks was deliberately indifferent to conduct that was substantially certain to result in constitutional injury.

## VI.    Race Discrimination Claims by S.R. (Claims 7-9)

S.R. brings claims under Title VI, Section 1981, and Section 1986 against the School District, Dr. Wicks, and Mr. Peterson.[7] Each claim fails as a matter of law.

### A.    S.R.'s Title VI claim is not plausible (Claim 7).

S.R. appears to allege that she was subject to a racially hostile environment because Ms. Rawlings allegedly called her a "monkey" several times in a "discriminatory context." (ECF 1 ¶ 355.) To prove this claim, S.R. must allege, among other things, that she was subjected to harassment so severe, pervasive, and objectively offensive that it deprived S.R. of access to the educational benefits or opportunities provided by her school. *Bryant v. Indep. Sch. Dist. No. I–38*, 334 F.3d 928, 934 (10th Cir. 2003). As noted in addressing S.R.'s race-based equal protection claim, she has not plausibly alleged that she was denied any educational benefits or opportunities resulting from Ms. Rawling's alleged comments. Her Title VI claim accordingly fails.

---

[7] She also brings these claims against Ms. Rawlings and Ms. Tennyson.

**B.    S.R.'s Section 1981 claim is not plausible (Claim 8).**

S.R.'s Section 1981 claim is not plausible for two reasons.

First, to prevail on this claim, S.R. must identity "an impaired contractual relationship under which the plaintiff has rights." *Muller v. Islands at Rio Rancho Homeowners Ass'n*, 564 F. App'x 411, 414 (10th Cir. 2014) (quoting *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 477 (2006)) (emphasis added). S.R. does not identify or allege a relevant contractual relationship, nor is there Tenth Circuit precedent recognizing such a contract. Indeed, other circuits have rejected the argument that students have a contractual relationship with the public school district they attend. *See, e.g., L.L. v. Evesham Twp. Bd. of Educ.,* 710 F. App'x 545, 550 (3d Cir. 2017) (dismissing Section 1981 claim brought by two students and noting that "the context of the case—two children attending public school—does not suggest any contractual rights"). Because S.R. fails to allege a requisite contractual relationship, her Section 1981 claim must be dismissed.

Second, S.R. failed to bring her Section 1981 claim under Section 1983, which courts have recognized is the "exclusive federal . . . remedy for the violation of the rights guaranteed by § 1981 when the claim is pressed against a state actor." *Brown v. Keystone Learning Servs.*, 804 F. App'x 873, 883 (10th Cir. 2020) (quoting *Jett v. Dall. Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989)) (upholding dismissal of Section 1981 claim because it was not brought under Section 1983).

**C.    The Section 1986 claim is not plausible and is time-barred (Claim 9).**

S.R.'s Section 1986 claim is not plausible for two reasons.

First, it is time-barred. Section 1986 claims are subject to a one-year statute of limitations 42 U.S.C. § 1986; *O'Connor v. St. John's Coll.*, 290 F. App'x 137, 142 (10th Cir.

23

2008). Because Section 1986 contains an explicit federal limitations period, Colorado's state tolling provisions for minors do not apply. *See Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 630 (10th Cir. 1993) (explaining that courts may look to state law where federal civil rights law does not include an express statute of limitations and where state law is not inconsistent with federal law). Though the Complaint does not allege when Ms. Rawlings supposedly called S.R. a "monkey," it was necessarily before she was placed on administrative leave and terminated—i.e., before February 2023. S.R. did not bring this action until January 29, 2025, nearly two years later.

Second, she has not plausibly alleged a conspiracy to interfere with her civil rights as described in Section 1985, a necessary element of her claim. *Santistevan v. Loveridge*, 732 F.2d 116, 118 (10th Cir. 1984); *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993). Ms. Rawlings' alleged "monkey" comments, even if racially motivated, do not remotely suggest the existence of a "conspiracy" to deprive S.R. of equal protection, as required to state an underlying Section 1985 claim.

## CONCLUSION

For the reasons set forth above, the School District Defendants request this Court: dismiss the Parents as parties; dismiss Claims One, Two and Seven against the Individual District Defendants; dismiss Claims Three, Four, Five, Six, Seven, Eight, and Nine against the School District and the Individual District Defendants; and for such other and further relief as the Court deems appropriate.[8]

---

[8] If the Court grants this dismissal motion, the only claims remaining would be Claims 1 and 2 as asserted against the School District.

Respectfully submitted this 5th day of September 2025.

> s/ Elliott V. Hood
> Gwyneth Whalen
> Elliott V. Hood
> Caroline G. Gecker
> CAPLAN AND EARNEST LLC
> 3107 Iris Ave, Ste 100
> Boulder, CO 80301
> 303-443-8010
> gwhalen@celaw.com
> ehood@celaw.com
> cgecker@celaw.com

## CERTIFICATE OF SERVICE

This is to certify that on September 5, 2025, a true and correct copy of the foregoing was filed with the U.S. District Court of Colorado CM/ECF System which will notify the following:

Jessica L. Breuer, Esq.
Stephen Burg, Esq.
Burg Simpson Eldredge Hersh & Jardine, P.C.
jbreuer@burgsimpson.com; sburg@burgsimpson.com
*Attorneys for Plaintiffs*

Courtney B. Kramer, Esq.
Bennett M. Harrell, Esq.
SGR, LLC
ckramer@sgrllc.com; bharrell@sgrllc.com
*Attorneys for Defendant Anne-Marie Tennyson*

Catherine A. Tallerico, Esq.
Lyons Gaddis, P.C.
ctallerico@lyonsgaddis.com
*Attorney for Defendant Sylvia Rawlings*

> s/Shelley McKinstry
> Shelley McKinstry, Paralegal