**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-00315-CNS-SBP

MAYO THOMPSON, individually, and on behalf of S.R., a minor; CANDY GRANGER, individually, and on behalf of S.U., a minor; HEATHRE NAUSED, individually, and on behalf of A.N., a minor; ERIC BENDER and AMY BENDER, individually, and as husband and wife, on behalf of C.B., a minor.

  Plaintiffs,

v.

STEAMBOAT SPRINGS SCHOOL DISTRICT RE-2, a municipal entity; CELINE WICKS, in her individual and official capacities; ANNE-MARIE TENNYSON, in her individual and official capacities; RON PETERSON, in his individual and official capacities; SYLVIA RAWLINGS, in her individual and official capacities; CHUCK ROSEMOND, in his individual and official capacities; and DAN JUBA, in his individual and official capacities.

  Defendants.

---

**PLAINTIFFS' RESPONSE TO THE SCHOOL DISTRICT DEFENDANTS' PARTIAL MOTION TO DISMISS**

---

COMES NOW, Plaintiffs, by and through counsel, Burg Simpson Eldredge Hersh & Jardine, P.C., and respectfully submit this Response to the School District Defendants' Partial Motion to Dismiss, and states as follows:

**<u>INTRODUCTION</u>**

This case exposes a systemic pattern of abuse at Steamboat Springs High School ("SSHS"), where school employees were allowed to discriminate against, verbally abuse, and physically harm profoundly disabled and non-verbal children. The School District Defendants were entrusted with safeguarding the education and well-being of S.R., S.U., C.B., and A.N. (collectively, the "Students"). Instead, they exploited the Students' profound disabilities—deliberately targeting those least able to defend themselves or report what was happening.

1

The Complaint details only part of what occurred, but even this limited account describes conduct so egregious that no reasonable educator could mistake it for anything other than abuse: forcing students to soil themselves by denying restroom access; publicly stripping post-puberty children in front of peers; confining them in dark rooms without justification; pinning a non-verbal child to the ground; and subjecting them to racial slurs and repeated physical and emotional harm. Each act stripped these children of their dignity, safety, and constitutional protections.

Rather than confront this abuse, the School District Defendants now ask this Court to dismiss the case by recasting assaults on disabled children as mere "playful" interactions. They attempt to sanitize public disrobing, prolonged restraint, physical abuse, and denial of basic care—portraying them as routine classroom practice. That rhetorical maneuver is not merely dishonest—it is an extension of the abuse itself. Worse still, the District has worked to suppress the full extent of misconduct, exploiting the Students' inability to speak for themselves, concealing injuries, and minimizing reports of harm. In doing so, Defendants have sought to prevent the truth from coming to light while rebranding systemic violations of dignity, safety, and constitutional rights as harmless or ordinary. Such tactics cannot shield them from accountability.

Plaintiffs' allegations, accepted as true, easily meet the plausibility standard required at the pleading stage. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). Notably, the District does not dispute the sufficiency of Plaintiffs' First and Second Claims. Its Motion to Dismiss rests instead in large part on procedural maneuvers, including the argument that parents lack standing to assert individual claims and that certain federal anti-discrimination claims cannot be brought against individuals in their personal capacities. To the extent clarification is necessary,

2

Plaintiffs acknowledge these points and will move to clarify their claims through a Motion to Amend. That amendment, however, does not diminish or alter the substance of Plaintiffs' allegations. And dismissal of Plaintiffs' Complaint is unwarranted. The Court should deny Defendants' Motion outright as to Claims Three, Four, Five, Six, and Nine and hold the School District Defendants accountable for the constitutional and statutory violations alleged. If the Court determines that any additional factual detail is necessary, Plaintiffs respectfully request leave to amend. But the gravamen of this case is already clear: the School District Defendants must be held accountable for systemic child abuse committed under color of state law.

## **STANDARD OF REVIEW**

Dismissal of an action prior to permitting the parties to engage in discovery and develop a greater understanding of the facts and circumstances around the issues "is a harsh remedy which must be cautiously studied, not only to effectuate the spirit of the liberal rules of pleading but also to protect the interests of justice." *Duran v. Carris*, 238 F.3d 1268, 1270 (10th Cir. 2001) (quotation omitted). "Dismissal is inappropriate 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief.'" *Murrell v. Sch. Dist. No.* 1, 186 F.3d 1238, 1244 (10th Cir. 1999) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)). A claim for relief is plausible when the plaintiff pleads facts adequate to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Federal Rules of Civil Procedure "erect a powerful presumption against rejecting pleadings for failure to state a claim," making Plaintiffs' burden at the pleading stage relatively light. *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989). Rule 8(a) requires a "short and plain statement of the claim showing

that the pleader is entitled to relief." Fed. R. Civ. Pro. 8. When reviewing a motion to dismiss, the court must: (1) incorporate the "powerful presumption" against rejecting pleadings for failure to state a claim, (2) accept all allegations in the complaint as true, and (3) draw all reasonable inferences in favor of the nonmoving party. *Cayman Exploration Corp.*, 878 F.2d at 1359.

## ARGUMENT

### I. Plaintiffs Sufficiently Alleged Constitutional Violations Against the School District Defendants under 42 U.S.C. § 1983 (Claims 3, 4, 5, and 6).

Plaintiffs have properly alleged constitutional violations by each School District Defendant sufficient to state a claim under 42 U.S.C § 1983. To prevail, a plaintiff must show that a defendant acted under color of state law and caused or contributed to the constitutional violation. *Jenkins v. Wood*, 81 F.3d 988, 994 (10th Cir. 1996). Liability attaches not only to direct participants but also to supervisors who personally directed violations or knowingly acquiesced in their continuation. *Id*. at 995. Plaintiffs have pled detailed facts showing that each Defendant either directly participated in, or deliberately ignored, systemic abuse of profoundly disabled, non-verbal students.

#### a. The Defendants Violated Plaintiffs' Fourth Amendment Rights (Claim 3).

The Fourth Amendment prohibits unreasonable seizures of students by state officials. A seizure occurs when a government actor intentionally restrains a person's freedom of movement. *Sexton v. City of Colo. Springs*, 530 F. Supp. 3d 1044, 1055 (D. Colo. 2021). In the school context, restraint qualifies as a seizure when it "significantly exceed[s] that inherent in every-day compulsory attendance." *Ebonie S. v. Pueblo Sch. Dist. 60*, 695 F.3d 1051, 1056 (10th Cir. 2012) (quoting *Couture v. Bd. of Educ.*, 535 F.3d 1243, 1251 (10th Cir. 2008)).

Defendants' conduct far exceeded constitutional limits. Although SSSD determined all Students required toileting assistance, Defendants Rosemond and Juba refused to provide it. ECF No. 1 ¶¶ 187, 190–97. Defendants Peterson and Wicks knew and failed to intervene. *Id.* As a result, the Students were forced to sit in urine-soaked clothing or endure the pain of withholding bodily functions. When accidents occurred, staff publicly stripped Students in front of peers, forcibly exposing them. *Id.* ¶¶ 329–33. These humiliating seizures—marked by forced restraint, disrobing, and exposure—were cruel, degrading, and well beyond anything permitted under *Ebonie S.*, 695 F.3d at 1056–57. *See also Garcia v. Miera*, 817 F.2d 650, 655–56 (10th Cir. 1987) (even lesser intrusions on bodily integrity can state constitutional claims). The abuse of S.U. underscores this point. For 45 minutes, an SSHS employee had an altercation with S.U. where he pinned S.U. to the ground with his foot. ECF No. 1 ¶ 279. This was not discipline; it was prolonged immobilization without justification. Nothing in the Complaint suggests S.U. engaged in conduct warranting such force. This episode exemplifies a plain violation of the Fourth Amendment.

Defendants argue that Plaintiffs cannot assert both a Fourth Amendment seizure claim and a Fourteenth Amendment excessive force claim for S.U. That argument fails. The Fourth Amendment applies in schools, and the Tenth Circuit has expressly recognized it governs teacher seizures of students. *New Jersey v. T.L.O.*, 469 U.S. 325 (1985); *Couture*, 535 F.3d at 1250. Defendants' reliance on *Muskrat v. Deer Creek Pub. Schs.*, 715 F.3d 775 (10th Cir. 2013), is misplaced. The Tenth Circuit there did not hold that the Fourth Amendment was inapplicable in schools. Rather, the plaintiffs in *Muskrat* had failed to properly plead or argue a Fourth Amendment theory, raising it only in passing in post-judgment briefing. *Id.* at 791.

5

b. <u>*Plaintiffs Plausibly Allege Substantive Due Process Violations (Claim 4)*</u>

Students possess a protected liberty interest in personal security, including the right to be free from unjustified restraint and punishment. *Garcia v. Miera*, 817 F.2d 650, 654 (10th Cir. 1987). Substantive due process is violated when government action "shocks the conscience." *Doe v. Woodward*, 912 F.3d 1278, 1300 (10th Cir. 2019) (citations omitted). A defendant's conduct is conscience-shocking where it reflects an arbitrary abuse of authority or the use of state power as an instrument of oppression. *Id.* (citations omitted). Courts evaluating such claims consider factors including the necessity of force, the relationship between any need and the amount of force used, the foreseeability of injury, and whether force was applied in good faith or maliciously. *Gonzales v. Passino*, 222 F.Supp. 1277, 1282 (D.N.M. 2002). The presence of serious injury—or the obvious risk of such injury—is a central factor. *Id.*

Plaintiffs' allegations far surpass this threshold. Students were repeatedly stripped and forced to lie exposed in front of peers while being changed. ECF No. 1 ¶¶ 328–33. Defendants knowingly permitted Defendant Rawlings—a paraprofessional with a history of abusive behavior—to remain in the SSN classroom until she was criminally charged. *Id.* ¶¶ 151–58, 251–54. They permitted staff to drag S.U. down a school hallway without cause. *Id.* ¶¶ 281, 283–84. And unlike the plaintiff in *Gonzales*, Plaintiffs do not allege a single instance of excessive discipline resulting in minor injuries; Plaintiffs allege a sustained campaign of abuse resulting in serious harm, including open wounds and head contusions <u>that has continued for *years*</u>. *Id.* ¶¶ 235, 265, 274, 312; *Gonzales,* 222 F. Supp. 2d at 1282; *N.P. v. Sch. Bd.*, No. 3:18cv453-MCR-HTC, 2019 U.S. Dist. LEXIS 169137, at *17 (N.D. Fla. Sep. 30, 2019). This conduct was not accidental or misguided. It was systemic, malicious, and targeted specifically at those least able to resist or report

it. Such deliberate cruelty shocks the conscience and constitutes a violation of substantive due process.

  c. *Plaintiffs Plausibly Alleged Procedural Due Process Violations (Claim 5)*

To state a procedural due process claim, a plaintiff must allege (1) a constitutionally protected liberty or property interest, and (2) deprivation of that interest without adequate process. *Couture*, 535 F.3d at 1256. Public school students indisputably hold such interests: they have a protected property interest in education and a liberty interest, entitling them to procedural safeguards against arbitrary deprivations. *Id.* at 1257 (citing *Goss v. Lopez*, 419 U.S. 565, 574 (1975)). Moreover, even "lesser" forms of corporal punishment—when unchecked by adequate remedies—violate procedural due process. *Garcia v. Miera*, 817 F.3d 650, 655-56 (10th Cir. 1987).

Here, the School District Defendants deprived Students of both property and liberty interests while providing no process at all. SSSD failed to adopt or enforce policies safeguarding profoundly disabled students, despite knowing they were uniquely vulnerable. ECF No. 1 ¶¶ 198, 221–23, 270, 296. Instead, Defendants allowed a pattern of mistreatment so entrenched that it functioned as a de facto custom with the force of law. *See* infra Sec. III. Students were denied any opportunity to be heard, any remedial mechanism, and any protection against repeated violations of their interests. The result was not isolated misconduct but systemic abuse that effectively stripped the Students of their right to participate in education altogether. Day after day, they were subjected to humiliation and restraints that excluded them from classroom activities, left them unable to learn, and damaged their reputations and basic dignity. *See A.B. v. Adams-Arapahoe 28J Sch. Dist.*, 831 F. Supp. 2d 1226, 1252 (D. Colo. 2011); ECF No. 1 ¶¶ 161–64, 328, 330–33. Such pervasive deprivation, without any process to prevent or correct it,

constitutes a procedural due process violation. *See A.B.*, 831 F.Supp.2d at 1252; ECF No. 1 ¶¶ 161-64, 328, 330-33.

    d. <u>*Plaintiffs' Plausibly Allege Equal Protection Violations (Claim 6)*</u>

The Equal Protection Clause is violated when the government treats similarly situated individuals differently based on a suspect classification or by denying them a fundamental right. *Ebonie S. v. Pueblo Sch. Dist*. 60, 819 F. Supp. 2d 1179, 1189 (D. Colo. 2011); *Penrod v. Zavaras*, 94 F.3d 1399, 1406 (10th Cir. 1996). Here, the School District Defendants engaged in two distinct, but compounding, equal protection violations.

**First, discrimination based on disability and vulnerability.** Out of more than one hundred SPED students enrolled at SSHS, the Students were uniquely and repeatedly targeted for abuse because of their profound disabilities and inability to report mistreatment. They alone were forced to soil themselves, publicly stripped, restrained without justification, and subjected to physical and verbal abuse precisely because they could not speak up in their own defense. ECF No. 1 ¶¶ 169–75, 187, 190–96, 328–33. This deliberate targeting deprived them of fundamental rights to bodily integrity and equal access to education—rights secured to all students, but denied to them solely because of their disabilities.

**Second, race-based discrimination against S.R.** As one of only nine Black students at SSHS, S.R. was singled out for racially charged verbal abuse by Rawlings, including being called "monkey"—an unambiguous racial slur recognized nationwide as direct evidence of racial animus. Spriggs v. Diamond Auto Glass, 242 F.3d 179, 185 (4th Cir. 2001); Green v. Franklin Nat'l Bank, 459 F.3d 903, 911 (8th Cir. 2006). See also ECF No. 1 ¶¶ 353, 356–59. This racial harassment, compounded by physical abuse and systemic neglect, stripped S.R. of her dignity and denied her equal educational

8

opportunity compared to her White peers. Taken together, these practices reveal a systemic pattern of discrimination, targeting students on the basis of both disability and race. By deliberately exploiting the Students' vulnerabilities and subjecting S.R. to overt racial slurs, Defendants denied them fundamental constitutional guarantees of safety, bodily integrity, and equal participation in public education.

## II. Plaintiffs Have Alleged Sufficient Facts to Overcome Qualified Immunity Against the Individual Defendants

Qualified immunity is overcome when a plaintiff shows (1) the defendant's actions violated a constitutional or statutory right, and (2) that right was clearly established at the time. *Knopf v. Williams*, 884 F.3d 939, 944 (10th Cir. 2018). It applies only when "the record plainly demonstrates no constitutional right has been violated, or that the allegations do not offend clearly established law." *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). A right may be clearly established even if no prior case addresses the identical conduct, so long as precedent "appl[ies] with obvious clarity to the specific conduct in question." *A.B. v. Adams-Arapahoe 28J Sch. Dist.*, 831 F. Supp. 2d 1226, 1240–41 (D. Colo. 2011) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). Moreover, because qualified immunity requires a fact-specific inquiry, resolving it on a motion to dismiss is disfavored. *Thompson v. Ragland*, 23 F.4th 1252, 1256 (10th Cir. 2022).

Plaintiffs incorporate the arguments and allegations alleged in Sec. I, *supra*, as if fully set forth herein. Students plainly retain Fourth Amendment protections at school, and seizures must be justified at inception and reasonable in scope. *New Jersey v. T.L.O.*, 469 U.S. 325 (1985); *Jones v. Hunt*, 410 F.3d 1221, 1228 (10th Cir. 2005). Any reasonable educator in Rosemond's or Juba's position would have known that inflicting

9

prolonged physical harm, as well as forcing disabled, non-verbal students to soil themselves, restraining them, and publicly stripping them violated those rights.

The Tenth Circuit has likewise held that grossly excessive corporal punishment violates substantive due process, while less severe punishment implicates procedural due process. *Garcia v. Miera*, 817 F.2d 650, 655–56 (10th Cir. 1987). Here, the allegations are far more egregious: repeated, prolonged physical and sexual abuse of non-verbal, cognitively disabled minors. No reasonable official could have believed such conduct constitutional.

Finally, Peterson and Wicks are not entitled to qualified immunity in their supervisory roles. *See infra*, Sec. III.  Supervisors may be liable where they fail to act despite knowledge of ongoing constitutional violations. *Johnson v. Martin*, 195 F.3d 1208, 1220 (10th Cir. 1999); *Meade v. Grubbs*, 841 F.2d 1512, 1528–29 (10th Cir. 1988) (discussing supervisory liability predicated on the failure to train and supervise employees); *Jenkins v. Wood*, 81 F.3d 988, 995 (10th Cir. 1996). Plaintiffs allege Peterson and Wicks had extensive knowledge of the Students' deprivation of rights throughout the year, yet failed to act until pressed by parents. ECF No. 1 ¶¶ 153–58, 164, 190, 195–97, 236–40, 265–67, 271. Because the duty to intervene in the face of constitutional violations was clearly established, their failure to do so bars qualified immunity.

## III.     The School District is Not Immune from Liability.

Under 42 U.S.C. § 1983, municipalities are liable when an official policy or custom inflicts injury. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1283 (10th Cir. 2019). Liability arises from (1) decisions by employees with final policymaking authority, (2) failure to train or supervise reflecting

10

deliberate indifference to known risks, (3) ratification of unlawful conduct by final policymakers, or (4) informal customs so entrenched they have the force of law. Id. Municipal liability may also rest on ratification or widespread custom even when the specific act was taken by someone other than the final policymaker. *St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988); *Bd. of Cty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). At the pleading stage, Plaintiffs have plausibly alleged multiple independent bases for municipal liability: a widespread custom of abuse and concealment, ratification of Rawlings' hiring despite known risks, and deliberate indifference in training and supervision. Each is sufficient to support Monell liability against SSSD.

**<u>Widespread Custom of Abuse and Concealment.</u>** The abuse in the SSN classroom at SSHS was not incidental—it was routine, pervasive, and known to those charged with oversight. Staff and paraprofessionals did not merely neglect to provide accommodations; they actively inflicted harm. Students were denied toileting assistance, left to sit for hours in urine-soaked clothing, or forced to endure the pain of withholding bodily functions. ECF No. 1 ¶¶ 188–96, 200–03, 291–94. When accidents occurred, staff publicly stripped Students, exposing them in front of peers despite their age and vulnerabilities. *Id.* ¶¶ 329–33, 340. The mistreatment went further, encompassing repeated acts of physical abuse. Students were dragged down hallways, pinned to the ground for extended periods, and left with visible injuries including open wounds, bruises, and head contusions. *Id.* ¶¶ 235, 265, 274, 279, 281–84, 312. These were not isolated lapses in judgment, but deliberate acts of control and punishment aimed at children least able to defend themselves or report what was happening. Equally egregious was the District's concealment. Staff failed to document injuries, misrepresented information about student safety, and minimized or denied reports of abuse. *Id.* ¶¶ 229–33, 236, 240–

11

43, 255, 265–67, 271–75. Far from being hidden, these practices were an open secret at SSHS. Teachers, paraprofessionals, and students alike were aware of what was happening in the SSN classroom. *Id.* ¶¶ 161–64, 189, 194, 200. Abuse and concealment became a normalized way of operating—systemic misconduct that the District allowed to persist.

**Ratification of Rawlings' Hiring Despite Known Risks.** Defendant SSSD delegated final policymaking authority to Defendant Wicks through its Board of Education.[1] Defendant SSSD's policies also requires that school principals give the Superintendent as much information as necessary to allow the Superintendent to be adequately informed.[2] Colorado law establishes that school principals shall assume the administrative responsibility and instructional leadership, under the supervision of the superintendent, for the educational program of the schools to which he is assigned; and shall submit recommendations to the superintendent regarding the appointment, assignment, and dismissal of all personnel assigned to the school under his supervision. Colo. Rev. Stat. § 22-32-126. Under this framework, Defendant Wicks held ultimate policymaking authority for SSSD, while Defendant Peterson was obligated to provide information sufficient for Wicks to make informed decisions. Defendants Peterson, Tennyson, and Wicks knew of Rawlings' hostility toward disabled children before assigning her to the SSN classroom, including her statements that she would terminate

---

[1] Steamboat Springs School District, BOARD POLICIES, *B/SR-4: Delegation to the District Superintendent*, https://docs.google.com/document/d/1k_iB7TT936ryw1AF3K7OqZ9ec6gveNtWVjJunOgnVec/edit?tab=t.0 ; Steamboat Springs School District, BOARD POLICIES, *B/SR-1: Governance – Management Connection*, https://docs.google.com/document/d/1MEagdrpMN2tcBZIXrAH7KOhX2NHVC8BYzOJHWMZQUD8/edit?tab=t.0.

[2] Steamboat Springs School District, ADMINISTRATIVE POLICIES, *PL-4: Communication and Counsel to Superintendent*, https://docs.google.com/document/d/1_U9EDHEGg4P4QWUeChEWDZS9YT6BjsQgUahl-fU2fR8/edit?tab=t.0.

12

a pregnancy if her child had disabilities and her threat to hit another student. ECF No. 1 ¶¶ 151–58. Despite these warnings, the District placed her in daily contact with profoundly disabled, non-verbal students—the very children least able to report or resist abuse. Once in the classroom, Rawlings engaged in racially charged verbal abuse, physical aggression, and degrading treatment, yet the District allowed her to remain even as evidence of harm mounted. *Id*. ¶¶ 151–58, 251–54. This ratification was not an administrative oversight but a conscious choice by the District's final policymakers. By retaining Rawlings despite repeated notice of her conduct, SSSD effectively endorsed her abuse, signaled to staff that mistreatment would be tolerated, and ensured that vulnerable children remained in danger. That deliberate decision directly facilitated the ongoing violations and provides an independent basis for Monell liability.

**<u>Deliberate Indifference in Training and Supervision</u>**. Defendant SSSD further acted with deliberate indifference by failing to train and supervise employees entrusted with profoundly disabled, non-verbal students. A plaintiff states such a claim by alleging that a municipal actor disregarded a known or obvious risk of constitutional harm. *Waller v. City & Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019). Here, Peterson had direct knowledge of Rawlings' threats of violence, her demeaning remarks about disabled students, and ongoing abuse by other staff. ECF No. 1 ¶¶ 151–58, 187–97, 229–40. She also knew Rosemond and Juba refused to provide toileting assistance, forcing children to sit in soiled clothing or endure physical pain, and that staff routinely stripped students in public. *Id.* ¶¶ 190–96, 329–33. Reports of injuries—including open wounds and head contusions—further confirmed that students were being physically harmed. *Id.* ¶¶ 235, 265, 274, 312. Defendant SSSD's policies and Colorado law required Peterson to alert Defendant Wicks of all safety concerns, making the District's final policymaker equally

13

aware of this pattern. Yet there is no evidence that Peterson nor Wicks acted to retrain staff, remove unfit employees, or implement safeguards. Their collective inaction, despite repeated notice of grave harm, reflects deliberate indifference.

**VI. Plaintiff S.R. Has Plausibly Alleged Claims for Racial Discrimination**

**S.R's § 1981 Claim**. It is true that § 1981 does not itself provide a cause of action against state actors for civil rights violations. However, such claims are enforceable through 42 U.S.C. § 1983. *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 735 (1989). S.R. has plausibly alleged that Defendants deprived her of the right to be free from racial discrimination and denied her equal rights under the law. ECF No. 1 ¶¶ 355–61. By undermining and interfering with her Individualized Education Plan—a legally binding contract that guaranteed her access to appropriate educational services—Defendants deprived S.R. of meaningful educational benefits on the basis of her race.

**S.R.'s § 1986 Claim.** Plaintiffs also plausibly allege a claim under § 1986. Rawlings' racially discriminatory comments and actions were well-known to the School District Defendants, yet they not only failed to remove her but allowed her to continue working directly with S.R. at SSHS. ECF No. 1 ¶¶ 355–61. Defendants' deliberate decision to tolerate and thereby further Rawlings' racism towards S.R. constitutes a conspiracy to deprive her of her civil rights. Moreover, this pattern of discrimination was not limited to isolated incidents—it persisted throughout S.R.'s education and continued until her graduation from SSHS in May 2025. The duration and persistence of this misconduct further underscore the plausibility of S.R.'s § 1986 claim.

**S.R.'s Title VI Claim.** The elements of a Title VI claim are straightforward: (1) the plaintiff must allege racial or national origin discrimination, and (2) the discrimination must be committed by an entity receiving federal financial assistance. *Baker v. Bd. of Regents*,

14

991 F.2d 628, 631 (10th Cir. 1993). S.R. has satisfied both. She was subjected to racially discriminatory treatment by school officials, including repeated exposure to racial slurs and disparate mistreatment compared to her White peers, while Defendant SSSD indisputably received federal funding. ECF No. 1 ¶¶ 353, 356–59; *see supra* Sec. I(d). These allegations are more than sufficient to sustain her Title VI claim.

## CONCLUSION

This case exposes systemic child abuse carried out under color of state law. The allegations are not minor lapses but repeated violations of fundamental constitutional guarantees. Profoundly disabled children were humiliated, restrained, stripped, injured, and subjected to racial slurs while the officials charged with protecting them ignored or concealed the truth. Defendants now seek to avoid accountability by recasting abuse as "playful" and dismissing well-pled claims on technical grounds. That effort to sanitize and suppress misconduct is itself part of the pattern of deliberate indifference that allowed the abuse to persist. At this stage, Plaintiffs' burden is light, and their allegations satisfy the plausibility standard. The Court should deny Defendants' Motion to Dismiss. Should the Court determine that any further detail is necessary, Plaintiffs respectfully request leave to amend.

Respectfully submitted,

        **BURG SIMPSON**
        **ELDREDGE HERSH & JARDINE, P.C.**

        */s/ Jessica L. Breuer*
        Jessica L. Breuer, Esq.
        40 Inverness Drive East
        Englewood, CO 80112
        Phone: (303) 792-5595
        Fax: (303) 708-0527

jbreuer@burgsimpson.com
*Attorney for Plaintiffs*

### CERTIFICATE OF SERVICE

This is to certify that on October 3, 2025 a true and correct copy of the foregoing was filed with the U.S. District Court of Colorado CM/ECF System which will notify the following:

CAPLAN AND EARNEST LLC
Gwyneth Whalen
Elliott V. Hood
Caroline G. Gecker
3107 Iris Ave, Ste 100
Boulder, CO 80301
303-443-8010
gwhalen@celaw.com
ehood@celaw.com
cgecker@celaw.com
*Attorneys for the School District Defendants*

Lyons Gaddis, PC
Catherine A. Tallerico
PO Box 978
515 Kimbark St.
Longmont, CO 80502
303-776-9900
ctallerico@lyonsgaddis.com
*Attorney for Defendant Sylvia Rawling*

SGR, LLC
Courtney B. Kramer
3900 East Mexico Ave., Suite 700
Denver, CO 80210
303-320-0509
ckramer@sgrllc.com
*Attorney for Defendant Anne-Marie Tennyson*

/s/ Dan Freeman
Dan Freeman