**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-00315-CNS-SBP

MAYO THOMPSON, individually, and on behalf of S.R., a minor; CANDY GRANGER, individually, and on behalf of S.U., a minor; HEATHRE NAUSED, individually, and on behalf of A.N., a minor; ERIC BENDER and AMY BENDER, individually, and as husband and wife, on behalf of C.B., a minor.

   Plaintiffs,

v.

STEAMBOAT SPRINGS SCHOOL DISTRICT RE-2, a municipal entity; CELINE WICKS, in her individual and official capacities; ANNE-MARIE TENNYSON, in her individual and official capacities; RON PETERSON, in his individual and official capacities; SYLVIA RAWLINGS, in her individual and official capacities; CHUCK ROSEMOND, in his individual and official capacities; and DAN JUBA, in his individual and official capacities.

   Defendants.

---

**PLAINTIFFS' MOTION FOR LEAVE TO AMEND THEIR COMPLAINT AND JURY DEMAND**

---

Plaintiffs, by and through counsel, Burg Simpson Eldredge Hersh & Jardine P.C., hereby submits this Motion for Leave to Amend Their Complaint and Jury Demand, and states as follows:

**<u>CERTIFICATE OF CONFERRAL</u>**

Pursuant to D.COLO.LCivR 7.1(a) undersigned counsel certifies she conferred with counsel for each of the parties. Defendants oppose Plaintiffs' Motion to Amend their Complaint and Jury Demand.

**I. INTRODUCTION**

This civil rights action arises from multiple, disturbing instances of abuse, neglect, and discrimination against students with significant support needs at Steamboat Springs High School. Plaintiffs' original Complaint alleged that the School District and its employees violated the constitutional and statutory rights of these vulnerable students.

In response, Defendants filed multiple Motions to Dismiss, raising a range of procedural and technical arguments—most notably: (1) that individual-capacity claims are not cognizable under certain anti-discrimination statutes, (2) that parents lack standing to pursue claims on their own behalf, and (3) that Plaintiff S.R.'s § 1981 claim was not properly pled. Plaintiffs' Responses demonstrated that Defendants' arguments were overstated, but also recognized that any perceived pleading deficiencies can easily be clarified through amendment.

Rather than expend judicial resources on technical disputes, Plaintiffs now seek leave to amend their Complaint. The proposed Amended Complaint cures the alleged procedural defects, eliminates any doubt regarding standing, and clarifies the statutory basis for each claim—all without altering the fundamental nature of the case. The proposed amendment makes clear:

- **Official-capacity clarification**: Claims One, Two, and Seven are expressly against Defendants in their official capacities only.
- **Parental standing**: The parents proceed solely on behalf of their minor children.
- **§ 1981 claim**: S.R.'s § 1981 claim is properly asserted under § 1983.
- **New factual allegations**: The amended complaint expands on the specific instances of abuse, including the physical assaults, racial harassment, deprivation of toileting assistance, unlawful restraint, public exposure of children's genitalia,

2

and deliberate segregation of SSN students. These allegations underscore deliberate indifference at the highest levels of the District.

This is precisely the type of amendment Rule 15 encourages: one that ensures the case will be decided on the merits of the serious constitutional violations at issue, not on technicalities.

## II. PROCEDURAL HISTORY

- Plaintiffs filed their Complaint on **January 29, 2025** (DN-01).
- Defendants filed Motions to Dismiss on **May 15, 2025** (Rawlings, DN-28), and on **September 5, 2025** (Rosemond, Juba, Wicks, Peterson, DN-41; Tennyson, DN-43).
- Plaintiffs responded on **September 5, 2025** (to Rawlings, DN-44), and on **October 3, 2025** (to School District Defendants and Tennyson, DN-55, DN-56).
- On **October 15, 2025**, this Court stayed discovery due to Defendants' assertion of qualified immunity.

No Scheduling Order has been entered, no discovery has commenced, and no deadlines will be disrupted by amendment.

## III. LEGAL STANDARD

Under Fed. R. Civ. P. 15(a)(2), the Court "should freely give leave [to amend] when justice so requires." The Supreme Court has emphasized that this mandate is to be applied with liberality. *Foman v. Davis*, 371 U.S. 178, 182 (1962). Absent undue delay, bad faith, repeated failure to cure deficiencies, or undue prejudice, leave to amend should be granted.

None of those factors are present here.

## IV. ARGUMENT

### A. Amendment Will Cure the Procedural Defects Defendants Identified.

The proposed Amended Complaint clarifies:

1. **Capacity of Claims** – Claims One, Two, and Seven are expressly asserted against Defendants only in their official capacities, resolving Defendants' objection that individual-capacity claims cannot proceed under certain statutes.

2. **Standing of Parents** – Parents are now explicitly proceeding solely as representatives of their minor children, eliminating any dispute over individual standing.

3. **§ 1981 Claim** – Plaintiff S.R.'s claim under § 1981 is expressly brought via 42 U.S.C. § 1983, in full alignment with controlling precedent.

These clarifications directly address the issues Defendants raised in their Motions to Dismiss and eliminate any risk of unnecessary dismissal.

### B. Amendment Adds Further Factual Allegations Supporting Civil Rights Claims.

The proposed Amended Complaint incorporates significant new allegations substantiating Plaintiffs' constitutional and statutory claims. These additions do not expand the scope of discovery but instead provide necessary specificity about Defendants' deliberate indifference, discriminatory motives, and systemic abuse.

1. **Physical Abuse:** The Amended Complaint describes repeated and severe physical assaults. S.R. was violently spun in her wheelchair until it flipped, slamming her head into the gym floor and leaving her with a concussion and forehead contusion; she received no medical care (¶¶ 255–266, 279–289). Defendant Rawlings was later

4

criminally charged and pled guilty to Crimes Against At-Risk Persons for this conduct (¶¶ 297-300). S.U. returned home with an open head wound caused by lack of supervision (¶¶ 311–320), and was later dragged across a hallway floor while an employee pressed his foot on his head, leaving visible carpet burns (¶¶ 321–334). Staff also restrained S.U. on the toilet, leaving hand-shaped bruises on his body (¶¶ 345–347). A.N. suffered severe wounds when his arm became mangled in his wheelchair wheels due to staff neglect, stripping skin from his arm and resulting in infection (¶¶ 360–366). C.B. was restrained, denied toileting, and left in soiled garments for hours despite her parents' repeated complaints (¶¶ 240–248, 398-401).

   a. **Claims Impacted:** Fourth Amendment (unreasonable seizures), Substantive Due Process, and ADA/§504.

   b. **Strengthening Effect:** These allegations set forth detailed, corroborated instances of physical abuse that go far beyond mere negligence or isolated misconduct. They demonstrate a pattern of excessive force, dangerous restraint practices, and the deliberate denial of medical care to vulnerable, nonverbal students wholly dependent on staff for their safety. Such conduct satisfies the standard for deliberate indifference and establishes a clear constitutional violation. *See Martin v. Board of County Comm'rs*, 909 F.2d 402, 406-07 (10th Cir. 1990) (emphasizing that deliberate indifference to serious medical needs can constitute a constitutional violation, particularly when officials intentionally interfere with prescribed treatment); see also *Zuchel v. Denver*, 997 F.2d 730, 735 (10th Cir. 1993) (deliberate indifference means an act or omission purposefully committed by a person who must have realized

that the conduct was unnecessarily dangerous or which conduct was done heedlessly or recklessly, without regard to the consequences, or without regard to the rights and safety of others.) The Tenth Circuit has long recognized that the use of physical force by school employees against students may constitute an unreasonable seizure or a violation of substantive due process where it is "so brutal, demeaning, and harmful as literally to shock the conscience..." *See Garcia v. Miera*, 817 F.2d 650, 654–55, 658 (10th Cir. 1987)(internal citation omitted)(finding corporal punishment that left bruising violated the Fourteenth Amendment); *see also Harris v. Robinson*, 273 F.3d 927, 930 (10th Cir. 2001). Courts applying this standard have held that physical abuse of children by educators or caretakers implicates the most fundamental protections of bodily integrity. *See Guertin v. Michigan*, 912 F.3d 907, 919 (6th Cir. 2019) ("individuals possess a constitutional right to be free from [government-imposed] forcible intrusions on their bodies against their will, absent a compelling state interest"). By alleging multiple incidents of unprovoked violence, corroborated injuries, and subsequent criminal charges against a staff member, the Amended Complaint provides precisely the kind of factual specificity that transforms abstract allegations into actionable constitutional claims. These facts also underscore Defendants' systemic failure to train, supervise, or discipline staff despite clear warning signs—facts that directly support Plaintiffs' *Monell* and deliberate indifference theories. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978). In short, these detailed allegations establish a pervasive pattern of physical abuse and deliberate indifference to

students' safety, strengthening the plausibility and evidentiary foundation of Plaintiffs' constitutional and statutory claims.

2. **Failure to Provide Toileting Assistance:** All four students required maximum toileting assistance and were wholly dependent on staff (¶¶ 221–225, 229). Yet Rawlings, Rosemond, and Juba routinely denied restroom breaks, forcing students to hold urine for hours or remain in soiled garments (¶¶ 226-234). These practices were particularly dangerous for S.U., who suffers from kidney failure and whose need for frequent toileting was well documented but deliberately ignored (¶¶ 339-342). Rosemond and Juba expressly refused to toilet SSN students, and Tennyson approved their refusal (¶¶ 231-243).

    a. **Claims Impacted:** ADA/§504, Substantive Due Process.
    b. **Strengthening Effect:** These allegations establish deliberate indifference to students' basic bodily integrity and known medical risks. The Tenth Circuit has long recognized that a government official's failure to provide essential care for serious medical needs can amount to unconstitutional deliberate indifference. *See Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) (holding that ignoring an inmate's serious medical needs may constitute deliberate indifference under the Eighth Amendment). While *Sealock* arose in the custodial context, the same principle applies here: public officials responsible for the welfare of vulnerable, nonverbal children may not consciously disregard their basic health needs. Similarly, the Ninth Circuit in *Flores v. Barr*, 934 F.3d 910, 916 (9th Cir. 2019), emphasized the "commonsense understanding" that ensuring children have access to clean water, hygienic bathrooms, and

7

adequate sanitation is fundamental to their safety and well-being. Although *Flores* did not address constitutional claims, its reasoning underscores that denying children access to basic hygiene and toileting care is inherently unsafe and incompatible with the most elementary standards of human decency. *Id.* Taken together, these authorities reinforce that Defendants' persistent refusal to provide toileting assistance—despite known medical risks—reflects deliberate indifference and discriminatory treatment under both constitutional and disability-rights standards.

3. **Humiliation and Privacy Violations:** Students were routinely stripped and changed in classrooms with doors open, exposing their genitalia to peers and staff (¶¶ 384–390). Because staff refused toileting duties, peers were forced to toilet and change SSN students, compounding the humiliation (¶¶ 391–392). On information and belief, the District pressured peers to sign nondisclosure agreements to conceal this misconduct (¶ 388). C.B., in particular, was repeatedly stripped in public, causing lasting trauma (¶¶ 398-402).

   a. **Claims Impacted:** Fourth Amendment (bodily integrity), Substantive Due Process, ADA/§504.

   b. **Strengthening Effect:** These allegations describe egregious invasions of privacy and bodily integrity that meet—and exceed—the constitutional threshold for "shocking the conscience." Forcing nonverbal, disabled students to be stripped and changed in view of peers and staff, and compelling classmates to perform toileting duties, constitutes state-sanctioned humiliation and degradation. The conduct alleged bears no legitimate educational or

caretaking justification; instead, it reflects deliberate disregard for the students' dignity and safety. The Supreme Court has long held that government actions that offend fundamental notions of decency and invade the human body violate substantive due process. *See Rochin v. California*, 342 U.S. 165, 172 (1952) (condemning police conduct that "shocks the conscience" by invading bodily integrity). Likewise, the Tenth Circuit has specifically recognized that compelled or nonconsensual intrusions on children's bodies by state actors implicate fundamental constitutional protections. *See Dubbs v. Head Start, Inc.,* 336 F.3d 1194, 1205–06 (10th Cir. 2003) (holding that medical examinations of preschool children was a "search" under the Fourth Amendment). The parallels here are unmistakable. The repeated public stripping of students—some of whom are nonverbal and incapable of objection—constitutes a severe, ongoing violation of personal privacy and bodily autonomy. Such acts not only meet the "shocks the conscience" standard but also reinforce Plaintiffs' claims under the ADA and § 504 by illustrating the District's disparate treatment and failure to accommodate the most basic needs of students with disabilities. The Amended Complaint's detailed factual allegations transform what Defendants dismiss as generalized grievances into specific, corroborated instances of unconstitutional and discriminatory conduct, strengthening both the constitutional and statutory claims.

4. **Racial Discrimination:** Defendant Rawlings repeatedly referred to S.R., one of the few Black students at SSHS, as a "monkey" (¶¶ 413–414). White SPED students were never subjected to such slurs (¶ 546). Other staff members were aware of these racial

9

slurs yet allowed the discrimination to continue (¶¶ 547-549, 552-553). Upon information and belief, these staff members, alongside Rawlings, conspired to humiliate, alienate, and deprive S.R. of a safe and inclusive learning environment. (¶¶549). These facts demonstrate intentional racial discrimination compounding disability-based abuse (¶¶ 553-559).

   a. **Claims Impacted:** Equal Protection, §1981/§1983.

   b. **Strengthening Effect:** These allegations provide direct, specific evidence of racial animus by a government employee toward a disabled Black student—conduct that strikes at the heart of the Equal Protection Clause. The repeated use of dehumanizing racial slurs, including calling S.R. a "monkey," reveals intentional discrimination motivated by race. Such language, particularly when used by an educator entrusted with the care of vulnerable children, constitutes more than mere verbal abuse; it is a manifestation of official bias that can independently sustain an Equal Protection claim. The deliberate indifference of administrators and staff who witnessed or were aware of this behavior and failed to intervene further establishes the District's acquiescence and institutional tolerance for racial discrimination. The Supreme Court has recognized that racially discriminatory treatment by state actors violates the Equal Protection Clause even absent physical injury. *See Johnson v. California*, 543 U.S. 499, 509 (2005) (emphasizing that "racial classifications are immediately suspect" and trigger the most exacting scrutiny). Federal courts have likewise held that racial epithets by public officials or teachers constitute compelling evidence of discriminatory intent. *See O'Shea v. Yellow*

*Tech. Servs.*, 185 F.3d 1093, 1097 (10th Cir. 1999) (internal citations omitted) ("racial epithets are often the basis of racial harassment claims[] and may likewise create an inference that racial animus motivated other conduct as well. All instances of harassment need not be stamped with signs of overt discrimination to be relevant under Title VII if they are part of a course of conduct which is tied to evidence of discriminatory animus."); *see also Noland v. City of* Albuquerque, 779 F. Supp. 2d 1235, 1240-41 (D. N.M. 2011) (applying the framework to public officials). Moreover, the Amended Complaint's clarification that S.R.'s § 1981 claim is asserted through § 1983 brings it squarely within the framework mandated by *Jett v. Dallas Independent School District,* 491 U.S. 701, 735 (1989), ensuring the claim's legal sufficiency. *Id.* (although other holdings from *Jett* were abrogated by the Civil Rights Act of 1991, this aspect of the Court's ruling remains in effect). By detailing specific slurs, the context in which they occurred, and the knowledge of other employees, the amended allegations transform conclusory assertions of discrimination into concrete facts establishing intentional racial hostility, deliberate indifference, and an institutional pattern of unequal treatment.

5. **Segregation and Exclusion:** Unlike their SPED peers, SSN students were systematically excluded from field trips, vocational training, and life-skills opportunities (¶¶ 203-208). Instead, they were confined to small, windowless closets mislabeled as "sensory rooms" where they were isolated for hours (¶¶ 209-211).

    a. **Claims Impacted:** ADA/§504, Due Process.

b. **Strengthening Effect:** These allegations expose a systemic and deliberate pattern of segregation that reflects both discriminatory intent and institutional policy. By isolating SSN students in confined, windowless "sensory rooms" and excluding them from mainstream academic, social, and vocational activities afforded to their nondisabled peers, Defendants effectively denied them the equal access and inclusion that federal disability law mandates. Such practices demonstrate not mere neglect, but a conscious decision to segregate and marginalize a class of students based on disability. The Supreme Court has made clear that unjustified segregation of individuals with disabilities constitutes a form of discrimination under the ADA and § 504. *See Olmstead v. L.C. ex rel. Zimring*, 527 U.S. 581, 597–603 (1999) (holding that unnecessary institutional isolation is properly regarded as discrimination "based on disability"). This unjustified and continued exclusion of the students amounted to erroneous deprivations of the students' property interest in their public school education, thereby violating the students' right to procedural due process. *See Goss v. Lopez*, 419 U.S. 565, 574 (1975); *Couture v. Bd. of Educ. of the Alburquerque Pub. Schs*, 535 F.3d 1243, 1258 (10th Cir. 2008). The facts alleged here—systematic exclusion from field trips, vocational programs, and life-skills opportunities, coupled with prolonged confinement to isolation rooms—reflect a de facto policy of segregation sanctioned by administrators. Such allegations go directly to *Monell* liability, demonstrating that the discriminatory treatment was not the product of isolated employee misconduct but the result of an established custom or deliberate indifference by the

District's leadership. By detailing the who, where, and how of this segregation, the Amended Complaint provides the specificity necessary to establish deliberate discrimination and constitutional harm.

### C. No Prejudice, Delay, or Bad Faith

- **No Prejudice**: Defendants will suffer no prejudice if amendment is permitted. Discovery has not yet commenced, and no scheduling deadlines are in place. At Defendants' own request, discovery was stayed pending resolution of their qualified immunity defense—effectively placing the case on hold. Allowing amendment at this stage will not disrupt the proceedings or impose any additional burden on Defendants.

- **No Delay**: Plaintiffs have acted diligently and in good faith. They moved to amend within weeks of completing briefing on Defendants' Motions to Dismiss and promptly after receiving Defendants' conferral positions. This timing reflects Plaintiffs' commitment to advancing the case efficiently and addressing potential procedural issues before discovery begins.

- **No Bad Faith**: Plaintiffs seek amendment not to prolong litigation, but to clarify and streamline the pleadings so that the case may proceed on its merits. The proposed amendments resolve technical objections, enhance factual clarity, and ensure that the claims are properly framed for adjudication—precisely the purpose of Rule 15's liberal amendment policy.

### D. The Interests of Justice Favor Amendment

This case implicates some of the most serious concerns our judicial system can address—the fundamental constitutional rights of children with disabilities who were

13

placed in the custody and care of their public school district. The allegations involve systemic mistreatment, deliberate indifference, and discriminatory practices toward highly vulnerable students. Courts have long recognized that such claims go to the heart of constitutional protections and should be heard on their merits rather than disposed of on technical or procedural grounds.

Rule 15 embodies a "strong bias in favor of allowing amendments," reflecting the principle that claims should be resolved on their substantive merits whenever possible. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The Supreme Court made clear that leave to amend should be "freely given when justice so requires," *id.*, and the Tenth Circuit has repeatedly applied that mandate with special force. *See, e.g., Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204 (10th Cir. 2006) (explaining that the purpose of Rule 15 is to provide litigants "the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties").

Here, Plaintiffs' amendments do not inject new claims or create unfair surprise. Rather, they provide additional factual specificity regarding conduct already alleged—facts that further illuminate Defendants' knowledge, deliberate indifference, and discriminatory motives. Such refinement of the pleadings is exactly what Rule 15 is meant to encourage. To deny amendment in this context would elevate form over substance, foreclosing consideration of important allegations that bear directly on Defendants' liability under the Constitution and disability rights statutes.

Moreover, the equities weigh heavily in favor of allowing amendment. Plaintiffs seek only to ensure that the full scope of *known*[1] misconduct is before the Court, so that children who suffered at the hands of their educators may obtain meaningful relief. By contrast, Defendants cannot show prejudice: the amendments do not expand discovery, add new legal theories, or alter the scope of trial preparation. The only effect of allowing amendment is to permit a more accurate and complete presentation of the facts.

In sum, denying leave to amend would undermine Rule 15's liberal standard, the Supreme Court's clear directive in *Foman*, and the fundamental principle that justice requires claims of constitutional deprivation to be adjudicated on their merits. The interests of justice therefore strongly favor granting Plaintiffs' motion to amend. Plaintiffs have attached their proposed First Amended Complaint and Jury Demand as **Exhibit 1** in accordance with D.C.COLO.LCivR 15.1.

WHEREFORE, Plaintiffs request the Court grant leave to file their attached proposed First Amended Complaint and Jury Demand pursuant to Fed. R. Civ. P. 15(a)(2).

Respectfully submitted this 5th day of November 2025.

**BURG SIMPSON
ELDREDGE HERSH & JARDINE, P.C.**

---

[1] It must be noted that Plaintiffs are at a significant disadvantage given that all four student Plaintiffs are nonverbal and unable to communicate their experiences directly. As a result, virtually all relevant information concerning the abuse, neglect, and discriminatory treatment they endured resides within the knowledge and control of Defendants and their employees. The stay of discovery has further compounded this imbalance, preventing Plaintiffs from obtaining testimony, internal communications, or documents that would otherwise illuminate the facts alleged. While Plaintiffs and their counsel have diligently pursued every available avenue—including public records requests, interviews with parents, and careful reconstruction of events through contemporaneous documentation—the absence of discovery has made it exceedingly difficult to fully develop the evidentiary record. These challenges underscore the importance of allowing amendment and discovery to proceed so that the truth of Defendants' conduct can be established on a complete factual record rather than constrained by procedural limitations.

/s/Jessica L. Breuer
Jessica L. Breuer, Esq.
Hannah Huston, Esq,
40 Inverness Drive East
Englewood, CO 80112
Phone: (303) 792-5595
Fax: (303) 708-0527
jbreuer@burgsimpson.com
*Attorneys for Plaintiffs*

**CERTIFICATE OF SERVICE**

This is to certify that on November 5, 2025 a true and correct copy of the foregoing **PLAINTIFF'S MOTION FOR LEAVE TO AMEND THEIR COMPLAINT AND JURY DEMAND** was filed with the U.S. District Court of Colorado CM/ECF System which will notify the following:

CAPLAN AND EARNEST LLC
Gwyneth Whalen
Elliott V. Hood
Caroline G. Gecker
3107 Iris Ave, Ste 100
Boulder, CO 80301
303-443-8010
gwhalen@celaw.com
ehood@celaw.com
cgecker@celaw.com
*Attorneys for the School District Defendants*

Lyons Gaddis, PC
Catherine A. Tallerico
PO Box 978
515 Kimbark St.
Longmont, CO 80502
303-776-9900
ctallerico@lyonsgaddis.com
*Attorney for Defendant Sylvia Rawling*

SGR, LLC
Courtney B. Kramer
3900 East Mexico Ave., Suite 700
Denver, CO 80210
303-320-0509
Email: ckramer@sgrllc.com

*Attorney for Defendant Anne-Marie Tennyson*

      */s/ Annette L. Jones*
      Annette L. Jones, Paralegal