**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.  1:25-cv-00315-CNS-SBP

MAYO THOMPSON, individually, and on behalf of S.R., a minor;
CANDY GRANGER, individually, and on behalf of S.U., a minor;
HEATHER NAUSED, individually, and on behalf of A.N., a minor;
ERIC BENDER and AMY BENDER, individually, and as husband and wife, on behalf of
C.B., a minor,

Plaintiffs,

v.

STEAMBOAT SPRINGS SCHOOL DISTRICT RE-2, a municipal entity;
CELINE WICKS, in her individual and official capacities;
ANNE-MARIE TENNYSON, in her individual and official capacities;
RON PETERSON, in his individual and official capacities;
SYLVIA RAWLINGS, in her individual and official capacities;
CHUCK ROSEMOND, in his individual and official capacities; and
DAN JUBA, in his individual and official capacities,

Defendants.

---

**SCHOOL DISTRICT DEFENDANTS' <u>AMENDED</u> PARTIAL MOTION TO DISMISS
PLAINTIFFS' FIRST AMENDED COMPLAINT (ECF 71)[1]**

---

Defendants Steamboat Springs School District RE-2, Dr. Celine Wicks, Ron

Peterson, Chuck Rosemond, and Dan Juba (collectively, the "School District

Defendants") move to dismiss Claims 8 and 9 of the First Amended Complaint ("FAC")

based on Fed. R. Civ. P. 12(b)(1) and (b)(6). Defendants Wicks, Peterson, Rosemond,

and Juba (collectively, the "Individual District Defendants") also move to dismiss all

---

[1] In the Certificate of Conferral for the School District Defendants' partial motion to dismiss (ECF 75), undersigned counsel stated that Plaintiffs' counsel opposed the requested relief. This amended motion corrects the Certificate of Conferral to reflect that, at the time of filing, Plaintiffs' counsel had not communicated their position.

remaining claims against them in their individual and official capacities (Claims 3, 4, 5, and 6) pursuant to Rule 12(b)(6).

## CERTIFICATE OF CONFERRAL

Pursuant to D.C.Colo.LCivR 7.1(a), undersigned counsel conferred with Plaintiffs' counsel by email on February 24, 2026, regarding this motion. Undersigned counsel did not receive a response from Plaintiffs' counsel as of the time of filing but presumes that Plaintiffs oppose the motion and do not intend to further amend their complaint given the parties' positions in briefing Plaintiffs' Motion for Leave to Amend the Complaint (ECF Nos 63, 67, & 67).

## LEGAL STANDARDS FOR MOTION TO DISMISS

The School District Defendants bring this motion under Fed. R. Civ. P. 12(b)(1) and (6). A party may challenge a court's subject-matter jurisdiction under Rule 12(b)(1), which may be done "through a facial or factual attack." *Laufer v. Looper*, 22 F.4th 871, 875 (10th Cir. 2022). "A facial attack assumes the allegations in the complaint are true and argues they fail to establish jurisdiction. A factual attack goes beyond the allegations in the complaint and adduces evidence to contest jurisdiction." *Id.*

A party may challenge the sufficiency of the pleadings under Rule 12(b)(6). To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is "plausible" only when the plaintiff pleads facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Sheer possibility" is not plausibility. *Id.*

2

**RELEVANT ALLEGATIONS[2]**

Students S.R., S.U., C.B., and A.N. ("Students"), who each have disabilities, were in the significant support needs (SSN) classroom at Steamboat Springs High School during the 2022–2023 school year. (ECF 71 ¶ 96.) The SSN classroom is a specialized instructional setting for students who require intensive, individualized support due to their disabilities. (*Id*. ¶¶ 59–63.) During that school year, Defendant Celine Wicks was Superintendent of the District (*id*. ¶ 64); Defendant Ron Peterson was Principal of the High School (*id*. ¶ 78); and Defendants Dan Juba and Chuck Rosemond were special education teachers (*id*. ¶¶ 88, 91). Defendant Sylvia Rawlings was a paraprofessional assigned to the SSN classroom. (*Id*. ¶ 8.)

The allegations specific to each Student are as follows:

**Student S.R.** has cerebral palsy. (*Id*. ¶ 101.) She is nonverbal and wheelchair-bound. (*Id*. ¶¶ 104–105.) Defendant Rawlings was a paraprofessional who worked with S.R. (*Id*. ¶¶ 170, 176.) On several occasions, Ms. Rawlings called S.R., who is Black, a "monkey." (*Id*. ¶ 413.) On several occasions, Ms. Rawlings spun S.R.'s wheelchair in the gymnasium while S.R. was strapped in. (*Id*. ¶ 256.) Other paraprofessionals had witnessed Ms. Rawlings spinning S.R. in her wheelchair and had informed Defendants Tennyson and Peterson. (*Id*. ¶ 259.) On January 31, 2023, Ms. Rawlings spun S.R.'s wheelchair in the gymnasium, and the wheelchair tipped over, resulting in a concussion and forehead contusion to S.R. (*Id*. ¶ 262; S.R. Video, **Ex. A** to ECF 45.) The incident was promptly reported to District officials, who met with Ms. Thompson the following day and started an investigation. (*Id*. ¶ 286.) Ms. Rawlings resigned from the District on

---

[2] The School District Defendants accept as true the allegations in ECF 71 for purposes of this motion only.

February 3, 2023. (*Id*. ¶ 298.) Plaintiffs do not allege that S.R. missed school due to her injury.

**Student S.U.** has physical and intellectual disabilities, including Angelman's Syndrome, which causes delayed development, speech impairment, and difficulties with movement and balance. (*Id*. ¶¶ 113–114.) He is nonverbal and utilizes a wheelchair. (*Id*. ¶¶ 115–116.) On May 25, 2023, an unnamed District employee ("Employee A") handled S.U. inappropriately in the school hallway. (*Id*. ¶¶ 326-327.) Per the FAC, there is a video of this incident. (*Id*. ¶ 326; S.U. Video, **Ex. B** to ECF 45.) Two weeks earlier, S.U. had hurt his head in the gymnasium while being supervised by Defendant Juba. (*Id*. ¶ 316.)

**Student C.B.** is nonverbal and requires toileting assistance. (*Id*. ¶¶ 139–140.) On one occasion, Defendant Rosemond held back C.B.'s arms while she was trying to move forward. (*Id*. ¶ 245.) On March 24, 2023, Mr. and Mrs. Bender emailed Defendants Tennyson and Peterson stating that they did not want Defendant Juba to supervise C.B. anymore. (*Id*. ¶ 246.) Ms. Tennyson forwarded this email to Defendant Wicks. (*Id*. ¶ 248.)

**Student A.N**. has intellectual and physical disabilities, including cerebral palsy. (*Id*. ¶ 127.) He is nonverbal and wheelchair-bound. (*Id*. ¶¶ 128–129.) In May 2023, while under the supervision of Defendants Rosemond and Juba, A.N.'s arm became stuck between his wheelchair and its wheel, causing injury. (*Id*. ¶¶ 360-363.)

**Allegations as to Students**. All Students were verbally abused by staff members. (*Id*. ¶¶ 371-372.) Defendants Rawlings, Rosemond, and Juba failed to provide adequate toileting assistance. (*Id*. ¶ 231.) Staff members changed Students in view of other students and staff, instead of in a private changing area. (*Id*. ¶ 384.) Further, on multiple occasions, Students were placed in a "sensory room," a closet without natural light. (*Id*.

4

¶¶ 209-210.) Students were also excluded from experiential field trips to local businesses, which verbal students with disabilities were permitted to attend. (*Id*. ¶¶ 203-204.)

## ARGUMENT

## I.    The Individual District Defendants are entitled to qualified immunity.

### A.    Legal Standards for Qualified Immunity.

Qualified immunity protects officials from liability unless a reasonable person, possessing the same facts, would have known that he or she was violating clearly established law. *Leverington v. City of Colo. Springs*, 643 F.3d 719, 732 (10th Cir. 2011). Once a defendant raises this defense, it creates a "presumption of immunity of the individual defendants." *Reavis v. Frost*, 967 F.3d 978, 992 (10th Cir. 2020). Plaintiffs shoulder the "heavy" burden to prove the defendants violated a clearly established constitutional right. *Neal v. Lewis*, 414 F.3d 1244, 1247 (10th Cir. 2005). Thus, to overcome this defense, Plaintiffs must plausibly allege that: (1) a defendant violated Plaintiffs' constitutional rights and (2) that right was clearly established at the time of misconduct. *Zuchel v. Spinarney*, 890 F.2d 273, 274 (10th Cir. 1989).

As to the first prong, Plaintiffs must plausibly allege that the defendant was personally involved in the alleged constitutional deprivation and had actual knowledge of and acquiesced to the challenged conduct. *Jojola v. Chavez*, 55 F.3d 488, 490 (10th Cir. 1995); *Foote v. Spiegel*, 118 F.3d 1416, 1423-24 (10th Cir. 1997).

Along these lines, a defendant cannot be held liable for the actions of others under a theory of respondeat superior. *Perry v. Durborow*, 892 F.3d 1116, 1121 (10th Cir. 2018). Instead, supervisors can be held liable only where they were deliberately indifferent to conduct that directly caused alleged constitutional injury. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Serna v. Colo. Dep't of Corr.*, 455 F.3d 1146, 1154 (10th Cir. 2006). The

deliberate indifference standard may be satisfied when the supervisor "has actual or constructive notice that its action or failure to act is substantially certain to result in a constitutional violation, and it consciously or deliberately chooses to disregard the risk of harm." *Barney v. Pulsipher,* 143 F.3d 1299, 1307 (10th Cir. 1998). The "risk of harm" cannot be general and must be "an obvious risk of constitutional harm [that will] almost inevitably result in constitutional injury of the type experienced by the plaintiff." *Hollingsworth v. Hill*, 110 F.3d 733, 745 (10th Cir. 1997) (citing *City of Canton, Ohio v. Harris*, 489 U.S. 378, 389-90 (1989)).

The second prong, assessing whether a right was "clearly established," is a "purely legal determination" analyzing whether there is a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts has found the law to be as Plaintiffs maintain. *Reavis*, 967 F.3d at 984. "For a constitutional right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Panagoulakos v. Yazzie*, 741 F.3d 1126, 1129 (10th Cir. 2013). The "clearly established law must be particularized to the facts of the case." *Perry,* 892 F.3d at 1123.

### B. Plaintiffs have not plausibly alleged facts overcoming qualified immunity as to any Individual District Defendant.

Where, as here, plaintiffs assert complex constitutional claims against multiple individual government actors, "[t]he *Twombly* standard may have greater bite." *Robbins v. Okla.*, 519 F.3d 1242, 1249 (10th Cir. 2008). In such cases, "it is particularly important . . . that the complaint make clear exactly who is alleged to have done what to whom, to provide each individual with fair notice as to the basis of the claims against him or her, as distinguished from collective allegations against the state." *Id.* at 1250. Most of Plaintiffs'

allegations consist of bare recitations of elements, without differentiating among the Individual District Defendants' specific conduct or explaining how that conduct directly caused Plaintiffs' alleged injuries. Such pleadings are insufficient to overcome the Individual District Defendants' entitlement to qualified immunity.

To the extent the FAC contains individualized allegations of constitutional violations, they are considered below as to each Individual District Defendant.

**Ms. Wicks**. Because Plaintiffs' allegations against Superintendent Wicks pertain only to her supervisory role, Plaintiffs must allege facts showing that she was deliberately indifferent to "an obvious risk of constitutional harm which will almost inevitably result in constitutional injury of the type experienced by the plaintiff." *Hollingsworth*, 110 F.3d at 745 (citing *Canton,* 489 U.S. at 389-90). Plaintiffs, however, offer only vague and conclusory assertions that fail to establish actual notice or any causal link between Superintendent Wicks' alleged knowledge and any of the alleged injuries at issue.

Plaintiffs attempt to impose liability on Superintendent Wicks based on purported notice she allegedly had of Ms. Rawlings' and Mr. Juba's conduct and her alleged failure to act. As to Ms. Rawlings, Plaintiffs assert that, "upon information and belief," Superintendent Wicks was "aware of Defendant Rawlings' history of hateful and abusive comments, as well as her mistreatment of students with significant support needs at SSHS." (ECF 71 ¶ 183.) Such generalized statements—unsupported by dates, reports, complaints, or other concrete facts—are insufficient to plausibly allege actual notice. In the Tenth Circuit, allegations made "on information and belief" may only be credited if "the complaint sets forth the factual basis for the belief." *Jackson-Cobb v. Sprint United Mgmt.*, 173 F. Supp. 3d 1139, 1149 (D. Colo. 2016) (citing *Scheidt v. Klein*, 956 F.2d 963, 967 (10th Cir. 1992)). For example, in *Jackson-Cobb v. Sprint United Management*, the court

considered the plausibility of the plaintiff's Title VII retaliation claim. The plaintiff alleged,

"upon information and belief," that her supervisor knew about the plaintiff's complaints of

discrimination. *Id.* at 1148. The court found her bare allegations insufficient, explaining:

> In this case, Plaintiff offers no further information about why she believes
> Ms. Wilson knew about her complaints. For example, when did Ms. Wilson
> learn about the complaint? Who may have told her? Did Ms. Wilson speak
> to Plaintiff about the complaint? Did someone else tell Plaintiff that Ms.
> Wilson knew about her complaint? Without more information, this is simply
> a conclusory factual allegation that appears to be made to satisfy an
> element of this claim. *Cf. Henson v. Bank of Am.*, 935 F. Supp. 2d 1128,
> 1138 (D. Colo. 2013) . . . . As a result, the Court cannot credit Plaintiff's
> conclusory allegation made on information and belief.

*Jackson-Cobb v. Sprint United Mgmt.*, 173 F. Supp. 3d 1139, 1149 (D. Colo. 2016). Here,

too, Plaintiffs provide no factual basis for their bare allegation that Superintendent Wicks

was aware of Defendant Rawlings' alleged conduct.

As to Mr. Juba, Plaintiffs allege only that Superintendent Wicks was forwarded an

email on March 24, 2023, in which the Benders stated that they no longer wanted Mr.

Juba to supervise C.B. because of his "blatant disregard for C.B.'s education and safety."

(ECF 71 ¶¶ 246-248.)  Plaintiffs do not allege the contents of the email, the specific nature

of the concerns expressed, or any facts suggesting that the email  described conduct

rising to the level of a constitutional violation. The allegation is thus insufficient to plausibly

establish notice of specific harm. *See Iqbal*, 556 U.S. at 678 (holding that conclusory

allegations unsupported by factual content do not state a plausible claim); *Hollingsworth*,

110 F.3d at 750 (requiring specific facts showing actual knowledge and deliberate

indifference to a known risk of specific harm).

Further, even if Superintendent Wicks had notice of a substantially certain risk of

a constitutional violation to any Student, Plaintiffs fail to allege any facts establishing a

causal connection between Superintendent Wicks' purported inaction and any

subsequent injury suffered by a Plaintiff. Plaintiffs thus cannot plausibly establish that Superintendent Wicks' alleged deliberate indifference resulted in a constitutional violation.

**Mr. Peterson.** Plaintiffs' allegations against Mr. Peterson also rest solely on a supervisory liability theory. Plaintiffs allege that Mr. Peterson was aware that Ms. Rawlings was "unfit" for her role and had a "history of hateful and abusive comments" and "mistreatment" of special needs students (ECF 71 ¶¶ 179-182.) They further allege that Mr. Peterson was aware that Defendants Rosemond and Juba "refused to provide Students with toileting assistance." (*Id*. ¶ 232.) As with Superintendent Wicks, however, Plaintiffs identify no specific instance where Mr. Peterson received notice of a substantially certain risk of constitutional harm, aside from the single, vague reference to the March 24, 2023 email. Generalized allegations of awareness, without specific factual detail regarding when Mr. Peterson learned of the alleged conduct, from whom he received the information, or what precisely was reported, are insufficient to plausibly allege actual notice. *See Jackson-Cobb*, 173 F. Supp. 3d at 1149. Moreover, Plaintiffs allege no facts tying Mr. Peterson's alleged deliberate indifference to his purported knowledge to any specific constitutional injury suffered by any Plaintiff.

**Rosemond and Juba.** Plaintiffs assert that Messrs. Rosemond and Juba violated their substantive due process, Fourth Amendment, equal protection, and procedural due process rights. The FAC's conclusory allegations are insufficient to overcome Rosemond's and Juba's entitlement to qualified immunity.

Substantive due process. Plaintiffs allege Messrs. Rosemond and Juba violated their substantive due process rights by failing to adequately toilet them during the school day (*id.* ¶¶ 139-140) and by failing to adequately supervise A.N., leading to his arm becoming caught in his wheelchair (*id.* ¶ 360-363).

Courts recognize two types of substantive due process claims: (1) government "legislative action" that deprives a person of a recognized fundamental right, and (2) government "executive action" that "deprive[s] a person of life, liberty, or property in a manner so arbitrary it shocks the conscience." *Doe v. Woodard*, 912 F.3d 1278, 1300 (10th Cir. 2019). Plaintiffs' substantive due process claim is based on a "shocks the conscience" theory. (ECF 71 ¶¶ 363-481.)

Executive action that shocks the conscience "requires much more than negligence." *Woodard*, 912 F.3d at 1300. "Even the actions of a reckless official or one bent on injuring a person do not necessarily shock the conscience." *Id.* "To show that a defendant's conduct is conscience-shocking, a plaintiff must prove a government actor arbitrarily abused his authority or employed it as an instrument of oppression." *Id.* The behavior complaint of must be egregious and outrageous." *Id.*

In the school-discipline context, the Tenth Circuit asks whether the force used caused injury "so severe, was so disproportionate to the need presented, and was so inspired by malice or sadism rather than a merely careless or unwise excess of zeal that it amounted to a brutal and inhumane abuse of official power literally shocking to the conscience." *Muskrat v. Deer Creek Pub. Schs.*, 715 F.3d 775, 787 (10th Cir. 2013) (quotations omitted). Meeting this standard requires an extremely high degree of outrageousness. *See, e.g., Harris v. Robinson*, 273 F.3d 927, 931 (10th Cir. 2001) (ordering disabled child to clean toilet with bare hands was not conscience shocking); *Gonzales v. Passino*, 222 F. Supp. 2d 1277, 1282 (D.N.M. 2002) (teacher hitting student with plastic bat purely out of anger was not conscience shocking).

Even accepted as true, Plaintiffs' allegations regarding Rosemond and Juba's inadequate toileting and failure to prevent A.N.'s alleged arm injury do not approach the

10

level of "brutal or inhumane abuse of power" necessary to satisfy the "shocks the conscience" standard for a substantive due process claim." *Muskrat.*, 715 F.3d at 787. Moreover, there is no clearly established law holding that failure to provide toileting assistance during the school day amounts to a constitutional violation. Because Plaintiffs fail to satisfy either prong of the qualified immunity analysis, Messrs. Rosemond and Juba are entitled to qualified immunity.

Fourth Amendment. Plaintiffs assert that Messrs. Rosemond and Juba violated their Fourth Amendment rights by subjecting them to "restraint and seclusion." In support of this claim, Plaintiffs allege that they "were placed in so-called 'sensory rooms'" and that, on an unspecified occasion, Mr. Rosemond "physically restrained C.B. by holding her arms back while she was attempting to move forward." (ECF 71 ¶ 245.)

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const., amend. IV. A person is "seized" under the Fourth Amendment when a government official, "by means of physical force or show of authority, terminates or restrains his freedom of movement." *Brendlin v. Cal.*, 551 U.S. 249, 254 (2007). In the school context, the Tenth Circuit applies a two-part test to determine whether such conduct constitutes a Fourth Amendment seizure: first, whether the restraint "significantly exceeds that inherent in everyday, compulsory school attendance," and second, whether the restraint was "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference." *Couture v. Bd. of Educ. of Albuquerque Pub. Sch.*, 535 F.3d 1243, 1250-1251 (10th Cir. 2008).

With respect to the allegation that Mr. Rosemond held back C.B.'s arms, Plaintiffs provide no factual context for the alleged "restraint" that could plausibly give rise to a Fourth Amendment violation. The FAC does not allege when this incident occurred, how

11

long the alleged restraint lasted, what circumstances prompted it, or whether it was imposed for safety or behavioral reasons. A bare allegation that a student's arms were held back, without more, falls far short of plausibly alleging an unconstitutional seizure.

As to the sensory rooms, Plaintiffs allege that, "upon information and belief," students were left in "small, windowless closets" for "extended periods—often hours at a time." (ECF 71 ¶¶ 209-210.) As a threshold matter, these allegations are entirely conclusory and devoid of factual support. As noted, allegations made "on information and belief" are insufficient absent a factual basis for the belief. *Jackson-Cobb*, 173 F. Supp. 3d at 1149. Plaintiffs provide no facts regarding when these alleged incidents occurred, how frequently they happened, which students were involved, or, critically, which Individual District Defendants (if any) were involved.

To that point, Plaintiffs do not allege that Messrs. Rosemond or Mr. Juba personally participated in placing any student in a sensory room, directed others to do so, or even had knowledge of such placements. Instead, Plaintiffs allege only that they "were placed" in the rooms by unspecified staff members. Such generalized and collective allegations are insufficient to establish personal participation, and they cannot overcome Messrs. Rosemond's and Juba's entitlements to qualified immunity.

<u>Disability-based equal protection.</u>[3] Plaintiffs allege that Messrs. Rosemond and Juba violated their equal protection rights by discriminating against them based on their disabilities. To state a disability-based equal protection claim, Plaintiffs "must first make a threshold showing that they were treated differently from others who were similarly situated." *Brown v. Montoya*, 662 F.3d 1152, 1172 (10th Cir. 2011). Disabled students are

---

[3] Plaintiffs do not assert race-based equal protection claims against Rosemond or Juba.

not similarly situated to non-disabled students, but rather to disabled students <u>with similar needs</u>. *Ebonie S. ex rel. Mary S. v. Pueblo Sch. Dist. 60*, 819 F. Supp. 2d 1179, 1189 (D. Colo. 2011), *aff'd,* 695 F.3d 1051 (10th Cir. 2012) (emphasis added).

Plaintiffs do not identify any non-plaintiff students with comparable levels of disability, communication limitations, and support needs who were treated more favorably by Messrs. Juba or Rosemond. To the contrary, the FAC repeatedly compares Plaintiffs' alleged treatment as non-verbal students to "the other 106 students enrolled in SSHS's SPED program"—i.e., verbal students. (ECF 71 ¶ 196.) But verbal students have materially different needs than Plaintiffs and therefore are not valid comparators for an equal protection analysis. *See Ebonie S.,* 819 F. Supp. 2d at 1189. Because Plaintiffs do not allege facts establishing appropriate comparators, they fail to plausibly plead disability discrimination by Messrs. Juba or Rosemond, who are in turn entitled to qualified immunity.

<u>Procedural due process</u>. Plaintiffs allege that Defendants deprived them of protected property interests in public education and reputation without "the appropriate level of process," apparently based on Plaintiffs' alleged placement in sensory rooms (ECF 71 ¶¶ 209–210) and exclusion from experiential field trips (*id*. ¶¶ 203–204). The FAC does not allege that Defendants Rosemond or Juba personally participated in any sensory room placement. Accordingly, Plaintiffs' procedural due process claim against them rests solely on the alleged exclusion from field trips.

The Supreme Court has recognized that students are entitled to "notice and . . . some kind of hearing" only when a complete deprivation of education occurs, such as when a student is removed from school for a lengthy period. *Goss v. Lopez*, 419 U.S. 565, 574, 578–79 (1975). Due process is not implicated where any interference with a

13

student's educational interest is de minimis. *Id.* at 576. Consistent with this standard, the Tenth Circuit has held that a special education student who missed approximately twelve hours of classroom instruction over two and one-half months due to timeouts did not suffer a constitutional deprivation. *Couture v. Bd. of Educ. of Albuquerque Pub. Schs.*, 535 F.3d 1243, 1257 (10th Cir. 2008). In contrast, a ten-day suspension constitutes a total exclusion from the educational process. *Goss*, 419 U.S. at 574.

Here, Plaintiffs do not allege that Messrs. Rosemond or Juba suspended, expelled, or otherwise removed any Plaintiff from school. Instead, they allege exclusion from weekly field trips. Such exclusion does not amount to a complete or near-complete deprivation of educational services, and Plaintiffs identify no clearly established law holding otherwise. Accordingly, Messrs. Rosemond and Juba are entitled to qualified immunity.

## II.     S.R.'s Section 1981 and 1986 claims fail to state a claim against the District, Defendant Wicks, or Defendant Peterson (Claims 8 and 9).

Plaintiff S.R. asserts Section 1981 and Section 1986 claims against the District, Defendant Wicks, and Defendant Peterson, in their individual capacities. For the reasons set forth below, both claims fail against all Defendants.

### A.     S.R.'s Section 1981 claim is not plausible (Claim 8).

To prevail on this claim, S.R. must identity "an impaired contractual relationship under which the plaintiff has rights." *Muller v. Islands at Rio Rancho Homeowners Ass'n*, 564 F. App'x 411, 414 (10th Cir. 2014) (quoting *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 477 (2006) (emphasis added)). Here, Plaintiffs assert that S.R.'s Individualized Education Plan ("IEP") constitutes "a legally binding contract" whose impairment supports a § 1981 claim. (ECF 71 ¶¶110-111.) However, the Tenth Circuit has held that IEPs are statutory documents created under the Individuals with Disabilities in Education Act, not

14

contracts. *Thompson R2-J Sch. Dist. v. Luke P., ex rel. Jeff P.*, 540 F.3d 1143, 1151 (10th Cir. 2008); *accord Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 820 (9th Cir. 2007) ("An IEP is not a contract."). Because Section 1981 protects only contractual rights, S.R.'s reliance on her IEP cannot invoke Section 1981 liability.

**B.      The Section 1986 claim is time-barred and not plausible (Claim 9).**

Section 1986 claims are subject to a one-year statute of limitations. 42 U.S.C. § 1986; *O'Connor v. St. John's Coll.*, 290 F. App'x 137, 142 (10th Cir. 2008). Because Section 1986 contains an explicit federal limitations period, Colorado's state tolling provisions for minors do not apply. *See Baker v. Bd. of Regents of State of Kan.*, 991 F.2d 628, 630 (10th Cir. 1993) (explaining that courts may look to state law where federal civil rights law does not include an express statute of limitations and where state law is not inconsistent with federal law). Though the FAC does not allege when Ms. Rawlings supposedly called S.R. a "monkey," it was necessarily before she was placed on administrative leave and terminated—i.e., before February 2023. S.R. did not bring this action until January 29, 2025, nearly two years later.

Further, S.R. has not plausibly alleged a conspiracy to interfere with her civil rights as described in Section 1985, a necessary element of her claim. *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993). Ms. Rawlings' alleged "monkey" comments, even if racially motivated, do not remotely suggest the existence of a "conspiracy" to deprive S.R. of equal protection, as required to state an underlying Section 1985 claim.

**III.      The official capacity claims are duplicative (Claims 3, 4, 5, and 6).**

Plaintiffs assert their Third through Sixth Claims against both the District and against the Individual District Defendants in their official capacities. Any official capacity claim against a municipal employee is treated as a suit against the municipality itself.

*Hafer v. Melo*, 502 U.S. 21, 25 (1990). Where a plaintiff sues both a municipality and municipal officials in an official capacity under the same theory of recovery, courts have dismissed the official capacity claims as "redundant" of the claim against the municipal entity. *See, e.g., Doe v. Douglas Cnty. Sch. Dist. RE-1*, 775 F. Supp. 1414, 1416 (D. Colo. 1991). All claims against the Individual District Defendants in their official capacities are duplicative of his claim against the District and should be dismissed.

## CONCLUSION

The Court should: dismiss Claims 3, 4, 5, and 6 against Defendants Wicks, Peterson, Rosemond, and Juba in their individual and official capacities, dismiss Claims 8 and 9 against all School District Defendants, and grant any other and further relief as the Court deems appropriate.[4]

Respectfully submitted this 25th day of February 2026.

*s/ Caroline G. Gecker*
Gwyneth Whalen
Elliott V. Hood
Caroline G. Gecker
CAPLAN AND EARNEST LLC
3107 Iris Ave, Ste 100
Boulder, CO 80301
303-443-8010
gwhalen@celaw.com
ehood@celaw.com
cgecker@celaw.com

## CERTIFICATE OF SERVICE

This is to certify that on February 25, 2026, a true and correct copy of the foregoing was filed with the U.S. District Court of Colorado CM/ECF System which will notify the following:

---

[4] If this Amended Partial Motion to Dismiss is granted, all claims against all Individual District Defendants will be dismissed, and the Individual District Defendants should be dismissed as parties.

16

Jessica L. Breuer, Esq.
Stephen Burg, Esq.
Hannah E. Huston, Esq.
Halli E. Berrebbi, Esq.
Burg Simpson Eldredge Hersh & Jardine, P.C.
jbreuer@burgsimpson.com; sburg@burgsimpson.com;
hhuston@burgsimpson.com; hberrebbi@burgsimpson.com
*Attorneys for Plaintiffs*

Courtney B. Kramer, Esq.
Bennett M. Harrell, Esq.
Eric M. Ziporin, Esq.
SGR, LLC
ckramer@sgrllc.com; bharrell@sgrllc.com; eziporin@sgrllc.com
*Attorneys for Defendant Anne-Marie Tennyson*

Catherine A. Tallerico, Esq.
Lyons Gaddis, P.C.
ctallerico@lyonsgaddis.com
*Attorney for Defendant Sylvia Rawlings*

s/*Shelley McKinstry*
Shelley McKinstry, Paralegal