**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:25-cv-00315-CNS-SBP

MAYO THOMPSON, on behalf of S.R., a minor; CANDY GRANGER, on behalf of S.U., a minor; HEATHRE NAUSED, on behalf of A.N., a minor; ERIC BENDER and AMY BENDER, on behalf of C.B., a minor.

     Plaintiffs,

v.

STEAMBOAT SPRINGS SCHOOL DISTRICT RE-2, a municipal entity; CELINE WICKS, in her individual and official capacities; ANNE-MARIE TENNYSON, in her individual and official capacities; RON PETERSON, in his individual and official capacities; SYLVIA RAWLINGS, in her individual and official capacities; CHUCK ROSEMOND, in his individual and official capacities; and DAN JUBA, in his individual and official capacities.

    Defendants.

---

### PLAINTIFFS' RESPONSE TO THE SCHOOL DISTRICT DEFENDANTS' AMENDED <u>PARTIAL</u> MOTION TO DISMISS PLAINTIFFS' FAC (DOC. 78)

---

COMES NOW, Plaintiffs, by and through counsel, Burg Simpson Eldredge Hersh & Jardine, P.C., and respectfully submit this Response to the School District Defendants' Amended <u>Partial</u> Motion to Dismiss Plaintiffs' FAC (Doc. 78).

### <u>RESPONSE TO CONFERRAL POSITION</u>

Defendants' counsel sent a single email to Plaintiffs' counsel on the afternoon of February 24, 2026, indicating an intent to file a Motion to Dismiss. Before Plaintiffs' counsel had a meaningful opportunity to respond or engage in a substantive meet-and-confer, Defendants filed the Motion the following day.

### <u>INTRODUCTION</u>

This case is about the abuse of children who cannot protect themselves.

Plaintiffs are profoundly disabled, non-verbal students placed in the Significant Support Needs ("SSN") classroom at Steamboat Springs High School. They depend entirely on school staff for mobility, communication, and basic bodily care. They cannot report abuse, preserve evidence, or advocate for themselves. The facts of what occurred are largely within Defendants' control.

Instead of protecting these students, Defendants subjected them to degrading, dangerous, and discriminatory treatment. The FAC alleges that students were denied basic toileting assistance and left in soiled clothing, forced to expose their genitals in view of others, confined for extended periods in a windowless room, physically restrained, and physically abused. These were not isolated incidents. They reflect a sustained pattern of conduct directed at a small group of profoundly vulnerable students, involving multiple incidents carried out by multiple Defendants over time, rather than isolated or independent acts. Defendants do not meaningfully confront these allegations. Instead, they seek dismissal through procedural arguments that misstate both the law and the FAC. At the pleading stage, the motion fails for several independent reasons.

First, the FAC pleads specific conduct by specific actors, including direct physical abuse, participation in restraint and deprivation of basic care, and supervisory knowledge coupled with deliberate inaction. These allegations plausibly establish personal participation and supervisory liability.

Second, Defendants attempt to recast this conduct as ordinary classroom management. The FAC alleges far more: repeated denial of basic bodily care, forced public exposure, prolonged isolation, physical restraint, and conduct resulting in serious

2

injury. Taken as true, these allegations plausibly state violations of substantive due process, and to the extent applicable, the Fourth Amendment.

Third, Defendants' qualified immunity argument applies the wrong legal standard. Clearly established law does not require a prior case involving identical facts. Longstanding precedent gave fair warning that abusive restraint, degrading conditions, and deliberate indifference to known harm are unconstitutional.

Fourth, the FAC plausibly alleges race-based discrimination and a continuing pattern of conduct sufficient to support claims under §§ 1981 and 1986.

Finally, Defendants' arguments depend on factual disputes—particularly as to notice, authority, and causation—that cannot be resolved at the pleading stage. The FAC provides a detailed factual narrative identifying the actors, the conduct, and the resulting harm. That is all that the law requires.

Accepting those allegations as true, the FAC plausibly alleges constitutional and statutory violations. The motion should be denied.

## STANDARD OF REVIEW

Dismissal at the pleading stage is a "harsh remedy" that must be applied cautiously to protect the liberal pleading standards of the Federal Rules and the interests of justice. *Duran v. Carris*, 238 F.3d 1268, 1270 (10th Cir. 2001). To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible when the pleaded facts permit the reasonable inference that the defendant is liable for the alleged misconduct. *Iqbal*, 556 U.S. at 678.

Rule 8 requires only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). In evaluating a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in the plaintiff's favor. The Federal Rules therefore reflect a strong preference for resolving claims on the merits rather than dismissing them at the pleading stage. *Cayman Exploration Corp. v. United Gas Pipe Line Co.*, 873 F.2d 1357, 1359 (10th Cir. 1989).

## ARGUMENT AND AUTHORITY

### A. Plaintiffs Have Plausibly Alleged Facts Overcoming Qualified Immunity as to the Individual District Defendants.

Qualified immunity protects officials sued in their personal capacities only when their conduct (1) did not violate a constitutional right, or (2) the right was not clearly established at the time of the violation. *Knopf v. Williams*, 884 F.3d 939, 944 (10th Cir. 2018). It applies only when "the record plainly demonstrates no constitutional right has been violated, or that the allegations do not offend clearly established law." *Riggins v. Goodman*, 572 F.3d 1101, 1107 (10th Cir. 2009). A right may be clearly established even without a case involving identical facts if existing precedent "appl[ies] with obvious clarity to the specific conduct in question." *A.B. v. Adams-Arapahoe 28J Sch. Dist.*, 831 F. Supp. 2d 1226, 1240–41 (D. Colo. 2011) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)). Moreover, because qualified immunity is a fact-specific inquiry, resolving it at the motion-to-dismiss stage is disfavored where the complaint plausibly alleges constitutional violations. *Thompson v. Ragland*, 23 F.4th 1252, 1256 (10th Cir. 2022).

1.      **Wicks and Peterson.** Defendants attempt to recast the allegations against Wicks and Peterson as vague "supervisory liability." That misstates both the law and the FAC. Supervisors are liable under § 1983 where they create, implement, or knowingly

maintain policies that cause constitutional injury and act with deliberate indifference to known violations. *Dodds v. Richardson*, 614 F.3d 1185, 1199–1203 (10th Cir. 2010); *Barney v. Pulsipher*, 143 F.3d 1299, 1307 (10th Cir. 1998). The FAC alleges exactly that.

Peterson and Tennyson were repeatedly informed by staff that Rawlings had threatened to hit a disabled student, kicked another student's wheelchair, and expressed hostility toward children with significant disabilities (FAC ¶¶ 177-181). Despite that notice, Peterson allowed Rawlings to remain assigned to the SSN classroom (FAC ¶ 182). The FAC further alleges that Wicks, as final policymaker, was aware of Rawlings' conduct through the District's reporting structure (FAC ¶¶ 183, 422), and that Peterson had responsibility and authority to report, recommend removal, and address serious safety concerns (FAC ¶¶ 67, 78-86, 182, 184). These allegations plausibly establish direct notice and policymaking authority.

The same is true of the toileting abuse. Staff refused to toilet the Students, including C.B., leaving them in soiled clothing (FAC ¶¶ 240–244). C.B.'s parents issued a written warning to Peterson and Tennyson and refused to allow Juba to supervise her due to safety concerns (FAC ¶ 246), and that complaint was escalated to Wicks (FAC ¶¶ 248–249). The FAC further alleges that abuse was widely known, observed, and reported, including through surveillance and multiple complaints that Defendants ignored (FAC ¶¶ 186–190).

Despite this repeated notice, Peterson and Wicks had authority to supervise, remove, and implement safeguards (FAC ¶¶ 67, 78–86, 182–184, 422) but failed to act (FAC ¶¶ 184, 186, 216, 217, 230, 236, 249, 250, 254, 260, 336–338, 342, 370, 373, 418, 422–424, 517, 533, 534, 551). As a result, the abuse continued, including S.R.'s injury

when Rawlings flipped her wheelchair (FAC ¶¶ 256, 259, 263, 264, 273) and ongoing toileting abuse of C.B. (FAC ¶¶ 240–244) and other students suffered harm while under staff supervision (*See* FAC, "Abusive and Discriminatory Practices," Sections B and C).

These allegations establish a direct link between notice, authority, deliberate inaction, and resulting harm—the precise standard required under *Dodds*. Plaintiffs do not rely on titles alone. They allege that Wicks and Peterson knew of ongoing abuse of profoundly disabled students, had the authority to stop it, and chose not to. That is sufficient to state a claim and defeat qualified immunity at this stage.

**2. Rosemond and Juba.** Defendants' argument as to Rosemond and Juba wrongly fragments the complaint and treats each allegation as though it had to stand alone. The FAC alleges a classroom-wide pattern of abuse directed at a tiny group of profoundly disabled, non-verbal students and specifically places Rosemond and Juba within that pattern as the two SPED teachers responsible for the classroom and paraprofessional management. It further alleges specific acts by each.

<u>Substantive Due Process.</u> Defendants' attempt to recast this conduct as "inadequate toileting" does not soften the allegations, it exposes them. The FAC does not describe a lapse in care. It describes the deliberate humiliation and deprivation of disabled, non-verbal students who were entirely dependent on Defendants for their most basic human needs. The FAC alleges that Rosemond and Juba refused to provide toileting assistance to these Students (FAC ¶¶ 221–225, 231–233). In doing so, they subjected the Students to forced public exposure—stripping and changing them in view of others and exposing their genitals to peers and staff (FAC ¶¶ 223, 234, 382, 384). At the same time, the Students were forced to remain in their own waste for hours and endure unsafe and

unsanitary conditions (FAC ¶¶ 226, 228–229, 237–238). This conduct was reported and allowed to continue (FAC ¶¶ 232–235).

The FAC further alleges that Defendants disregarded known and serious medical risks. S.U. could not safely retain urine due to a history of kidney failure (FAC ¶¶ 123–124), Defendants were aware of that condition (FAC ¶¶ 125, 343), and he was nonetheless forced to go an entire school day without voiding (FAC ¶¶ 339–340). The same pattern appears in A.N.'s injury where Defendants ignored known risks and failed to monitor him, resulting in a serious and preventable injury requiring extended medical care (FAC ¶¶ 128–134, 356–358, 360–365).

The FAC expressly alleges that this conduct caused physical abuse and emotional distress and that the resulting harm was highly predictable, plainly obvious, and inevitable (FAC ¶¶ 238, 252, 343, 359).

Taken together, these allegations plausibly describe the knowing denial of basic bodily care, deliberate humiliation, and conscious disregard of serious medical risks. That is arbitrary, abusive, and conscience-shocking conduct sufficient to state a substantive due process violation and defeat qualified immunity at the pleading stage.

Fourth Amendment. Defendants attempt to minimize the Fourth Amendment claim by isolating individual allegations and stripping them of context. When the FAC is read as a whole, as it must be at the pleading stage, it plausibly alleges that Plaintiffs were subjected to unreasonable seizures in violation of clearly established law. Students do not forfeit their Fourth Amendment rights at the schoolhouse gate. *New Jersey v. T.L.O.*, 469 U.S. 325, 333 (1985). In the school context, a restraint constitutes a seizure when it significantly exceeds the restrictions inherent in ordinary school attendance and is not

justified at its inception or reasonable in scope. *Couture v. Bd. of Educ. of Albuquerque Pub. Schs.*, 535 F.3d 1243, 1250–51 (10th Cir. 2008).

The FAC alleges that Plaintiffs were subjected to precisely that type of excessive restraint and confinement. Specifically, the Complaint alleges that students were repeatedly placed in so-called "sensory rooms," which were in reality small, windowless closet-like spaces, where they were isolated alone for extended periods (FAC ¶¶ 209–210). The FAC further alleges that these confinements were not therapeutic interventions, but punitive or convenience-based practices directed at a small group of Students (FAC ¶¶ 207, 211). Accepting those allegations as true, confinement of vulnerable, non-verbal students in such spaces for prolonged periods plainly exceeds the restraints inherent in ordinary school supervision.

The FAC also alleges that Rosemond personally physically restrained C.B. (FAC ¶ 245). Defendants attempt to dismiss this allegation as lacking context. But Rule 8 does not require Plaintiffs, particularly non-verbal students, to plead the minute-by-minute details of a physical restraint that occurred inside a classroom entirely controlled by Defendants (FAC ¶¶ 112, 126, 137, 144). The FAC plausibly alleges that the restraint was not a brief safety intervention but part of a broader abusive pattern.

Taken together, the allegations plausibly establish that Defendants imposed restraints and confinement that significantly exceeded the limitations inherent in compulsory school attendance and were not reasonably related to legitimate educational or safety needs. That is sufficient to plead an unreasonable seizure under *Couture*.

Defendants' personal-participation argument also fails. The FAC alleges that Rosemond and Juba were the SPED teachers responsible for the SSN classroom and the

8

paraprofessionals assigned to the Students, and that they participated in or permitted the practices at issue, including physical restraint and confinement in sensory rooms (FAC ¶¶ 88–92, 170–173, 200, 209–210). At the pleading stage, Plaintiffs are not required to identify which adult closed the door of a particular room on a particular date. Where the complaint plausibly alleges that the classroom teachers responsible for supervising these students allowed or <u>participated</u> in the unconstitutional practices, personal participation is adequately pleaded.

Equal Protection. Defendants' comparator argument applies an unduly rigid pleading standard. To state a disability-based equal protection claim, Plaintiffs must plausibly allege that they were treated differently from similarly situated students and that the differential treatment lacked a rational basis. *Brown v. Montoya*, 662 F.3d 1152, 1172-73 (10th Cir. 2011). The FAC does so; it alleges that Plaintiffs, non-verbal students with significant support needs, were treated differently from other students in the school's SPED program. (FAC ¶¶ 196–203, 205–208). At the pleading stage, Plaintiffs are not required to identify each comparator student by name or diagnosis before discovery.

Defendants' reliance on *Ebonie S. v. Pueblo Sch. Dist. 60*, 695 F.3d 1051 (10th Cir. 2012) within this context is misplaced. That case does not require a perfectly matched comparator at the motion-to-dismiss stage; it simply requires a plausible allegation of differential treatment among similarly situated students. The FAC plausibly alleges that Defendants singled out Plaintiffs for inferior treatment because they were non-verbal and profoundly disabled (FAC ¶¶ 198–199, 207). Other SPED students were not subjected to routine toileting denial, prolonged isolation, or forced exposure, physical and emotional abuse, or the other derogatory treatment described in detail herein and within the FAC.

9

Those allegations are sufficient to state an equal protection claim and defeat qualified immunity at this stage.

Procedural due process. Defendants' reliance on *Goss v. Lopez*, 419 U.S. 565 (1975) is misdirected. *Goss* confirms that students have a protected interest in public education and are entitled to due process when the State meaningfully interferes with that interest. It does not limit due process protections to formal suspensions alone. *See* 419 U.S. at 574.

The FAC plausibly alleges such interference here. Plaintiffs were repeatedly removed from instructional programming, confined in isolation rooms for extended periods, and excluded from core components of their special-education services. (FAC ¶¶ 200, 203, 209–210). These are not isolated or de minimis interruptions, but recurring deprivations that substantially interfered with access to educational benefits.

The FAC further alleges that these deprivations occurred without notice, parental involvement, or any procedural safeguards. At the pleading stage, those allegations are sufficient to state a procedural due process claim.

3. **Clearly Established Law.** The law has long been clearly established that school officials may not subject students to abusive physical treatment, unreasonable restraint, unreasonable seizures, degrading conditions, or other conscience-shocking conduct, and may not ignore known constitutional violations. *See Garcia v. Miera*, 817 F.2d 650, 655–56 (10th Cir. 1987); *Couture v. Bd. of Educ.*, 535 F.3d 1243 (10th Cir. 2008); *Ebonie S.*, 695 F.3d 1051; *Milonas v. Williams*, 691 F.2d 931, 941–43 (10th Cir. 1982); *Gerks v. Deathe*, 832 F. Supp. 1450, 1454 (W.D. Okla. 1993); *Nicol v. Auburn-Washburn USD 437*, 231 F. Supp. 2d 1092, 1100–02, 1106 (D. Kan. 2002). These

10

principles gave officials fair warning well before the events alleged here. *See Hope v. Pelzer*, 536 U.S. 730, 741 (2002). Defendants' demand for a case involving identical facts misstates the law. But clearly established law does not require a prior case with the same classroom, students, or method of abuse. *Id.*; *A.B.,* 831 F. Supp. 2d at 1240–41. And the conduct alleged falls squarely within these established prohibitions (*See e.g.,* FAC ¶¶ 182–184, 209–211, 223–228, 230, 231–234, 235–236, 238, 245, 255–256, 262–264, 284, 382, 390.) Accepting these allegations as true, no reasonable school official could believe that such treatment of profoundly disabled students was constitutionally permissible. At a minimum, the FAC plausibly alleges violations of clearly established substantive due process and Fourth Amendment rights.

**4. Defendants Seek an Evidentiary Pleading Standard the Rules Do Not Impose.** Ultimately, Defendants ask the Court to hold Plaintiffs to a level of factual specificity that would be difficult even in an ordinary case and nearly impossible in this one before discovery. These Plaintiffs are non-verbal. The key witnesses are school employees. The relevant internal communications, incident records, surveillance context, staffing decisions, and reporting channels are overwhelmingly within Defendants' control. The FAC nevertheless pleads a detailed factual narrative identifying the students, their disabilities, the responsible staff, the abusive practices, specific notice allegations, and specific injuries. That is enough to overcome qualified immunity. To require more before discovery would effectively insulate institutional misconduct whenever the victims are unable to speak for themselves. For those reasons, the Court should deny the motion to dismiss on qualified-immunity grounds.

**B. S.R.'s Claims Under 42 U.S.C. §§ 1981 and 1986 Are Plausibly Alleged**

11

**1.** **§ 1981.** Defendants' argument rests on an overreading of *Thompson R2-J Sch. Dist. v. Luke P.*, 540 F.3d 1143 (10th Cir. 2008), and misapplies the contractual requirement under § 1981. To be sure, § 1981 requires "an impaired contractual relationship" under which the plaintiff has rights. *Muller v. Islands at Rio Rancho Homeowners Ass'n*, 564 F. App'x 411, 414 (10th Cir. 2014) (quoting *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 477 (2006)). But nothing in § 1981 requires a traditional, common-law contract. Rather, the statute protects the right to enjoy the benefits of a legally enforceable relationship free from racial discrimination.

Defendants' reliance on *Luke P.* is misguided. That case addressed whether an IEP should be treated as a contract for purposes of imposing outcome-based liability under the IDEA and rejected that framing to avoid converting the statute into a guarantee of results. 540 F.3d at 1151. It did not consider whether an IEP may constitute a qualifying contractual relationship under § 1981, nor did it address discrimination claims. The same is true of *Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 820 (9th Cir. 2007), which arose in the IDEA context.

Here, S.R. does not seek to enforce educational outcomes. She alleges that Defendants interfered with her right to receive the services and benefits guaranteed by her IEP on equal terms, free from racial discrimination. The FAC alleges that S.R.'s IEP required specific, individualized services that Defendants were obligated to provide (FAC ¶¶ 107, 110–111), and that Defendants knowingly allowed racially discriminatory abuse by a staff member responsible for implementing those services (FAC ¶¶ 7, 179–185). The FAC also alleges explicit racial animus, including the use of racial slurs and dehumanizing language directed at S.R.. (FAC ¶ 7). At the pleading stage, those allegations are sufficient

12

to establish an impaired, legally protected relationship under which S.R. had enforceable rights. See *Domino's Pizza*, 546 U.S. at 477. Defendants cannot evade § 1981 liability by recharacterizing the source of those rights where the Complaint plausibly alleges intentional racial interference with S.R.'s access to the benefits of her educational program.

2. **§ 1986.** Defendants argue the § 1986 claim fails because Plaintiffs do not plausibly allege a § 1985 conspiracy and because the claim is time-barred. Neither argument supports dismissal. First, the FAC plausibly alleges a § 1985 conspiracy. A conspiracy may be shown through circumstantial evidence, including coordinated inaction, shared knowledge, and a pattern of conduct reflecting a common objective. *Crabtree v. Muchmore*, 904 F.2d 1475, 1481 (10th. Cir. 1990) emphasizing that conspiracy allegations must provide a factual basis to support the existence of agreement and concerted action, which can be inferred from the circumstances).

Additionally, the conspiracy must be motivated by "racial, or perhaps otherwise class-based, invidiously discriminatory animus." In *Fisher v. Shamburg,* 624 F.2d 156, 158-59 (10th Cir. 1980), the court acknowledged that racially motivated conduct, coupled with evidence of a conspiracy, satisfies the discriminatory animus requirement. The FAC clearly outlines racially motivated conduct against S.R. Plaintiffs allege that multiple school officials were aware of ongoing race-based mistreatment of S.R. within the SSN classroom, including differential treatment, exclusion from programming, and degrading conditions, yet permitted those practices to continue over time. (FAC ¶¶ 7, 200, 202-204, 209–210). The FAC further alleges that these officials had supervisory authority over the classroom and the ability to intervene but failed to do so despite repeated notice (FAC ¶ ¶

67, 78-86, 182, 184).

At the pleading stage, these allegations support a reasonable inference of a tacit agreement to allow discriminatory practices to persist. Direct evidence of an express agreement is not required. See *Wesley v. Don Stein Buick, Inc.*, 996 F. Supp. 1299, 1307 (D. Kans. 1998) (recognizing that direct evidence of a conspiracy is rarely available, and circumstantial evidence, such as coordinated inaction or a pattern of conduct, can suffice to infer a "meeting of the minds" or agreement among the defendants).

Second, the statute-of-limitations argument fails. While § 1986 carries a one-year limitations period, the FAC alleges a continuing pattern of discriminatory conduct that extended through S.R.'s enrollment and into May 2025. Where a plaintiff alleges a series of related acts forming a continuing violation, the claim is timely so long as at least one act falls within the limitations period. See *Davidson v. Am. Online, Inc.*, 337 F.3d 1179, 1183-84 (10th Cir. 2003); see also *Bruno v. Western Elec. Co.*, 829 F.2d 957, 960-61 (10th Cir. 1987). Courts consider subject matter, frequency, and permanence. *See Martin v. Nannie & Newborns*, 3 F.3d 1410, 1415 (10th Cir. 1993). Plaintiffs have plausibly alleged such a pattern here.

### C. Official-Capacity Should Remain.

While official-capacity claims are generally treated as claims against the entity, dismissal is not required at the pleading stage, particularly where Plaintiffs' *Monell* theory depends on the conduct of specific officials with policymaking authority. Plaintiffs allege that Wicks, Peterson, and Tennyson oversaw the SSN program, received repeated notice of abusive practices, and allowed those practices to continue. Those allegations are central to establishing that the District, through its policymakers, maintained

unconstitutional practices.

Dismissal would not promote efficiency. It would create additional burden. Removing defendants would force Plaintiffs to pursue discovery from the same officials as nonparties, increase motion practice, and invite an empty-chair defense by allowing Defendants to shift blame to decisionmakers who are no longer in the case.

Defendants also improperly collapse distinct theories. *Monell* liability runs against the District, but it is proven through the acts, authority, and deliberate indifference of officials acting on its behalf. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694-95 (1978). At this stage, where policymaking authority and ratification are factual questions, the official-capacity claims help frame, rather than duplicate, the municipal liability theory.

Dismissal would not streamline the case. It would obscure the basis for District liability. The official-capacity claims should remain.

## CONCLUSION

Plaintiffs have alleged that Defendants knowingly allowed the abuse of profoundly disabled, non-verbal students who could not speak, report, or protect themselves. Those allegations state clear violations of constitutional rights long recognized by binding precedent. The Motion should be denied in its entirety.

**WHEREFORE**, Plaintiffs respectfully request that this Court deny Defendants' Amended Partial Motion to Dismiss and grant such other and further relief as the Court deems just and proper.

Respectfully submitted,

**BURG SIMPSON
ELDREDGE HERSH & JARDINE, P.C.**

*/s/ Jessica L. Breuer*

15

Jessica L. Breuer, Esq.
Halli E. Berrebbi, Esq.
40 Inverness Drive East
Englewood, CO 80112
Phone: (303) 792-5595
Fax: (303) 708-0527
jbreuer@burgsimpson.com
hberrebbi@burgsimpson.com
*Attorneys for Plaintiffs*

# CERTIFICATE OF SERVICE

This is to certify that on March 18, 2026 a true and correct copy of the foregoing was filed with the U.S. District Court of Colorado CM/ECF System which will notify the following:

CAPLAN AND EARNEST LLC
Gwyneth Whalen
Elliott V. Hood
Caroline G. Gecker
3107 Iris Ave, Ste 100
Boulder, CO 80301
303-443-8010
gwhalen@celaw.com
ehood@celaw.com
cgecker@celaw.com
*Attorneys for the School District Defendants*

Lyons Gaddis, PC
Catherine A. Tallerico
PO Box 978
515 Kimbark St.
Longmont, CO 80502
303-776-9900
ctallerico@lyonsgaddis.com
*Attorney for Defendant Sylvia Rawling*

SGR, LLC
Courtney B. Kramer
Bennett M. Harrell, Esq.
Eric M. Ziporin, Esq.
3900 East Mexico Ave., Suite 700
Denver, CO 80210
303-320-0509
ckramer@sgrllc.com
bharrell@sgrllc.com
eziporin@sgrllc.com
*Attorney for Defendant Anne-Marie Tennyson*

/s/ *Halli Berrebbi*
Associate Attorney