IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:25-cv-00315-CNS-SBP

MAYO THOMPSON, individually, and on behalf of S.R., a minor;
CANDY GRANGER, individually, and on behalf of S.U., a minor;
HEATHER NAUSED, individually, and on behalf of A.N., a minor;
ERIC BENDER and AMY BENDER, individually, and as husband and wife, on behalf of
C.B., a minor,

Plaintiffs,

 v.

STEAMBOAT SPRINGS SCHOOL DISTRICT RE-2, a municipal entity;
CELINE WICKS, in her individual and official capacities;
ANNE-MARIE TENNYSON, in her individual and official capacities;
RON PETERSON, in his individual and official capacities;
SYLVIA RAWLINGS, in her individual and official capacities;
CHUCK ROSEMOND, in his individual and official capacities; and
DAN JUBA, in his individual and official capacities,

Defendants.

---

**SCHOOL DISTRICT DEFENDANTS' REPLY IN SUPPORT OF AMENDED PARTIAL
MOTION TO DISMISS (ECF 78)**

---

**I.    The Individual School District Defendants are entitled to qualified immunity.**

**A.    Plaintiffs have the burden to plead facts that overcome qualified
immunity.**

The Response attempts to excuse Plaintiffs' failure to plead sufficient facts to
overcome the Individual School District Defendants' qualified immunity by pointing to their
inability to access information prior to discovery, including that the students are non-
verbal and the "key witnesses" are school employees.

But Rule 12(b)(6) dismissals are not based on the availability of evidence, but on the sufficiency of the pleadings. Here, Plaintiffs' claims fail on their face because they rely on conclusory and generalized allegations that do not satisfy the pleading standards required to overcome qualified immunity.

The Supreme Court has "repeatedly … stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)). To overcome qualified immunity at the pleading stage, Plaintiffs must allege specific, non-conclusory facts sufficient to show that Defendants are not entitled to immunity. *Currier v. Doran*, 242 F.3d 905, 912 (10th Cir. 2001). Under *Twombly* and *Iqbal*, Plaintiffs must plead factual content—not general narratives or collective allegations—sufficient to state a plausible claim.

Plaintiffs cannot avoid that burden by pointing to the difficulty of obtaining evidence prior to discovery. Nor does Plaintiffs' contention that they have provided a "detailed factual narrative" cure these deficiencies. (ECF 84, p. 11.) The issue is not the volume of allegations, but whether those allegations plausibly allege  personal participation, deliberate indifference, and a violation of clearly established law as to each Defendant.

Finally, Plaintiffs' policy argument—that enforcing the pleading standard would "insulate institutional misconduct" (*id.*)—is contrary to qualified immunity doctrine. Government officials are entitled to immunity from suit unless Plaintiffs meet their burden at the outset. *Pearson*, 555 U.S. 223 at 231. Allowing claims to proceed based on conclusory or collective allegations would defeat that purpose.

### B.    Defendants Wicks and Peterson are entitled to qualified immunity.

Plaintiffs' Response does not remedy the fundamental deficiency in their claims against Superintendent Wicks and Mr. Peterson: the absence of well-pleaded facts establishing personal participation in any alleged constitutional violation. Like the FAC, the Response relies on conclusory allegations of "notice," speculating that Superintendent Wicks was aware of alleged misconduct through the District's "reporting structure." (ECF 84, p. 5.) Allegations that Superintendent Wicks had actual knowledge of constitutional harms based on purported chain-of-command are entirely speculative. And allegations that Superintendent Wicks could have—or even should have—known of alleged constitutional violations by subordinates are insufficient to overcome qualified immunity. *See Woodward v. City of Worland*, 977 F.2d 1392, 1399 (10th Cir. 1992) ("[M]erely asserting that the defendant 'should have known' of unconstitutional behavior on behalf of his or her subordinates, without establishing an intentional, conscious, and deliberate act by the defendant participating in, or knowingly acquiescing in, the unconstitutional behavior, fails to allege the requisite scienter for § 1983 liability.").

The Response does not identify any instance when Superintendent Wicks or Mr. Peterson received specific information demonstrating a known and substantial risk of constitutional harm. The single March 24, 2023 email regarding Mr. Juba—and Plaintiffs' generalized allegations that Mr. Peterson was "repeatedly informed" of concerns about Ms. Rawlings (ECF 84, p. 5)—does not plausibly establish notice of conduct rising to the level of a constitutional violation.

Plaintiffs    also    attempt    to    satisfy    supervisory    liability    by    asserting    that

3

Superintendent Wicks and Mr. Peterson had authority to act and failed to do so. But the Response does not identify any specific action either Defendant took—or failed to take— in response to concrete information that caused a constitutional injury. Nor does it allege a causal connection between any purported inaction and any specific harm to a Plaintiff.

Similarly, Plaintiffs assert that Superintendent Wicks and Mr. Peterson "maintained" or "permitted" policies that led to the alleged violations, but do not identify any specific policy, what it required, or what either Defendant did to create, implement, or maintain it. Without factual allegations identifying a concrete policy and each Defendant's role in it, Plaintiffs fail to state a claim for supervisory liability.

**B.      Defendants Rosemond and Juba are entitled to qualified immunity.**

Substantive due process. Plaintiffs attempt to elevate allegations of inadequate care—specifically, (1) inadequate toileting practices and (2) lack of supervision that allegedly led to A.N.'s arm being caught in his wheelchair  (ECF 71 ¶¶ 139-140, 360-363)—into constitutional violations by recharacterizing them as "deliberate humiliation" and "deprivation." (ECF 84, p. 6.) Plaintiffs' inflammatory rhetoric is not a substitute for well-pleaded facts. The Tenth Circuit has made clear that in this context, substantive due process liability requires conduct that amounts to "a brutal and inhumane abuse of official power." *Muskrat v. Deer Creek Pub. Schs.*, 715 F.3d 775, 787 (10th Cir. 2013.) Stripped of embellishment, the FAC's well-pleaded facts do not approach this extremely high bar. At most, the well-pleaded facts sound in negligence, not in the type of arbitrary and egregious abuse required for a substantive due process claim. *See Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir. 2006) ("It is well settled that negligence is not sufficient to

shock the conscience.").

Fourth Amendment. The FAC does not allege facts plausibly alleging an unreasonable seizure or personal participation by Messrs. Rosemond or Juba. The allegations regarding "sensory rooms" are conclusory and based "upon information and belief," without facts as to when the alleged conduct occurred, how often, under what circumstances, or who was involved.

Nor do Plaintiffs allege that Messrs. Rosemond or Juba personally imposed or directed any alleged restraint (aside from the single allegation that Mr. Rosemond "held back" C.B.'s arms (ECF 71 ¶ 245.)). Instead, Plaintiffs contend they are "not required to identify which adult closed the door of a particular room on a particular date." (ECF 84, p. 9.) This assertion misstates the law governing qualified immunity. Once qualified immunity is raised, Plaintiffs must plausibly allege that each Defendant, through his own individual actions, violated clearly established law. *See, e.g., Brown v. Montoya*, 662 F.3d 1152, 1164-65 (10th Cir. 2011) (holding that government official was entitled to qualified immunity where the plaintiff failed to specifically allege the actions of that official and instead relied on collective allegations against "Defendants"). Plaintiffs cannot satisfy that burden through generalized allegations that "teachers allowed or participated" in alleged constitutional violations. *Id.; Ashcroft v. Iqbal,* 556 U.S. 662, 676 (2009). ("Because vicarious liability is inapplicable to ... § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.") (emphasis added).

The FAC does not allege that Messrs. Rosemond or Juba personally placed any

student in a sensory room or otherwise violated any Plaintiffs' Fourth Amendment rights. Absent such factual allegations, Plaintiffs fail to plausibly plead personal participation by Rosemond and Juba and cannot overcome their entitlements to qualified immunity.

Equal protection. Plaintiffs' equal protection claim fails because the FAC does not plausibly allege differential treatment of similarly situated students. While Plaintiffs argue they need not identify specific comparators at the pleading stage, they must still allege facts showing that the comparators are similarly situated in all material respects. *Brown*, 662 F.3d at 1172–73.

The FAC does not do so. Instead, Plaintiffs compare non-verbal students with significant support needs to other SPED students generally—i.e., students with materially different abilities, communication skills, and care needs. (ECF 71 ¶ 196.) Such students are not similarly situated as a matter of law. *See Ebonie S. ex rel. Mary S. v. Pueblo Sch. Dist. 60*, 819 F. Supp. 2d 1179, 1189 (D. Colo. 2011) ("To be "similarly situated" the individuals 'must be prima facie identical in all relevant respects or directly comparable in all material respects; although this is not a precise formula, it is nonetheless clear that similarly situated individuals must be very similar indeed.'") (quoting *U.S. v. Moore,* 543 F.3d 891 (7th Cir. 2008)).  The FAC does not identify any non-plaintiff students with comparable disabilities and support needs who were treated more favorably and accordingly fails to state an equal protection claim.

Procedural Due Process. Because Plaintiffs do not allege that Messrs. Rosemond or Juba placed them in sensory rooms, their procedural due process claim against these Defendants is limited to their alleged exclusion from experiential field trips. (ECF ¶¶ 203–

6

204.) Plaintiffs' attempt to characterize this alleged exclusion as "substantial interference" is conclusory and unsupported by specific facts showing a meaningful deprivation of access to education. *See Couture v. Bd. of Educ. of Albuquerque Pub. Schs.*, 535 F.3d 1243, 1257 (10th Cir. 2008). This is particularly true in the context of special education, where individualized instruction and modified programming are inherent in providing services to students with significant support needs. Accordingly, Plaintiffs fail to state a procedural due process claim against Messrs.  Rosemond or Juba.

## II.     S.R.'s Section 1981 and Section 1986 claims fail.

### A.     Section 1981

Plaintiffs' assertion that Section 1981 does not require a "traditional, common-law contract," but instead protects a "legally enforceable relationship," is unclear and unsupported. (ECF 84, p. 12.) Section 1981 requires a contractual relationship under which the plaintiff has enforceable rights, as either a party to the contract or a third-party beneficiary. *See Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 477 (2006).

S.R. does not, and cannot, identify a single case in which a court has treated an IEP as a contract between a student and a school district. S.R. attempts to distinguish *Thompson R2-J Sch. Dist. v. Luke P.*, 540 F.3d 1143 (10th Cir. 2008), and *Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 820 (9th Cir. 2007), on the grounds that those cases arose "in the IDEA context," rather than in a case involving Section 1981 or race discrimination. (ECF 84, p. 12.) The fact that the *Luke P.* and *Van Duyn* cases did not involve a Section 1981 claim does not undermine the courts' core reasoning: treating an IEP as a contract would improperly transform statutory educational obligations into

contractual rights. *See Van Duyn*, 502 F.3d at 820 (rejecting argument that an IEP should be interpreted under contract law and noting that courts "have rejected efforts to frame challenges to IEPs as breach-of-contract claims" and that they "could not locate" any example of a court treating an IEP as a contract). Because S.R. fails to plausibly allege a contractual relationship, her Section 1981 claim fails as a matter of law.

**B.     Section 1986**

S.R.'s Section 1986 claim is time-barred. S.R.'s continuing violation theory fails. Her argument that "the FAC alleges a continuing pattern of discriminatory conduct that extended through S.R.'s enrollment and into May 2025" is not supported by the FAC. (ECF 84, p. 14.) Rather, S.R,'s race discrimination allegations are premised solely on the conduct of Ms. Rawlings, who resigned from the District on February 3, 2023. (ECF 71 ¶ 298.) The last possible instance of discriminatory conduct by Ms. Rawlings occurred on February 3, 2023. Plaintiff did not file this lawsuit until January 29, 2025—nearly two years later and well outside the one-year statute of limitations for Section 1986 claims. (ECF 1.)

S.R.'s Section 1986 claim also fails because the FAC does not plausibly allege an underlying Section 1985 conspiracy. To state a Section 1985 claim, S.R. must allege specific facts showing an agreement and concerted action among Defendants. *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993). The FAC alleges, at most, that various officials were aware of alleged misconduct and failed to act. Allegations of knowledge and inaction do not plausibly establish a meeting of the minds or an agreement. *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1126 (10th Cir. 1994). Absent a viable Section 1985 claim, S.R.'s Section 1986 claim necessarily fails.

8

**III.    The official capacity claims must be dismissed.**

Plaintiff's argument against dismissal of the official capacity claims reveals a fundamental misunderstanding of Section 1983's liability framework. Official capacity claims are not "generally treated as claims against the entity" (ECF 84, p. 15)—they are, as a matter of law, duplicative of claims against the governmental entity itself. *Kentucky v. Graham,* 473 U.S. 159, 165 (1985).

Where, as here, the District is already named as a defendant, courts routinely dismiss official capacity claims as redundant and unnecessary. *See, e.g., Doe v. Douglas County Sch. Dist.*, 775 F.Supp. 1414, 1416 (D. Colo. 1991) (where plaintiff brought § 1983 claim against school district and against school psychologist in his official capacity, court dismissed redundant official capacity claim as matter of judicial economy and efficiency); *Wilkins v. Palomino*, 2023 WL 3853464, at *2 n.3 (D. Colo. Apr. 13, 2023) (finding an official capacity claim against a prison psychiatrist to be duplicative of official capacity claims brought against other prison officials), *report and recommendation adopted*, 2023 WL 3848309 (D. Colo. June 6, 2023); *Frey v. Reams*, 2018 WL 582400, at *6 (D. Colo. Jan. 29, 2018) (finding a suit against a sheriff's employee in her official capacity to be duplicative of an official capacity suit against the sheriff; *Collins v. Citty*, No. CIV-09-756-W, 2010 WL 11613673, at *2 (W.D. Okla. June 22, 2010) (dismissing official capacity suit against sheriff's lieutenant as redundant of official capacity suit against sheriff).

Plaintiffs' reliance on *Monell v. Department of Social Services,* 436 U.S. 658, 694-95 (1978) does not bolster their argument. Plaintiffs can pursue discovery from the

Individual District Defendants without maintaining redundant claims against them in their official capacities. Rather than creating an "additional burden," dismissing duplicative claims streamlines the case and promotes judicial economy and efficiency. *See Doe v. Douglas County Sch. Dist.*, 775 F.Supp. at 1416.

Plaintiffs offer no legitimate justification for maintaining those duplicative claims. To the extent Plaintiffs insist on preserving them, they serve only to complicate the pleadings and impose needless burdens on the Individual District Defendants—including the unwarranted reputational harm associated with being named in the caption of claims—without advancing any distinct theory of liability.

**CONCLUSION**

The Court should: dismiss Claims 3, 4, 5, and 6 against Defendants Wicks, Peterson, Rosemond, and Juba in their individual and official capacities, dismiss Claims 8 and 9 against all School District Defendants, and grant any other and further relief as the Court deems appropriate.

Respectfully submitted this 1st day of April 2026.

*s/ Caroline G. Gecker*
Gwyneth Whalen
Elliott V. Hood
Caroline G. Gecker
CAPLAN AND EARNEST LLC
3107 Iris Ave, Ste 100
Boulder, CO 80301
303-443-8010
gwhalen@celaw.com
ehood@celaw.com
cgecker@celaw.com

# CERTIFICATE OF SERVICE

This is to certify that on April 1, 2026, a true and correct copy of the foregoing was filed with the U.S. District Court of Colorado CM/ECF System which will notify the following:

Jessica L. Breuer, Esq.
Stephen Burg, Esq.
Halli E. Berrebbi, Esq.
Burg Simpson Eldredge Hersh & Jardine, P.C.
jbreuer@burgsimpson.com; sburg@burgsimpson.com
hberrebbi@burgsimpson.com
*Attorneys for Plaintiffs*

Courtney B. Kramer, Esq.
Bennett M. Harrell, Esq.
Eric M. Ziporin, Esq.
SGR, LLC
ckramer@sgrllc.com; bharrell@sgrllc.com; eziporin@sgrllc.com
*Attorneys for Defendant Anne-Marie Tennyson*

Catherine A. Tallerico, Esq.
Rachel Amspoker, Esq.
Lyons Gaddis, P.C.
ctallerico@lyonsgaddis.com; ramspoker@lyonsgaddis.com
*Attorneys for Defendant Sylvia Rawlings*

s/*Shelley McKinstry*
Shelley McKinstry, Paralegal