IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:25-cv-00315-CNS-SBP

MAYO THOMPSON, individually, and on behalf of S.R., a minor;
CANDY GRANGER, individually, and on behalf of S.U., a minor;
HEATHRE NAUSED, individually, and on behalf of A.N., a minor;
ERIC BENDER and AMY BENDER, individually, and on behalf of C.B., a minor;

Plaintiffs,

v.

STEAMBOAT SPRINGS SCHOOL DISTRICT RE-2, a municipal entity;
CELINE WICKS, in her individual and official capacities;
ANNE-MARIE TENNYSON, in her individual and official capacities;
RON PETERSON, in his individual and official capacities;
SYLVIA RAWLINGS, in her individual and official capacities;
CHUCK ROSEMOND, in his individual and official capacities; and
DAN JUBA, in his individual and official capacities;

Defendant.

---

**ORDER**

---

Before the Court are three dismissal motions filed by Defendants. *See, e.g.,* ECF No. 73. For the following reasons, the Court GRANTS IN PART and DENIES IN PART Defendant Sylvia Rawlings's Motion to Dismiss Plaintiffs' First Amended Complaint and Jury Demand. ECF No. 73. It GRANTS the School District Defendants' Amended Partial Motion to Dismiss Plaintiffs' First Amended Complaint. ECF No. 78.[1] And the Court

[1] As explained in this motion, the School District Defendants include Defendants Steamboat Springs School District RE-2, Dr. Celine Wicks, Ron Peterson, Chuck Rosemond, and Dan Juba. ECF No. 78 at 1. In the

GRANTS Defendant Tennyson's Motion to Dismiss Pursuant to Fed. R. Civ. P. 8(a)(2) and 12(b)(6). ECF No. 79. In doing so, the Court presumes familiarity with this case's factual and procedural background, including the allegations set forth in Plaintiffs' First Amended Complaint (the operative complaint), and the legal standards governing the Court's analysis. *See, e.g.,* Fed. R. Civ. P. 12(b)(6); *See, e.g., Wilson v. Stoltenberg*, 182 F.4th 903, 910–11 (10th Cir. 2026) (explaining that dismissal motion based on qualified immunity imposes on the plaintiff the burden to show that "a constitutional violation occurred" and that "the constitutional right was clearly established at the time of the alleged violation" (citation modified)).

## I. ANALYSIS

The Court considers Defendants' dismissal motions in turn.

### A. Defendant Rawlings's Motion to Dismiss

Defendant Rawlings moves to dismiss Plaintiffs' claims against her because "she is entitled to qualified immunity for the individual capacity claims, and the official capacity claims are duplicative of claims against the District." ECF No. 73 at 3. Defendant Rawlings also moves to dismiss Plaintiffs' claim under 42 U.S.C. § 1981 because no contract existed that can sustain such a claim. *See* ECF No. 73 at 12. The Court agrees with Defendant Rawlings as to each argument, except for her *equal protection* argument. As explained below, Plaintiffs' *equal protection* claim against Defendant Rawlings survives dismissal.

same motion, Defendants define the Individual District Defendants as Defendants Wicks, Peterson, Rosemond, and Juba.

### 1. Qualified Immunity

As Defendant Rawlings observes, her *qualified immunity* assertion places the burden on Plaintiffs to plead a clearly established constitutional violation. *See, e.g., Wilson*, 182 F.4th at 910–11; ECF No. 73 at 5. The Court has discretion to first consider whether Plaintiffs have met their *clearly established* burden as to their claims. *See, e.g., A.M. v. Holmes*, 830 F.3d 1123, 1135 (10th Cir. 2016). Explained below, they have not.

Where a defendant asserts a *qualified immunity* defense, this places squarely on a plaintiff the burden "of citing to [a court] what he thinks constitutes clearly established law." *Thomas v. Durastanti*, 607 F.3d 655, 669 (10th Cir. 2010) (citation modified). This burden is not light. To meet it, a plaintiff "must articulate the clearly established constitutional right with specificity," *Derda v. City of Brighton, Colo.*, 53 F.3d 1162, 1164 (10th Cir. 1995) (citation modified), because "[i]t is insufficient simply to identify in the abstract a clearly established right and allege that the defendant has violated it," *id.* (citation modified).[2]

***Fourth Amendment.*** In challenging Defendant Rawlings's *qualified immunity* assertion as to Plaintiffs' Fourth Amendment claim, which includes the argument that there was no clearly established law at the time of the alleged constitutional violation, *see* ECF No. 73 at 7, Plaintiffs argue that their constitutional rights under the Fourth Amendment were clearly established because "[i]t has long been settled that students retain Fourth Amendment protections at school and that unjustified, excessive physical

[2] Reading Defendant Rawlings's dismissal motion in its entirety, she has "adequately present[ed] the qualified-immunity defense." *Berryman v. Niceta*, 143 F.4th 1134, 1140 (10th Cir. 2025) (citation modified).

restraint violates these protections," ECF No. 85 at 7; *see also id.* ("The question is whether the [operative complaint] plausibly alleges that the restraint here was excessive, punitive, and unjustified."). In support of this proposition, Plaintiffs cite only *New Jersey v. T.L.O.*, 469 U.S. 325, 342 (1985), and *Hope v. Pelzer*, 536 U.S. 730, 740–41 (2002). But Plaintiffs offer no explanation as to how these cases clearly establish with the requisite specificity that Defendant Rawlings's conduct "violated their [constitutional] rights." *Est. of Ward by & through Stamp v. Lucero*, 178 F.4th 604, 614 (10th Cir. 2026) (citation modified). Instead, in arguing that cases clearly establish their right to be free from "unjustified, excessive physical restraint," ECF No. 85 at 7, Plaintiffs fail to "articulate the clearly established constitutional right *with specificity*." *Derda*, 53 F.3d at 1164 (citation modified). The right they identify—*being free from unjustified and excessive force*—only "identif[ies] in the abstract a clearly established right," *id.* (citation modified).

Stated simply, Plaintiffs' citations to *T.L.O.* and *Hope*, without more, do not explain why Defendant Rawlings's allegedly unlawful conduct was "obvious in light of existing law." ECF No. 85 at 7. And to the extent that Plaintiffs cite *Couture v. Bd. of Educ.*, 535 F.3d 1243, 1250–51, 1253 (10th Cir. 2008), they do so in a string cite—"see also"—without explaining how the facts of *Couture* clearly establish any right in this case, *see* ECF No. 85 at 7. This is not enough for Plaintiffs to meet their *clearly established* burden. *See, e.g., Est. of B.I.C. v. Gillen*, 761 F.3d 1099, 1106 (10th Cir. 2014) ("The Supreme Court has 'repeatedly told courts not to define clearly established law at a high level of generality since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.' Thus, a general statement of law . .

. is not sufficient to show that the law was clearly established." (quoting *Plumhoff v. Rickard*, 572 U.S. 765, 779 (2014)). Accordingly, Plaintiffs have failed to meet their *clearly established* burden, and Defendant Rawlings is entitled to qualified immunity as to Plaintiffs' Fourth Amendment claim. *See, e.g., Moses v. Lamb*, No. 20–cv–01603–MEH, 2020 WL 6487419, at *6 (D. Colo. Nov. 4, 2020) (observing that it is plaintiffs' "burden to cite . . . cases establishing the specific, clearly established law" and granting qualified immunity "for lack of clearly established law").[3]

***Substantive Due Process.*** Plaintiffs err in the same way as to their substantive due process claim. Defendant Rawlings argues that there is no clearly established law as to this claim and the alleged misconduct underlying it. *See* ECF No. 73 at 9. In arguing otherwise, Plaintiffs cite several Tenth Circuit cases in support of the proposition that "the law was clearly established [that] school officials violate substantive due process when they use excessive, unjustified force against students or subject them to abusive conditions," ECF No. 85 at 9, they fail to explain *how* these cases clearly establish such a right, *see* ECF No. 88 at 4 (arguing in reply that Plaintiffs identified "no materially similar authority"). Moreover, even accepting this right to be free from "excessive, unjustified force" as the right violated by Defendant Rawlings's alleged misconduct, Plaintiffs likewise

[3] The Court notes that elsewhere in their response brief, Plaintiffs argue that Defendant Rawlings's alleged guilty plea to criminal charges "underscores" that she violated Plaintiffs' constitutional rights because this allegation shows that "no reasonable school employee could believe it was lawful to violently seize and flip a wheelchair-bound, non-verbal student." ECF No. 85 at 7. This characterization of Defendant Rawlings's conduct is much closer to the specificity that *qualified immunity* demands. But this argument fails to move the needle, not only because, as Plaintiffs acknowledge, a guilty plea is "not the source of [a] constitutional rule," *id.*, but also because Plaintiffs offer *no* case citations in support of the notion that it would be obvious that this conduct is unlawful. *Cf. Moses*, 2020 WL 6487419, at *6.

define this right too generally. *See, e.g., B.I.C.*, 761 F.3d at 1106; *Derda*, 53 F.3d at 1164; *Rojas*, 727 F.3d at 1003–04 (concluding plaintiff failed to meet *clearly established* burden where plaintiff "cursorily argued" that certain rights were clearly established and where "[a]bsent from [plaintiffs's] argument [was] any discussion of whether the infringed right at issue was clearly established at the time of the allegedly unlawful activity" (citation modified)). To the extent that Plaintiffs appear to rely on two district court cases from the Western District of Oklahoma and the District of Kansas, "a district court decision will not ordinarily 'clearly establish' the law even of its own circuit." *B.I.C.*, 761 F.3d at 1106 (citation modified).[4]

***Procedural Due Process.*** As for their procedural due process claim, Plaintiffs argue only that they "are not required to identify the precise contours of the process that was denied, only to plausibly allege that deprivations occurred without constitutionally adequate process." ECF No. 85 at 10. This argument identifies absolutely *no* caselaw that clearly establishes that the alleged "deprivations [that] occurred" were unconstitutional. *Id.* Thus, and for the reasons set forth in the Court's analysis of Plaintiffs' Fourth Amendment and substantive due process claims, the Court agrees with Defendant Rawlings that Plaintiffs have also failed to meet their *clearly established* burden as to their procedural due process claim. *See, e.g.*, ECF No. 88 at 3 ("[T]he law is not clearly

[4] Again: It may be true that *qualified immunity* does not demand a prior case with identical facts, such as a case, in Plaintiffs' words, "involving the same classroom, students, or methods of abuse." ECF No. 85 at 9. But, even against the backdrop of this principle, Plaintiffs must identify *some* cases with adequate specificity in order to meet their *clearly established* burden. *See, e.g., White v. Pauly*, 580 U.S. 73, 79 (2017) ("[T]he clearly established law must be 'particularized' to the facts of the case." (citation modified)). And, explained above, they have not done so.

established as applied to the alleged facts. As such, Ms. Rawlings is entitled to qualified immunity for . . . the procedural due process claim.”).

***Equal Protection.*** As for Plaintiffs’ equal protection claim, Defendant Rawlings argues that there is no clearly established law as to the alleged constitutional violation. *See* ECF No. 73 at 11. In response, Plaintiffs argue that “[t]he law was clearly established . . . that public school officials may not intentionally discriminate against students on the basis of race.” ECF No. 85 at 11. The Court concludes that Plaintiffs have met their *qualified immunity* burdens as to this claim, and therefore that it survives Defendant Rawlings’s dismissal challenge.

As to the *constitutional violation* prong, the Court agrees with Plaintiffs that they have adequately pleaded such a constitutional violation. The operative complaint alleges that Defendant Rawlings “knowingly called S.R. a ‘monkey’ on multiple occasions in a discriminatory context.” ECF No. 71 at ¶ 413. Reading this well-pleaded allegation alongside the entirety of Plaintiffs’ operative complaint, this sufficiently establishes a *constitutional violation. See Wilson as next friend to W.B. v. USD 290 Ottawa*, No. 24–2375–EFM, 2025 WL 2161143, at *4 (D. Kan. July 30, 2025), *aff’d sub nom. Wilson v. Stoltenberg*, 182 F.4th 903 (10th Cir. 2026) (“Racial slurs are forms of racial harassment that violate a plaintiff’s equal protection rights.” (citation modified)); *Ryan v. City of Shawnee*, 13 F.3d 345, 349–50 (10th Cir. 1993). Yet even if Plaintiffs must allege more, they have done so. For instance, the operative complaint alleges that based on Defendant Rawlings’s conduct, including the use of a racial slur, S.R. was “deprived [of] of a safe and inclusive learning environment,” ECF No. 71 at ¶ 419, as well as that Defendant

Rawlings's conduct "deprive[d] S.R. of educational benefits by forcing S.R. to remain in a hostile learning environment, making it extremely difficult for S.R. to concentrate, participate, or safely attend school," *id.* ¶ 420. Thus, Plaintiffs have put forward more than "conclusory allegations" as to this claim. ECF No. 73 at 11. *See also J.L. v. Royal Valley U.S.D. 337*, No. 19–cv–02651–TC, 2021 WL 4197720, at *7 (D. Kan. Sept. 15, 2021) (observing in *sex discrimination* context that "equal protection provides the right to be free from" discrimination that "imposed" in the form of a "hostile work environment"); *Wilson,* 182 F.4th at 916 (observing courts may examine cases involving "sex *and* race discrimination" in *equal protection* context (original emphasis)).[5]

As for the *clearly established* prong, Plaintiffs have likewise met their burden here. The parties offer competing interpretations of *Sturdivant v. Fine*, 22 F.4th 930 (10th Cir.

[5] Defendant Rawlings bolsters her dismissal argument by stating "monkey" is a term that "can also be used playfully in non-racial contexts." ECF No. 73 at 11. This argument invites drawing inferences away from the operative complaint, which the Court cannot do at this procedural stage, *see, e.g., Diversey v. Schmidly*, 738 F.3d 1196, 1199 (10th Cir. 2013), but moreover fails to provide any examples or authority in support of this proposition. Particularly where other cases unambiguously reject such a proposition. *See, e.g., Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 185 (4th Cir. 2001) ("[A white supervisor's] constant use of the word 'monkey' to describe African Americans was similarly odious. To suggest that a human being's physical appearance is essentially a caricature of a jungle beast goes far beyond the merely unflattering; it is degrading and humiliating in the extreme." (citation modified)); *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1297 (11th Cir. 2012) (observing in Title VII context that "[t]he use of the term 'monkey' and other similar words have been part of actionable racial harassment claims across the country" (collecting cases)); *Smith v. P.A.M. Transp., Inc.*, 154 F.4th 375, 385 (6th Cir. 2025) ("[T]he use of the term 'monkey' or derivative terms against African Americans constitutes compelling evidence of racial harassment." (citation modified)). Query, therefore, how persuasively this statement bolsters Defendant Rawlings's argument where—again—it depends upon drawing inferences away from the operative complaint, which as a matter of hornbook law is obviously improper at this procedural stage. *See also Jones*, 683 F.3d at 1297 ("Given the history of racial stereotypes against African–Americans and the prevalent one of African–Americans as animals or monkeys, it is a reasonable—perhaps even an obvious—conclusion that the use of monkey imagery is intended as a racial insult where no benign explanation for the imagery appears." (citation modified)); *Walker v. Bourdon*, No. 1:24–cv–03245–CNS–NRN, --- F. Supp. 3d ----, 2026 WL 2730212, at *9 (D. Colo. Sept. 16, 2026) ("Defendants again premise this argument on inferences drawn *against* Plaintiff and the operative complaint. The Court can't draw inferences against Plaintiff." (citation modified)); *Diversey*, 738 F.3d at 1199.

2022), and the extent to which *Sturdivant* does—or doesn't—support Plaintiffs' claim. *Compare* ECF No. 73 at 10, *with* ECF No. 85 at 10. The Court agrees with Plaintiffs that *Sturvidant* clearly establishes that Defendant Rawlings's alleged conduct constitutes an *equal protection* violation. *See* ECF No. 85 at 11.[6] *Sturdivant* emphasized that it has long been established—and clearly—that "African-American student[s] 'must receive the same treatment at the hands of the state as students of other races.'" 22 F.4th at 938 (quoting *McLaurin v. Okla. State Regents for Higher Educ.*, 339 U.S. 637, 642 (1950)). The Court concludes that this "constitutional rule" applies with such "obvious clarity to the specific conduct in question"—treating similarly situated students in the SPED classroom differently on the basis of race, and doing so by using racial slurs against one group but not the other—and for this reason that Plaintiffs have met their *clearly established* burden. *Sturdivant*, 22 F.4th at 938 (citation modified)); *Wilson*, 182 F.4th at 917 ("The Equal Protection Clause provides discernible standards across factual circumstances.").

Accordingly, the Court rejects Defendant Rawlings's dismissal challenge to Plaintiffs' *equal protection* claim. She is not entitled to qualified immunity. *Cf.* ECF No. 73 at 10.

---

[6] *Sturdivant* likewise supports the Court's *constitutional violation* conclusion, insofar as *Sturdivant* observed that an "adverse effect" for *equal protection* purposes "must involve the deprivation of an educational benefit or opportunity." 22 F.4th at 937. Allegations that Defendant Rawlings's use of racial slurs directed at S.R., resulting in the alleged deprivation of a safe and inclusive learning environment such that it was "extremely difficult for S.R. to concentrate, participate, or safely attend school," ECF No. 71 at ¶ 420, certainly deprived S.R. of the educational benefit of a safe learning environment, *Sturdivant*, 22 F.4th at 937. Particularly where the operative complaint alleges that Defendant Rawlings "never called white students 'monkeys.'" ECF No. 71 at ¶ 415. The operative complaint further alleges that "Defendant Rawlings intentionally subjected S.R. to racially charged abuse that *white SPED students* did not experience," ECF No. 71 at ¶ 416, further showing how Plaintiffs have alleged that similarly situated individuals—i.e., students in the "SPED classroom," *id.* at ¶ 414—were treated differently on the basis of race. *See, e.g.*, *Sturdivant*, 22 F.4th at 936 (explaining plaintiffs must show that they were treated "differently than others similarly situated based on race").

* * *

The Court makes one final observation. Its *clearly established* analysis as to Plaintiffs' Fourth Amendment and Due Process claims "isn't to say that Plaintiffs lacked (or possessed) a meritorious case." *Gutierrez v. Cobos*, 841 F.3d 895, 903 (10th Cir. 2016) (citation modified)). Rather that, as *Gutierrez* acknowledged, "clients are usually bound by their lawyers' actions [and] inactions." *Id.* And although Plaintiffs are correct that the *clearly established* inquiry does not demand "a prior case with identical facts," ECF No. 85, nonetheless Plaintiffs' failure to adequately brief the *clearly established law* prong of qualified immunity as to these claims is tantamount to one such "inaction"—a failure to "make any legal argument . . . to rebut qualified immunity." *Gutierrez*, 841 F.3d at 903 (citation modified). Accordingly, Plaintiffs have failed to meet their *clearly established* law burden as to all claims challenged in the dismissal motion except for Plaintiffs' *equal protection* claim. Defendant Rawlings is entitled to qualified immunity as to Plaintiffs' claims, except for Plaintiffs' *equal protection* claim.

**2. Section 1981**

Defendant Rawlings argues that Plaintiff S.R.'s § 1981 claim should be dismissed as implausible. *See* ECF No. 73 at 12. The Court agrees. As Defendant Rawlings observes, Plaintiff S.R.'s claim is premised on Defendant Rawlings's alleged breach of an IEP. *See id.* at 13. However, the Court agrees with Defendant Rawlings that IEPs do not constitute contracts under § 1981, and thus—because there is no contractual relationship underlying Plaintiff S.R.'s claim—dismissal of this § 1981 claim is proper. *Compare Van Duyn ex rel. Van Duyn v. Baker Sch. Dist. 5J*, 502 F.3d 811, 820 (9th Cir.

2007); *and M.C. by & through A.C. v. Norwalk Bd. of Educ.*, No. 3:18–cv–371(AWT), 2020 WL 4194492, at *3 (D. Conn. July 21, 2020) ("While an IEP is a written statement, it is not a contract."); *and Doe v. Dennis-Yarmouth Reg'l Sch. Dist.*, 578 F. Supp. 3d 164, 182 (D. Mass. 2022) (observing that "[m]ost courts have rejected the argument that an IEP qualifies as a contract" and collecting cases, *with Gratz v. Bollinger*, 539 U.S. 244, 276 n.23 (2003) ("[W]ith respect to § 1981, we have explained that the provision was meant, by its broad terms, to proscribe discrimination in the making or enforcement *of contracts* against, or in favor of, any race." (citation modified)); *and Bellinsky v. Galan*, No. 23–cv–03461–PAB–STV, 2026 WL 216801, at *6 (D. Colo. Jan. 28, 2026) (concluding plaintiff's § 1981 claim "fail[ed] because the complaint d[id] not allege the existence of a contract between himself and any of the defendants" and observing that "any claim brought under § 1981 requires identifying an impaired contractual relationship" (citation modified)). Plaintiffs' argument to the contrary—that § 1981 does not require a contract, only a "contractual relationship," ECF No. 85 at 12—misses the mark, given that Plaintiffs must still sufficiently allege that a contract exists between parties. *See, e.g.*, *Chang v. Walmart*, No. 21–cv–01459–STV, 2023 WL 2072091, at *5 (D. Colo. Feb. 17, 2023) ("[Under] Section 1981, a plaintiff must identify the actual loss of a contract.") (citation modified)).

**3. Duplication of Parties**

Defendant Rawlings argues that claims against her in her official capacity should be dismissed, given that, because they also name Defendant Steamboat Springs School District (the School District), they are duplicative. *See* ECF No. 73 at 4; *but see* ECF No. 85 at 13 (arguing that the Court should defer "redundancy" at a later procedural stage).

The Court agrees with Defendant Rawlings. Claims against Defendant Rawlings in her official capacity are duplicative of the same claims asserted against her employer, the School District. *See, e.g., Douglass v. Garden City Cmty. Coll.*, 543 F. Supp. 3d 1043, 1059 (D. Kan. 2021); *Rhinehart v. Indep. Sch. Dist. No. 32-1005 of Hughes Cnty.*, No. 24–cv–276–DES, 2025 WL 1489910, at *4 (E.D. Okla. May 21, 2025) ("Plaintiffs' claims against Defendant in her official capacity are duplicative of their claims against the school district and are therefore dismissed."); *Doe v. Douglas Cnty. Sch. Dist. RE-1*, 775 F. Supp. 1414, 1416 (D. Colo. 1991). Accordingly, dismissal of Plaintiffs' claims against Defendant Rawlings in her official capacity is proper.

* * *

For the reasons set forth above, the Court GRANTS IN PART and DENIES IN PART Defendant Rawlings's dismissal motion. ECF No. 73.

**B. School District Defendants' Motion to Dismiss**

The School District Defendants seek partial dismissal, specifically as to "Claims 8 and 9" of the operative complaint, ECF No. 78 at 1. The Individual District Defendants move to dismiss "all remaining claims against them in their individual and official capacities (Claims 3, 4, 5, and 6)." *Id.* at 2. The Court considers their arguments below.

**1. Qualified Immunity & Individual District Defendants**

The Individual District Defendants argue that "Plaintiffs have not plausibly alleged facts overcoming qualified immunity as to any Individual District Defendant." ECF No. 78 at 6. As such, they seek to dismiss "Claims 3, 4, 5, and 6." *Id.* at 2 (citation modified). The

Court agrees with the Individual District Defendants that Plaintiffs have not met their *qualified immunity* burden as to them.

***Defendant Wicks.*** The parties agree that the Court analyzes Plaintiffs' allegations against Defendant Wicks under a *supervisory liability* framework. *Compare* ECF No. 78 at 7 (arguing that Plaintiffs' allegations against Defendant Wicks "pertain only to her supervisory role"), *with* ECF No. 84 at 4–5. To establish supervisory liability, a plaintiff must allege "(1) personal involvement; (2) causation, and (3) state of mind." *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 767 (10th Cir. 2013).

Plaintiffs have failed allege sufficient facts to establish this *causation* element. Plaintiffs argue that Defendant Wicks had notice of underlying constitutional violations but engaged in "deliberate inaction" despite them. ECF No. 84 at 6. Yet, even drawing inferences from the operative complaint in Plaintiffs' favor, at most the operative complaint alleges that Defendant Wicks had notice of these violations and that Defendant Wicks did not discipline School District employees. *See, e.g.,* ECF No. 71 at ¶¶ 67, 183–84, 216, 337, 424, 551. The Court agrees with the Individual District Defendants that these allegations are insufficient to establish *causation* as a matter of supervisory liability. *See* ECF No. 78 at 7; ECF No. 89 at 4; *Est. of Jensen by Jensen v. Clyde*, 989 F.3d 848, 858 (10th Cir. 2021) ("For causation, [a plaintiff] must show that [the defendant] *set in motion* a series of events that he knew or reasonably should have known would cause others to deprive [the plaintiff] of her constitutional rights." (citation modified)); *Schneider*, 717 F.3d at 768 (explaining the same); *Tafoya v. Salazar*, 516 F.3d 912, 922 (10th Cir. 2008) ("The relevant inquiry is whether an official's acts or omissions were the cause—not merely a

contributing factor—of the constitutionally infirm condition." (citation modified)); *Cooper v. Belcher*, No. 08–cv–01599–CMA–KMT, 2010 WL 3359709, at *8 n.15 (D. Colo. Aug. 25, 2010) ("Supervisors are only liable under § 1983 for their own culpable involvement in the violation of a person's constitutional rights . . . the plaintiff must establish a deliberate, intentional act by the supervisor to violate constitutional rights." (citation modified)); *Serna v. Colorado Dep't of Corr.*, 455 F.3d 1146, 1153 (10th Cir. 2006) ("In the end, however, supervisory liability must be based upon active unconstitutional behavior and more than a mere right to control employees." (citation modified)).

Because Plaintiffs fail to meet their *causation* burden as to Defendant Wicks, the Court need not analyze whether Plaintiffs have alleged facts sufficient to establish *personal involvement* and the requisite *state of mind.* For this reason, the Court need not analyze whether the law was clearly established as to Defendant Wicks's alleged misconduct. *See, e.g., Est. of Deweese v. Hancock*, 186 F.4th 1276, 1281 (10th Cir. 2026) ("Plaintiff must satisfy both prongs to overcome qualified immunity." (citation modified)).

***Defendant Peterson.*** The parties' arguments as to Defendant Peterson are virtually identical to those made regarding Defendant Wicks. *Compare* ECF No. 78 at 9, *with* ECF No. 84 at 5. As with Defendant Wicks, Plaintiffs' allegations, even drawing all inferences from them in their favor, at most allege that Defendant Peterson had notice of others' alleged constitutional violations. *See, e.g.,* 71 at ¶¶ 182, 184, 216, 230, 337–38, 422, 424, 517, 551. These allegations, as explained above, are insufficient to establish *causation* from a *supervisory liability* perspective. *See, e.g., Jensen*, 989 F.3d at 858;

*Schneider*, 717 F.3d at 768; *Tafoya*, 516 F.3d at 922; *Cooper*, 2010 WL 3359709, at *8 n.15; *Serna*, 455 F.3d at 1153.

Accordingly, the Court need not analyze whether Plaintiffs have alleged sufficient facts establishing *personal involvement* and *state of mind.* Because Plaintiffs have not met their *causation* burden, the Court, as with Defendant Wicks, need not analyze whether the law was clearly established as to Defendant Peterson's alleged misconduct. *Deweese*, 186 F.4th at 1281.

***Defendants Rosemond and Juba.*** The parties' arguments concern Defendants Rosemond and Juba collectively, and so the Court considers them collectively as well. *See* ECF No. 78 at 9; ECF No. 84 at 6. The Individual District Defendants argue that Plaintiffs cannot meet their *qualified immunity* burdens as to these Defendants and Plaintiffs' claims against them. *See, e.g.,* ECF No. 78 at 11 (arguing "there is no clearly established law holding that failure to provide toileting assistance during the school day amounts to a constitutional violation"); *id.* at 14. Because they adequately presented their *qualified immunity* defense, Plaintiffs bear the burden of citing and explaining *clearly established law* as to their claims against these Defendants. Because Plaintiffs failed to do so, the Court agrees with the Individual District Defendants that Defendants Rosemond and Juba are entitled to qualified immunity.

As to these Defendants, Plaintiffs argue the following:

> The law has long been clearly established that school officials may not subject students to abusive physical treatment, unreasonable restraint, unreasonable seizures, degrading conditions, or other conscience-shocking conduct, and may not ignore known constitutional violations. *See Garcia v. Miera*, 817 F.2d 650, 655–56 (10th Cir. 1987); *Couture v. Bd. of Educ.*, 535 F.3d 1243 (10th Cir. 2008); *Ebonie S.*, 695 F.3d 1051; *Milonas v. Williams*,

> 691 F.2d 931, 941–43 (10th Cir. 1982); *Gerks v. Deathe*, 832 F. Supp. 1450, 1454 (W.D. Okla. 1993); *Nicol v. Auburn-Washburn USD 437*, 231 F. Supp. 2d 1092, 1100–02, 1106 (D. Kan. 2002). These principles gave officials fair warning well before the events alleged here. *See Hope v. Pelzer*, 536 U.S. 730, 741 (2002).

ECF No. 84 at 11. As a threshold matter, Plaintiffs fail to *explain* why these string-cited cases—which Plaintiffs do not even bother to follow with explanatory parentheticals—clearly establish any constitutional principles for their Substantive Due Process, Fourth Amendment, Equal Protection, and Procedural Due Process claims. This alone demonstrates the inadequacy of their argument and why they have failed to meet their *clearly established* burden. *See, e.g., Ross v. Balderas*, No. 1:16–cv–01121–PJK–SMV, 2017 WL 2963879, at *2 (D.N.M. Feb. 15, 2017) (granting defendant's motion for summary judgment on *qualified immunity* grounds where plaintiffs "ha[d] not explained how any cases demonstrate a violation of clearly established law particularized to the facts of th[e] case"); *Britton v. Keller*, No. 1:19–cv–01113–KWR–JHR, 2020 WL 1889017, at *6 (D.N.M. Apr. 16, 2020), *aff'd*, 851 F. App'x 821 (10th Cir. 2021) ("Plaintiff bears the burden of citing to case law and articulating the clearly established right they claim had been violated." (citation modified)); *Saunders as next friend of R.S. v. USD 353 Wellington*, No. 19–2538–DDC–TJJ, 2021 WL 1210019, at *24 (D. Kan. Mar. 31, 2021) (concluding plaintiffs failed to meet *clearly established* burden where they did not "explain why [certain] cases satisfy the 'clearly established' prong of the qualified immunity analysis").

However, the Court has independently reviewed the cases that Plaintiffs cite in this paragraph.[7] From a *clearly established law* perspective, these cases are insufficiently "particularized" to the allegations in the operative complaint. *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam) (citation modified). *See also Mullenix v. Luna*, 577 U.S. 7, 12 (2015) (observing that while "a case directly on point" is not required in *clearly established* analysis, courts cannot "define clearly established law at a high level of generality" (citation modified)). *Garcia* involved a nine-year-old student who was held upside down by a teacher and struck repeatedly with a wooden paddle, and was struck in a "second beating" by the school principal that resulted in severe bruises. 817 F.2d at 652–53. Against this record, *Garcia* concluded that "at some point of excessiveness or brutality, a public school child's substantive due process rights are violated by beatings administered by government-paid school officials." *Id.* at 655. *Couture* involved a student who "was at times physically carried into the timeout room, where teachers shut and barricaded the door. His requests for release from the room were consistently denied." 535 F.3d at 1251.[8] *Ebonie S.* involved a student's desk that contained a movement-restricting bar, and how because of this the student could "only remove herself by sliding under or crawling over the desk's surface when the bar is in place." 695 F.3d at 1054. The Tenth

[7] Recall that district court cases cannot "clearly establish the law" for *qualified immunity* purposes. *B.I.C.*, 761 F.3d at 1106 (citation modified).

[8] Notably, *Couture* reversed a district court's denial of qualified immunity as to the plaintiff's Fourth Amendment claim for unreasonable seizure because "[even] accepting the district court's judgment that the conditions in the timeout room were less than ideal, we do not believe that they were 'unreasonable' under the Fourth Amendment. The room may have been small, but it was unlocked and ordinarily well lit. The teachers' decision to 'forcibly restrain the door,' was a reasonable response to a child who was scratching and kicking at the door while shouting curse words and death threats." 535 F.3d at 1256 (citation modified).

Circuit determined this did not give rise to a Fourth Amendment claim because "while it [was] undisputed that the desk restricted Ebonie's movement, the position that it forced her to assume—seated in a chair faced forward—[was] the standard pose required of countless schoolchildren across the nation," and that ultimately the desk's bar "would [not] force a student to sit in any unusual manner." *Id.* at 1057. Plaintiffs appear to cite *Milonas* for its discussion of a school's "'hair dance,'" where "in dealing with a belligerent student, a school employee [w]ould grab one of the student's arms and clutch the boy's hair with his other hand." 691 F.2d at 942.

In sum, these cases concern materially distinguishable factual circumstances. And although Plaintiffs are correct that they need not put forward a case "involving identical facts," ECF No. 84 at 11, they must still *explain* why these cited cases clearly establish the law as to their claims and must do so in a "particularized" manner, *White*, 580 U.S. at 79, without citing cases that define a constitutional right at "a high level of generality," *Mullenix*, 577 U.S. at 12. They have failed to do so. And compounding this error is Plaintiffs' failure to explain which of these cases clearly establish the law as to specific claims, given that Plaintiffs essentially lump these cases together in a string cite to support their overbroad contention—again, without differentiating by specific claims— that it is clearly established "that school officials may not subject students to abusive physician treatment, unreasonable restraint, unreasonable seizures, degrading conditions, or other conscious-shocking conduct, and may not ignore constitutional violations." ECF No. 84 at 10. In other words, not only is Plaintiffs' argument flawed in that it defines rights at too high a level of generality, but also flawed in the sense that the cases marshalled in support

of it are materially distinguishable as a matter of *clearly established law*. *See Harris v. Robinson*, 273 F.3d 927, 931 (10th Cir. 2001) (affirming summary judgment where there "[were] no Supreme Court or Tenth Circuit opinions on point, nor d[id] the clearly established weight of authority from other courts indicate that *similar facts to our case* establish a substantive due process violation" (emphasis added)).[9]

**2. S.R.'s Claims**

The District Defendants urge dismissal of Plaintiff S.R.'s § 1981 and § 1986 claims—Plaintiffs' eighth and ninth claims, respectively. *See* ECF No. 78 at 14. As explained above, the Court agrees with the District Defendants that dismissal of the § 1981 claim is proper, given that S.R.'s IEP does not create the requisite contractual relationship. *See id.* at 15. Therefore, the Court turns its focus to the District Defendants' challenge to the § 1986 claim.

The District Defendants urge dismissal of S.R.'s § 1986 claim because it is both time-barred and implausible. *See id.* The Court agrees with the District Defendants that the claim is time-barred.

Plaintiffs resist this conclusion. While they acknowledge that § 1986 carries a one-year statute of limitations, *see* ECF No. 84 at 14, they nonetheless argue that the operative complaint alleges "a continuing pattern of discriminatory conduct that extended through S.R.'s enrollment and into May 2025," *id. See also* § 1986 ("[N]o action under the provisions of this section shall be sustained which is not commenced within one year after

[9] While later Plaintiffs argue that the operative complaint "plausibly alleges violations of clearly established substantive due process and Fourth Amendment rights," ECF No. 84 at 11, this argument—in one sentence—fails to explain which cases provide such *clearly established* support.

the cause of action has accrued.”). But even drawing all inferences from the operative complaint in Plaintiffs’ favor, the Court agrees with the District Defendants that this theory fails, given that the operative complaint alleges that “Defendant Rawlings resigned from employment with Defendant SSSD on February 3, 2023.” ECF No. 71 at ¶ 298. The Court must accept this allegation as true. And because Plaintiffs’ § 1986 claim is—as the District Defendants correctly observe, *see* ECF No. 87 at 8—all about Defendant Rawlings’s alleged racial slurs, which occurred *during*, and not after, her employment, this claim is time-barred. *See also* ECF No. 78 at 15; ECF No. 71 at ¶ 548. Since Plaintiffs failed to file this lawsuit within one year of February 3, 2023, when Defendant Rawlings was, as alleged by Plaintiffs, no longer employed by the School District, dismissal of the § 1986 claim is proper, and the Court need not analyze the claim’s plausibility or the plausibility of any underlying conspiracy.

**3. Official Capacity Claims**

The District Defendants seek dismissal of “Claims 3, 4, 5, and 6,” ECF No. 78 at 15, brought against “both the District and against the Individual District Defendants in their official capacities,” *id.* As explained above in the Court’s *official capacity* analysis of Defendant Rawlings’s motion, claims against the Individual District Defendants in their official capacities are duplicative. Thus, their dismissal is proper. Plaintiffs, countering that *efficiency* favors maintaining these claims against the Individual District Defendants in their official capacities, *see* ECF No. 84 at 15, fails to persuade otherwise. *See* ECF No. 87 at 9 (collecting cases); *Toevs v. Quinn*, No. 15–cv–02838–RBJ, 2017 WL 1055314, at *10 n.11 (D. Colo. Mar. 21, 2017); *Doe*, 775 F. Supp. at 1416 (“Where a suit contains

both entity and official capacity claims, the only defendant is the entity." (citation modified)).

* * *

For the reasons set forth above, the Court GRANTS School District Defendants' Amended Partial Motion to Dismiss Plaintiffs' First Amended Complaint. ECF No. 78.

**C. Defendant Tennyson's Motion to Dismiss**

Defendant Tennyson seeks dismissal of the claims against her. ECF No. 79. The Court agrees with Defendant Tennyson that dismissal of Plaintiffs' claims against her is proper. Because many of the parties' arguments that attend the claims against Defendant Tennyson are duplicative of those made in connection with the previously discussed dismissal motions, the Court briefly addresses the arguments in Defendant Tennyson's motion.

**1. Official Capacity Claims**

Defendant Tennyson seeks dismissal of the claims against her "in her official capacity" because these claims are duplicative of claims against the School District. ECF No. 79 at 4 (citation modified). As explained above, the Court agrees with Defendant Tennyson, and thus dismisses the claims brought against her in her official capacity. *See id.* at 5; ECF No. 89 at 3.

**2. Qualified Immunity**

Next, Defendant Tennyson seeks dismissal of Plaintiffs' § 1983 claims against her on *qualified immunity* grounds. ECF No. 79 at 5 ("Plaintiffs' § 1983 claims against Defendant Tennyson are inadequately pled. (Claims 3–6.)" (citation modified)).

Defendant Tennyson's dismissal motion has adequately and thoroughly presented this defense, *see Berryman*, 143 F.4th at 1140, and thus Plaintiffs bear the burden of alleging a clearly established constitutional violation. For substantially similar reasons as those discussed above in Defendants' other dismissal motions, Plaintiffs have failed to carry their *clearly established* burden. Thus, the Court agrees with Defendant Tennyson that dismissal of these claims on *qualified immunity* grounds is proper. *See* ECF No. 79 at 5 (arguing that Plaintiffs fail to overcome *qualified immunity* defense because they cannot show that Defendant Tennyson's "particular conduct was clearly established at the time of the [alleged] violation" (citation modified)); *id.* at 10, 13 (same).

As in their response briefs to the Individual District Defendants' and Defendant Rawlings's dismissal motions, Plaintiffs provide a string cite to the same cases—*Garcia*, *Milonas*, *Couture*, *Ebonie S.*, and *Hope*—for the overbroad proposition that "the Tenth Circuit has made clear that school officials may not subject students to abusive force, unreasonable restraint, degrading conditions, or other conscience-shocking conduct, nor may they ignore constitutional violations." ECF No. 83 at 9. This sentence and its supporting cases are deficient in numerous ways. *First*, Plaintiffs fail to explain the specific rights at issue—e.g., they fail to separately explain what *clearly established* law exists as to Plaintiffs' Fourth Amendment and Fourteenth Amendment claims against Defendant Tennyson. *Second*, Plaintiffs define any such right at too high a level of generality. And *third*, Plaintiffs fail to explain how any of their string-cited cases *clearly establish* any right under the Fourth or Fourteenth Amendments. *See* ECF No. 83 at 9. Accordingly, and as explained above, they have failed to carry their *clearly established* burden, so the Court

need not analyze the *constitutional violation* prong. Defendant Tennyson is entitled to qualified immunity as to Plaintiffs' claims against her. *See also* ECF No. 89 at 6–8 (thoroughly explaining in reply why Plaintiffs failed to meet *clearly established* burden, including discussion of why Plaintiffs' cited cases are inapposite and do not establish law "particularized to the facts at issue" in this case).

Plaintiffs' failure to adequately explain why these cases provide *clearly established* law as to their claims against Defendant Tennyson is compounded by the nature of their claims against Defendant Tennyson in her supervisory capacity. *See id.* at 9 ("That principle applies equally to supervisory officials."). At most, Plaintiffs argue that Defendant Tennyson "had authority over the SSN program and staff," *id.*, yet "nevertheless allowed th[e] [allegedly unlawful] conditions to persist," *id.* at 10. But Plaintiffs cite no cases concerning other supervisors and supervisory liability that clearly establish Defendant Tennyson's alleged supervisory misconduct is *clearly established*. *See, e.g., Dennis v. Pazen*, No. 23–1313, 2025 WL 1375635, at *2 (10th Cir. May 13, 2025) (unpublished) (explaining that to satisfy *clearly established* burden on supervisory liability claim, a plaintiff must "show that clearly established law would have put a reasonable official in the supervisor's position on notice that his supervisory conduct would violate the plaintiff's constitutional rights" (citation modified) (citing *Perry v. Durborow*, 892 F.3d 1116, 1123 (10th Cir. 2018)). This further illustrates why Plaintiffs have failed to meet their *clearly established* burden, and therefore why Defendant Tennyson is entitled to *qualified*

*immunity* as to Plaintiffs' § 1983 claims against her. *See also* ECF No. 79 at 13; ECF No. 89 at 4.[10]

As part of her *qualified immunity* argument, Defendant Tennyson also argues that Plaintiffs' § 1981 claim is implausible because the operative complaint fails to allege the requisite contractual relationship. *See, e.g.,* ECF No. 79 at 11. Plaintiffs again argue that S.R.'s IEP provides the requisite contract for § 1981 purposes. *See, e.g.,* ECF No. 83 at 12. As explained above, the Court disagrees with Plaintiffs and therefore concludes that dismissal of the § 1981 claim is proper. *See, e.g.,* ECF No. 79 at 12; ECF No. 89 at 8. As part of her *qualified immunity* argument, Defendant Tennyson additionally contends that the § 1986 claim against her is time-barred. *See id.* at 15 ("The Complaint revolves around events that allegedly took place during the 2022–23 school year [and] Plaintiffs did not file suit until January 29, 2025, approximately two years after the events alleged in the Complaint."). For the same reasons set forth in the Court's analysis of this claim in its

---

[10] Recall that Plaintiffs survive Defendant Rawlings's dismissal challenge as to their *equal protection* claim against her. In the § 1981 section of their response brief to Defendant Tennyson's dismissal motion, Plaintiffs argue that it is *clearly established* that "state officials may not knowingly permit intentional race discrimination and may not remain deliberately indifferent after repeated notice." ECF No. 83 at 13. Even construing this argument as attending Plaintiffs' § 1983 claims, Plaintiffs argue that it is *clearly established* that Defendant Tennyson can face *supervisory liability* for Defendant Rawlings's alleged use of racial slurs. *See id.* However, in making this argument Plaintiffs rely on allegations showing that Defendant Rawlings allegedly used racial slurs, and that Defendant Tennyson was simply aware of these slurs and other allegedly insensitive comments. *Id.* (collecting citations to operative complaint). Yet unlike their arguments as to Defendant Rawlings, Plaintiffs cite no cases in support of their contention that Defendant Tennyson faces supervisory liability for Defendant Rawlings's alleged misconduct and usage of racial slurs. Accordingly, dismissal of the *equal protection* claim against Defendant Tennyson is proper, particularly where not only do Plaintiffs fail to cite any cases in support of this proposition, but also where they fail to cite any cases clearly establishing that a supervisor faces liability for another individual's usage of racial slurs. *Cf. Dennis*, 2025 WL 1375635, at *2. Again: This is not to say such a claim may not be meritorious. Only that Plaintiffs, based on the limited nature of their briefing, have failed to carry their *qualified immunity* burdens as to Defendant Tennyson. *See Gutierrez*, 841 F.3d at 903; ECF No. 89 at 9 (observing in reply that while Plaintiffs argue that "'it has long been clearly established that state officials may not knowingly permit intentional race discrimination and may not remain deliberately indifferent after repeated notice'" that Plaintiffs "provide no citations for this [argument]" (quoting ECF No. 73 at 13)).

discussion of the School District Defendants' dismissal motion, the Court agrees. Plaintiffs' argument to the contrary—likewise resting on its *continuing violation* theory—fails to persuade otherwise. *See* ECF No. 83 at 15.

* * *

For the reasons set forth above, the Court GRANTS Defendant Tennyson's Motion to Dismiss Pursuant to Fed. R. Civ. P. 8(a)(2) and 12(b)(6). ECF No. 79.

## II. CONCLUSION

Consistent with the above analysis, the Court GRANTS IN PART and DENIES IN PART Defendant Sylvia Rawlings's Motion to Dismiss Plaintiffs' First Amended Complaint and Jury Demand. ECF No. 73. It GRANTS the School District Defendants' Amended Partial Motion to Dismiss Plaintiffs' First Amended Complaint. ECF No. 78. And the Court GRANTS Defendant Tennyson's Motion to Dismiss Pursuant to Fed. R. Civ. P. 8(a)(2) and 12(b)(6). ECF No. 79.

DATED this 5th day of November 2026.

BY THE COURT:

Charlotte N. Sweeney
United States District Judge